IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| CITIZEN POTAWATOMI NATION,<br>  a federally recognized Indian Tribe,<br>1601 S. Gordon Cooper Drive<br>Shawnee, Oklahoma 74801<br>        Plaintiff,<br><br>        v.<br><br>LYNN SCARLETT, Acting Secretary of the Interior;<br>KENNETH REINFELD, Acting Director of the<br>   Office of Self-Governance,<br>   Bureau of Indian Affairs<br>Department of the Interior<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>STEVEN K. LINSCHEID,<br>  Chief Administrative Judge<br>  Interior Board of Indian Appeals<br>801 North Quincy Street, Suit 300<br>Arlington, Virginia  22203<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR INJUNCTIVE RELIEF
AND DECLARATORY JUDGMENT**

    Citizen Potawatomi Nation ("CPN"), by its undersigned attorneys, hereby files this Complaint for injunctive relief and declaratory judgment against the Defendants and states as follows:

**PARTIES**

    1.    Plaintiff:  CPN is a federally recognized Indian Tribe located in the State of Oklahoma who has entered into a Compact of Self-Governance and Annual Funding

1

Agreements with the United States Department of Interior pursuant to the Tribal Self-Governance provisions of the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. § 458aa-458hh.

2.    Defendants:  The Defendants are federal officials who, among other things, administer the Department of Interior's implementation of the ISDA and resolve disputes concerning the Department's implementation of the ISDA:

    a.    Lynn Scarlett (hereafter "Secretary") is the Acting Secretary of the Department of the Interior.  Under federal law, the Secretary negotiates and enters into self-governance agreements and compacts with Indian tribes under the ISDA.  She is being sued in her capacity as an officer of the United States.

    b.    Kenneth Reinfeld is Acting Director of the Office of Self Governance in the Bureau of Indian Affairs of the Department of the Interior.  He is the Secretary's designee to negotiate and approve compacts and AFA's between Indian tribes and the Department of Interior pursuant to the ISDA.  He is being sued in his capacity as an officer of the United States.

    c.    Steven K. Linscheid is the Chief Administrative Judge of the Interior Board of Indian Appeals.  He is the administrative judge that was in charge of CPN's appeal filed at the Interior Board of Indian Appeals that has given rise to this action.

**VENUE AND JURISDICTION**

3.    Because this is a civil action in which the Defendants are officers of the United States located in the District of Columbia, venue is proper in this district.  28 U.S.C. § 1391(e).

2

4. This Court has jurisdiction under the ISDA, 25 U.S.C. § 450m-1(a) because this is a civil action wherein the matter in controversy arises under the provisions of the ISDA. In addition, this Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1331 because it involves a question arising under the laws of the United States. Further, because this is a civil action brought by a duly recognized Indian tribe wherein the matter in controversy arises under the laws of the United States, this Court also has jurisdiction under 28 U.S.C. § 1362.

5. Sovereign immunity has been waived by the United States and a claim for relief exists under both the ISDA, 25 U.S.C. § 450m-1(a) and the Administrative Procedures Act, 5 U.S.C. §§ 702-706. An actual controversy exists for purposes of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

**BACKGROUND AND STATEMENT OF FACTS**

6. The "Tribal Self-Governance Act of 1994" was enacted as Title II of Public Law 103-413. The Tribal Self-Governance Act of 1994 established a Tribal Self-Governance Program on a permanent basis and was added as Title IV of the ISDA, 25 U.S.C. §§ 458aa- 458hh. Pursuant to the Tribal Self-Governance Program, the Department of Interior is authorized to negotiate and enter into Compacts and Annual Funding Agreements ("AFA") with Indian tribes under which the Indian tribes assume comprehensive responsibility for the planning and administration of programs and services previously provided by the Department of the Interior and the Department transfers the related funds to the tribes to administer.

7. Indian tribes that enter into Compacts and AFAs with the Department of Interior under the Tribal Self-Governance Program of the ISDA may no longer enter into

self-determination contracts with the Department under the Indian Self-Determination provisions of the ISDA for the same funds.  25 U.S.C. § 458cc(b)(8)(A).

8.      Prior to Fiscal Year 1999, CPN did not participate in the Tribal Self-Governance Program of the ISDA but, instead, had entered into self-determination contracts with the Department of the Interior pursuant to the Indian Self-Determination provisions of the ISDA, 25 U.S.C. §§ 450f-450n.

9.      In 1988, the Department developed a funding formula for use in distributing funding to the five tribes served by the Shawnee Agency of the Bureau of Indian Affairs.  The five tribes are CPN, the Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma.

10.     CPN, along with four other tribes served by the Shawnee Agency (the Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma), each issued tribal resolutions reflecting agreement with the funding formula developed by the Department to be used for distributing federal appropriations in connection with Fiscal Year 1989 self-determination contracts and future self-determination contracts (hereinafter referred to as the "Funding Formula") under the Indian Self-Determination provisions of the ISDA, 25 U.S.C. §§ 450f-450n.

11.     The tribal resolutions executed in 1988 by CPN and the four other Shawnee Agency tribes stated, among other things, the following with respect to the Funding Formula and funding of self-determination contracts:

> A RESOLUTION OF AGREEMENT WITH [CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma] TO CONTRACT THE FY89

4

> OPERATION AND SERVICE OF THE SHAWNEE AGENCY OF THE BUREAU OF INDIAN AFFAIRS
> \* \* \* \* \* \* \* \* \* \*
> the Shawnee Agency tribes have agreed to a distribution of funds in the following formula:  25% equally divided, 25% in proportion to total tribal enrollment, 25% in proportion to resident tribal population within each tribe's jurisdictional area, and 25% in proportion to the amount of trust property in each tribe's jurisdiction.
> \* \* \* \* \* \* \* \* \* \*
> the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency
> \* \* \* \* \* \* \* \* \* \*
> THEREFORE, BE IT RESOLVED, that the [CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma] hereby agrees with the tribes served by the Shawnee Agency to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years.

12. Based on the plain terms of the Funding Formula, CPN understood that the factors specified in the Funding Formula would be applied in future years based on the up-to-date data for tribal enrollment, resident tribal population in each tribe's jurisdiction and trust property in each tribe's jurisdiction applicable for the year in which funding was to be distributed.

13. Beginning in Fiscal Year 1999, CPN began its participation in the Tribal Self-Governance Program of the ISDA and no longer entered into self-determination contracts with the Department of Interior for the same programs and services and related funding.

14. In September 1998, CPN entered into its first Compact of Self-Governance and AFA for Fiscal Year 1999 with the Department of Interior pursuant to the Tribal Self-Governance Program provisions of the ISDA.  CPN has entered into AFA's with the Bureau of Indian Affairs pursuant to the Tribal Self-Governance Program

for each fiscal year since Fiscal Year 1999. Each of those AFA's has been governed by the general terms of CPN's Compact of Self-Governance.

15. Compacts are agreements that affirm the government-to-government relationship between a self-governance tribe and the United States and set out the general terms governing that relationship during a tribe's participation in the Tribal Self-Governance Program. 25 C.F.R. § 1000.2.

16. AFA's are agreements negotiated and entered into annually between a self-governance tribe and the Department of Interior's Bureau of Indian Affairs that identify the services, functions and responsibilities to be assumed by the self-governance tribe and the related funding to be transferred to the self-governance tribe by the Department of Interior as part of the tribe's participation in the Tribal Self-Governance Program. 25 C.F.R. Part 1000, Subpart E.

17. In 1998, in connection with negotiation of CPN's Compact of Self-Governance and Fiscal Year 1999 AFA, CPN first became aware that the Department of Interior was utilizing outdated data from 1988 for tribal enrollment, resident tribal population within CPN's jurisdictional area, and trust property in CPN's jurisdiction for purposes of applying the factors set forth in the Funding Formula in order to determine funding for CPN's AFA for Fiscal Year 1999.

18. Prior to Fiscal Year 1999, CPN had no basis to know whether the Department had utilized outdated data from 1988 for purposes of applying the factors set forth in the Funding Formula in connection with the previous fiscal years of funding.

19. In 1998, CPN objected to the Department's use of 1988 data for purposes of applying the factors in the Funding Formula. CPN also objected to the Department's

determination that CPN shared its jurisdictional area with the Absentee Shawnee Tribe for purposes of Factor 3 of the Funding Formula (25% in proportion to resident tribal population within each tribe's jurisdictional area).

20. CPN noted its objections in its AFA for Fiscal Year 1999 and each in subsequent AFA for Fiscal Years 2000, 2001, 2002, 2003, 2004, 2005 and 2006 and reserved the right to take whatever legal action may be available against the Department to compel it to use current and verifiably correct data in applying the specified factors of the Funding Formula and also to apply Factor 3 of the Funding Formula based on a determination that CPN does not share its jurisdictional area with the Absentee Shawnee Tribe.

21. In the fall of 1998, CPN filed a civil action in the United States District Court for the Western District of Oklahoma challenging the Department's determinations to (a) use outdated 1988 data for purposes of applying the Funding Formula in Fiscal Year 1999 and future years and (b) to apply such Funding Formula based on a determination that CPN shared its jurisdictional area with the Absentee Shawnee Tribe. That action was ultimately dismissed without ever addressing the merits of the issues raised by CPN.  <u>Citizen Potawatomi Nation v. Norton</u>, 248 F.3d 993, <u>modified on rehearing</u>, 257 F.3d 1158 (10th Cir. 2001).

22. In December 2000, the Department issued, for the first time, regulations implementing the Tribal Self-Governance Program provisions of the ISDA.  Those regulations became effective January 1, 2001.  65 Fed. Reg. 78,688 (Dec. 15, 2000).

23. Among other things, the regulations implementing the Tribal Self-Governance Program provisions of the ISDA provide that a tribe may appeal pre-award

7

disputes that arise prior to execution of an AFA or a Compact directly to the Interior Board of Indian Appeals ("IBIA"). 25 C.F.R. § 1000.432(b)(2).

24. Prior to execution of its Fiscal Year 2004 AFA, CPN, by letter dated December 1, 2003, filed a pre-award appeal with the IBIA, pursuant to 25 C.F.R. § 1000.432(b)(2), challenging the Department's determinations to (a) continue to use outdated 1988 data for purposes of applying factors specified in the Funding Formula in Fiscal Year 2004 and (b) to continue to apply Factor 3 of the Funding Formula based on a determination that CPN shares its jurisdictional area with the Absentee Shawnee Tribe.

25. The IBIA determined that it had jurisdiction over CPN's appeal and that it could address the merits of CPN's appeal. The IBIA docketed CPN's appeal as Docket No. IBIA 04-16-A.

26. During the course of the IBIA proceedings, CPN objected to the administrative record produced by the Department. CPN objected that the Department had failed to include any data at all indicating the actual tribal enrollment, resident tribal population and trust property that the Department utilized in determining CPN's funding for its Fiscal Year 2004 AFA. CPN also objected to the Department's failure to include in the administrative record a certification, as required by 43 C.F.R. § 4.335(b)(3), that the record contained all the information and documents utilized by the Department in rendering its funding decision with respect to CPN's Fiscal Year 2004 AFA.

27. In an Order dated September 14, 2004, the IBIA ruled that the Department was not required to produce any documents relating to tribal enrollment, resident tribal population and trust property. The IBIA's September 14, 2004 Order did, however,

require that the Department file with the IBIA, on or before October 1, 2004, the required certification that the administrative record submitted to the IBIA was complete.

28.     The Department never filed any certification with the IBIA relating to whether the administrative record was complete or not.

29.     Subsequently, by decision dated January 25, 2006, the IBIA denied the merits of CPN's appeal. Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 (January 25, 2006) (hereinafter referred to as the "IBIA Decision").

30.     With respect to CPN's allegation that the Department had improperly continued to use outdated 1988 data for purposes of applying the specified factors of the Funding Formula and was instead required to use current and verifiably correct data, the IBIA Decision stated the following:

> This argument has force. If the parties to the agreement had wished to establish a static percentage share for each tribe, they simply could have determined the percentages and set them forth in the agreement. In addition, it would be reasonable for a formula to enable the allocation of funding to shift proportionally as the need among the tribes shifted, and it would seem that tribal enrollment, resident population, trust acreage provide a measure of that need.

Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 at 172.

31.     The IBIA Decision held, however, that the language of the Funding Formula was "ultimately ambiguous on this point" and that the parties' performance should be relied upon to determine the meaning of this perceived ambiguity. Id., 42 IBIA 160 at 172.

32.     The IBIA Decision then concluded that:

Looking to the parties' performance, the record shows that the 1988 agreement [*the Funding Formula*] has been implemented based on a static

9

>application of the formula since its inception.  This performance has been rendered with the knowledge of the nature of the performance and opportunity for objection, but it was not until 1998 that the Citizen Potawatomi objected to this reading of the agreement.  None of the other parties has come forward to support the Citizen Potawatomi's reading of the agreement [footnote deleted].  Thus, we conclude that the Director did not err in determining that the parties to the 1988 agreement intended for the formula to apply in a static manner unless and until the parties agreed otherwise and thus did not abuse his discretion in applying the formula in that way.

Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 at 173.

33. With respect to CPN's contention that the Department had improperly continued to apply Factor 3 of the Funding Formula based on a determination that CPN shares its jurisdictional area with the Absentee Shawnee Tribe, the IBIA Decision held that CPN was collaterally estopped from litigating this issue by the decision of the Interior Board of Contract Appeals in Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA 52 (2002).  Citizen Potoawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 at 167-170.

34. In addition, even though the IBIA Decision found that CPN was collaterally estopped from litigating the merits of this issue, the IBIA Decision went ahead and addressed the merits.  On the merits, the IBIA Decision notes that at the time in 1988 when the Funding Formula was first executed it was understood by the Department, with respect to Factor 3, that both CPN and the Absentee Shawnee shared the "jurisdictional area" represented by the boundaries of the former reservation.  The IBIA Decision went on to conclude that, as a result, it "appears" that Factor 3 of the Funding Formula contemplated, with respect to CPN and the Absentee Shawnee, "that funding would be apportioned based on the number of tribal members each tribe had within the former reservation boundaries" and that nothing in Citizen Band Potawatomi

10

Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325 (10th Cir. 1998) altered this perceived intent.  Citizen Potoawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 at 170-171.

35. With respect to exhaustion of administrative remedies, the Department's regulations state that no decision of a Department official, which at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under the Administrative Procedures Act, 5 U.S.C. § 704.  43 C.F.R. § 4.314(a).

36. The Department's regulations also provide that, unless otherwise stated in the decision, rulings by the IBIA are final for the department and must be given immediate effect within the Department.  43 C.F.R. § 4.312.  The Department's regulations also state that no further appeal will lie within the Department from a decision of the IBIA.  43 C.F.R. § 4.314(b).

37. The Department's regulations further provide that whenever any matter is remanded from any federal court to the Board for further proceedings, the Board will either remand the matter to an Office of Hearings and Appeals official or to the Bureau of Indian Affairs, or to the extent the court's directive and time limitations will permit, the parties will be allowed to submit to the Board a report recommending procedures for it to follow to comply with the court's order.  43 C.F.R. § 4.316.

### COUNT I

**The IBIA Decision's Finding That the Funding Formula
Is Ambiguous Is Without Support in the Record and, Even if the Finding
Of Ambiguity Is Supported, the Finding That CPN Failed to Timely Object
to the Department's Static Application Is Without Support in the Record**

38.     Paragraphs 1 through 37 are incorporated by reference as if set forth herein in their entirety.

39.     The IBIA decision erroneously concluded that the Funding Formula is ambiguous as to whether current and verifiably correct data for tribal enrollment, resident tribal population and trust property must be used in applying the specified factors of the Funding Formula in the relevant fiscal year in which funds are to be distributed.

40.     As the basis for its finding of ambiguity, the IBIA Decision held that the Funding Formula allegedly does not state that the "formula will be recalculated" and that it allegedly "does not state when or how often the formula will be recalculated, or how frequently a census would be required to be performed to determine tribal population for each AFA."

41.     The IBIA Decision's finding of ambiguity is not supported by the record that was before the IBIA and otherwise ignores the plain terms of the tribal resolutions comprising the Funding Formula.

42.     The IBIA Decision's finding of ambiguity fails to address the fact that each of the tribal resolutions issued by the five Shawnee Agency tribes (CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma) that comprise the Funding Formula state plainly that funds are to be distributed based on the following formula in Fiscal Year 1989 and in

future years: (1) 25% equally divided; (2) 25% in proportion to total tribal enrollment; (3) 25% in proportion to resident tribal population within each tribe's jurisdictional area; and (4) 25% in proportion to the amount of trust property in each tribe's jurisdiction.

43. The IBIA Decision's finding of ambiguity also fails to address the fact that each of the tribal resolutions issued by the five Shawnee Agency tribes (CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma) comprising the Funding Formula state plainly that each of the five tribes agree to conform to all aspects of the Department's regulations appropriate for the given program.

44. The IBIA Decision's finding of ambiguity also fails to address the fact that under the Department's regulations applicable to the Tribal Self-Governance Program and other Department programs, the Department currently collects and maintains, on an annual basis, data indicating each tribes' tribal enrollment, resident tribal population and trust property.

45. The record before the IBIA did not contain any evidence of the Department's collection and maintenance of annual data on each tribes' tribal enrollment, resident tribal population or trust property.

46. Further, the IBIA Decision's finding of ambiguity also fails to address the Department's regulations which require that any funding distribution formula "be reasonably related to the function or service performed by an office." 25 C.F.R. § 1000.98(a)(1). It is unreasonable for the Department to continue to use the outdated data of the tribal enrollment, tribal resident population and trust acreage that existed in 1988 for CPN to determine funding for functions and services to be performed by CPN more

than 18 years later under the Tribal Self-Governance Program when CPN's tribal enrollment, tribal resident population and trust acreage has increased materially. The IBIA Decision itself acknowledged that "it would be reasonable for a formula to enable the allocation of funding to shift proportionally as the need among the tribes shifted, and it would seem that tribal enrollment, resident population, and trust acreage provide a measure of that need."

47. For all these reasons, the IBIA Decision's finding that the Funding Formula is ambiguous is erroneous or, in the alternative, is arbitrary and capricious.

48. Further, even if the IBIA Decision's finding that the Funding Formula is ambiguous is correct, the IBIA Decision is still erroneous or, in the alternative, is arbitrary and capricious since the IBIA Decision's finding that CPN acquiesced in the Department's static application of the Funding Formula prior to 1998 is not supported by any evidence in the record before the IBIA.

49. Without any support in the record, the IBIA Decision concluded that CPN knew of and acquiesced in the Department's static application of the Funding Formula from 1988 up through 1998.

50. If the IBIA had developed the record on this issue, the record would establish that prior to 1998, CPN had no basis to know whether the Department utilized outdated data from 1988 for purposes of applying the specified factors set forth in the Funding Formula in order to determine funding for Fiscal Years after 1988 but prior to 1998.

51.    For these reasons, the IBIA Decision's finding that CPN acquiesced in the Department's static application of the Funding Formula prior to 1998 is erroneous or, in the alternative, is arbitrary and capricious.

## COUNT II

**The IBIA Decision's Finding of Collateral Estoppel With Respect to the Issue of CPN's Exclusive Jurisdictional Area Is Without Support in the Record**

52.    Paragraphs 1 through 37 are incorporated by reference as if set forth herein in their entirety.

53.    The IBIA Decision erroneously held that CPN is collaterally estopped from litigating the issue of whether or not CPN shares its jurisdictional area with the Absentee Shawnee tribe for purposes of funding distributions under Factor 3 of the Funding Formula – 25% in proportion to resident tribal population within each tribe's jurisdictional area.

54.    The IBIA Decision incorrectly held that the Interior Board of Contract Appeals decision in <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA 4317-4318/2001, 35 IBCA 52 (2002) (the "<u>Absentee Shawnee</u> decision") resolved the same issue with respect to CPN's jurisdictional area as CPN raised in its appeal before the IBIA.

55.    The <u>Absentee Shawnee</u> decision dealt only with a post-award contract dispute between the Department and the Absentee Shawnee tribe with respect to the Absentee Shawnee's previously executed AFAs for Fiscal Years 2000 and 2001. The Board's holding in the <u>Absentee Shawnee</u> decision established only that the Department had failed to establish sufficient grounds to permit a unilateral reduction by the

Department in the amount of funds previously agreed to in the Absentee Shawnee's AFAs for Fiscal Years 2000 and 2001.

56.     Nothing in the <u>Absentee Shawnee</u> decision dealt with or resolved CPN's eligibility in future years, including Fiscal Year 2004, to receive funding based on a finding by the Department that CPN and the Absentee Shawnee's do not share a jurisdictional area for purposes of Factor 3 of the Funding Formula.

57.     The IBIA Decision completely ignores the fact that (a) CPN specifically requested, in a reconsideration motion, for the Board of Contract Appeals in the <u>Absentee Shawnee</u> case to address CPN's eligibility for funding under future AFAs based on a finding that CPN did not share its jurisdictional area with the Absentee Shawnee's for purposes of Factor 3 of the Funding Formula; and (b) the Board of Contract Appeals in <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA 4317R-4318R/02 (2003), 2003 WL 133,274, ruled that this issue was not before the Board and that it had no authority to rule on the merits of this issue.

58.     For all these reasons, the IBIA Decision's finding that CPN is collaterally estopped from raising the issue of CPN's exclusive jurisdictional area for purposes of Factor 3 of the Funding Formula is erroneous, or in the alternative, is arbitrary and capricious.

### **COUNT III**

**The IBIA Decision's Finding that CPN's Funding Under Factor 3 of
The Funding Formula Is to Be Apportioned Based on the Number of Tribal
Members that CPN and the Absentee Shawnee Had Within CPN's Former
<u>Reservation Boundaries as of 1988 Is Without Support In the Record</u>**

59.     Paragraphs 1 through 37 are incorporated by reference as if set forth herein in their entirety.

16

60. Without any support in the record, the IBIA Decision erroneously concluded on the merits that, even if CPN was not collaterally estopped from raising the issue of CPN's claim to the exclusivity of its jurisdictional area, "it appears" that CPN's funding under Factor 3 of the Funding Formula is to be apportioned based on the number of tribal members that CPN and the Absentee Shawnee had within CPN's former reservation boundaries as of 1988.

61. Without any rational support in the record, the IBIA Decision summarily concludes that the subsequent decision in 1998 in <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, 142 F.3d 1325 (10th Cir. 1998) (the "<u>Collier</u> decision") has no impact upon how funds are to be distributed based on the factors specified in Factor 3 of the Funding Formula – 25% of funds in proportion to resident tribal enrollment within each tribe's jurisdictional area.

62. The IBIA Decision ignores the fact that the <u>Collier</u> decision held that CPN and the Absentee Shawnees do not share a common former reservation area and that the Absentee Shawnee has no jurisdiction over the CPN's exclusive former reservation area. <u>Collier</u>, <u>supra</u>.

63. The IBIA Decision also completely ignores the fact that the record established that in developing and applying Factor 3 of the Funding Formula, the Department used a tribe's former reservation boundaries to define the tribe's jurisdictional area under Factor 3 and that, in 1988, the Department was acting on the conclusion of law that the Absentee Shawnee shared a common former reservation area with CPN. That legal conclusion was subsequently held incorrect by the <u>Collier</u> decision.

17

64. Now that the <u>Collier</u> decision has established that CPN and the Absentee Shawnee do not share a common former reservation and that CPN has the exclusive territorial jurisdiction over that former reservation, the impact of the <u>Collier</u> decision on the "jurisdictional area" portion of Factor 3 of the Funding Formula cannot rationally be denied.

65. Without support in the record and without any rational explanation, the IBIA Decision erroneously concludes that the <u>Collier</u> decision has no impact on Factor 3 of the Funding Formula. As a result, the IBIA Decision arbitrarily altered Factor 3 of the Funding Formula by rendering the term "jurisdictional area" meaningless.

66. For all these reasons, the IBIA Decision's finding that CPN's funding under Factor 3 of the Funding Formula is to be apportioned based on the number of tribal members that CPN and the Absentee Shawnee had within CPN's former reservation boundaries as of 1988 is erroneous, or in the alternative, is arbitrary and capricious.

**WHEREFORE**, CPN respectfully requests that this Court:

A. Declare that the IBIA Decision is erroneous or, in the alternative, is arbitrary and capricious;

B. Enjoin the Department from implementing the IBIA Decision as final agency action;

C. Remand this matter back to the IBIA for further proceedings in order to:

   i. Develop the record with respect to the Department's actions, pursuant to the Department's regulations governing the Tribal Self-Governance Program of the ISDA, to collect and maintain annual

      data on each tribes' tribal enrollment, resident tribal population and trust property;

ii. Develop the record with respect to the Department's actions, pursuant to the Department's regulations governing the Tribal Self-Governance Program of the ISDA, to utilize funding distribution formulas that are reasonably related to the function or service performed;

iii. Develop the record with respect to CPN's knowledge of and acquiescence in the Department's static application of the specified factors in the Funding Formula prior to 1998;

iv. Address the effect of the Interior Board of Contract Appeals decision in <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA 4317R-4318R/02 (2003), 2003 WL 133,274 on the IBIA Decision's holding that CPN is collaterally estopped from raising the issue of the exclusivity of its "jurisdictional area" for purposes of funding distributions under Factor 3 of the Funding Formula; and,

v. Develop the record with respect to the whether funding under Factor 3 of the Funding Formula is to be apportioned in Fiscal Year 2004 and future fiscal years based on the number of tribal members that CPN and the Absentee Shawnee had in 1988 in CPN's former reservation boundaries.

    D.    Grant all other relief that this Court deems just and appropriate.

        Respectfully submitted,

        CITIZEN POTAWATOMI NATION


        By: ___/s/ James D. Bachman___
            James D. Bachman
            D.C. Bar No. 332650

            Ron R. Hutchinson
            D.C. Bar No. 428039

            Doyle & Bachman, LLP
            4350 N. Fairfax Drive
            Suite 420
            Arlington, Virginia  22203
            (703) 465-5440
            Fax:  (703) 465-5593

Dated:  May 5, 2006