IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZEN POTAWATOMI NATION,** ) | |
| **a federally recognized Indian Tribe,** ) | |
| **1601 S. Gordon Cooper Drive** ) | |
| **Shawnee, Oklahoma 74801** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case** |
| ) | **Number:  1:06CV00830** |
| **LYNN SCARLETT, Acting Secretary of the Interior;** ) | |
| **KENNETH REINFELD, Acting Director of the** ) | **Judge Gladys Kessler** |
| **Office of Self-Governance,** ) | |
| **Bureau of Indian Affairs** ) | |
| **Department of the Interior** ) | |
| **1849 C Street, N.W.** ) | |
| **Washington, D.C. 20240** ) | |
| ) | |
| **STEVEN K. LINSCHEID,** ) | |
| **Chief Administrative Judge** ) | |
| **Interior Board of Indian Appeals** ) | |
| **801 North Quincy Street, Suit 300** ) | |
| **Arlington, Virginia  22203** ) | |
| **Defendants.** ) | |
| ) | |

# EXHIBIT A

# TO

# PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET
SUITE 300
ARLINGTON, VA 22203

| | | |
|---|---|---|
| CITIZEN POTAWATOMI NATION, | : | Order Affirming Decision |
|    Appellant, | : | |
| | : | |
|    v. | : | |
| | : | Docket No. IBIA 04-16-A |
| DIRECTOR, OFFICE OF SELF- | : | |
|    GOVERNANCE, BUREAU OF | : | |
|    INDIAN AFFAIRS, | : | |
|    Appellee. | : | January 25, 2006 |

Appellant Citizen Potawatomi Nation (Citizen Potawatomi) seeks review of a pre-award dispute with the Director, Office of Self-Governance (Director), regarding the Citizen Potawatomi's 2004 Annual Funding Agreement (AFA) with the Department of the Interior (Department). The dispute pertains to a determination by the Director not to include $65,521 in the 2004 AFA that the Citizen Potawatomi claim is owed to them, and to the Director's manner of applying a funding formula agreed to in 1988 by the five tribes served by the Shawnee Agency of the Bureau of Indian Affairs (BIA). For the reasons stated below, the Board affirms the Director's decisions.

## Background

Under the Indian Self-Determination and Education Assistance Act (ISDA), 25 U.S.C. §§ 450 et seq., the United States is authorized to enter into compacts with Indian tribes. Pursuant to that Act, tribes do not contract to take over specific programs; rather, they assume comprehensive responsibility for the planning and administration of programs and services previously provided by the United States. See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, modified on rehearing, 257 F.3d 1158 (10th Cir. 2001).

Once the United States enters into a compact with a tribe, the parties ordinarily negotiate an AFA. In 1988, five tribes served by the Shawnee Agency negotiated a formula among themselves for dividing future federal appropriations under ISDA. Those tribes are the Citizen Potawatomi, the Absentee Shawnee Tribe of Oklahoma (Absentee Shawnee), the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of

Oklahoma.  Norton, 248 F.2d at 995.  Under the negotiated formula, the tribes agreed to the distribution of funds pursuant to the following four-factor formula:

> [1] 25% equally divided; [2]25% in proportion to total tribal enrollment; [3] 25% in proportion to resident tribal population within each tribe's jurisdictional area; and [4] 25% in proportion to the amount of trust property in each tribe's jurisdiction. 1/

This formula still provides the basis for distributing funds under AFAs with the five tribes served by the Shawnee Agency.

The Department entered into compacts with the Shawnee Agency tribes in 1990, and the first distribution of BIA Shawnee Agency funds was made to the five tribes in 1991. Application of the 1988 formula resulted in the distribution of available funds in the following percentages:  31.72 percent for the Citizen Potawatomi; 21.26 percent for the Absentee Shawnee; 22.11 percent for the Sac & Fox Nation; 17.51 percent for the Kickapoo Tribe of Oklahoma; and 7.40 percent for the Iowa Tribe of Oklahoma. 2/  See Absentee Shawnee Position Paper, 4/15/99, Office of Self-Governance (1999 OSG Position Paper).

The calculation of these percentages was based in part on the understanding, apparently accepted at the time by the Citizen Potawatomi, the Absentee Shawnee, and the Department, that the Absentee Shawnee and the Citizen Potawatomi shared a common "jurisdictional area" — the area within the boundaries of the former reservation on which both tribes had resided.  Thus, for factor 3 of the 1988 formula — which allocates 25 percent of funds based on the tribal population within each tribe's jurisdictional area — funds were allotted to the Absentee Shawnee and Citizen Potawatomi based on the assumption that the tribes shared a common jurisdictional area.

BIA used these same percentages to annually distribute available funds to the five tribes subject to the 1988 formula until 2000.  For the Absentee Shawnee's 2000 AFA,

---

1/  See Absentee Shawnee Resolution No. AS-88-66, June 13, 1988; Citizen Potawatomi Resolution No. Pott. 88-72, June 8, 1988; Iowa Tribe of Oklahoma Resolution No. I-88-48, June 13, 1988; Kickapoo Tribe of Oklahoma Resolution No. K-88-27, June 14, 1988; and Sac & Fox Nation Resolution No. SF-88-100, June 14, 1988.

2/  This does not include funds for law enforcement and tribal courts programs which were excluded from the formula and divided equally among the five tribes.

however, the Director determined that, with respect to factor 3, an intervening court decision required the Department to reallocate $65,521 of the funds provided to the Absentee Shawnee and provide them instead to the Citizen Potawatomi.

The court decision that led the Director to alter the application of the 1988 formula was <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, 142 F.3d 1325 (10th Cir. 1998). The case arose from a 1992 challenge by the Citizen Potawatomi to an application by the Absentee Shawnee to have the Department take land into trust for the Shawnee within the boundaries of the former Potawatomi reservation. The Citizen Potawatomi argued to the BIA Area Director that federal regulations required the Tribe's consent for the acquisition because the land was within the boundaries of its former reservation. The Area Director rejected that argument on the theory that the Absentee Shawnee and the Citizen Potawatomi shared a common former reservation.

This Board upheld the decision of the Area Director. <u>See</u> <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Anadarko Area Director</u>, 28 IBIA 169 (1995). <u>3/</u> The Board concluded that Congress had recognized rights of the Absentee Shawnee in the Potawatomi Reservation in 1891 when Congress accepted deeds of cession to rights in the reservation from the Absentee Shawnee in exchange for a payment of $65,000 and confirmed allotments made to the Absentee Shawnee from the reservation under the General Allotment Act. <u>Id.</u> Thus, the Board ruled that the consent of the Citizen Potawatomi was not required for the Department to take land into trust for the Absentee Shawnee within the former reservation area.

The Citizen Potawatomi appealed to federal district court, which held that the Absentee Shawnee had no rights in the former Potawatomi reservation. <u>See</u> <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, No. CIV-92-2161-R (W.D. Okla. May 22, 1996). The court of appeals affirmed. <u>See</u> <u>Collier</u>, 142 F.3d 1325. The court of appeals concluded that "the language, legislative history, and historical circumstances of the 1891 Act do not evince a sufficiently clear Congressional intent to abrogate the Potawatomi Tribe's treaty right to the exclusive use and occupancy of its former reservation." <u>Id.</u> at 1334. The court of appeals thus held that the consent of the Citizen Potawatomi was required for the Department to acquire land in trust for the Absentee Shawnee within the former Potawatomi reservation.

------------------------

3/ The Citizen Potawatomi initially filed their challenge in district court but were ultimately required to exhaust their administrative remedies before seeking relief in the federal courts. <u>See</u> <u>Citizen Band Potawatomi</u>, 28 IBIA at 171.

Based in part on the decision in Collier, the Citizen Potawatomi, on September 23, 1998, filed suit in federal district court against the Secretary of the Interior challenging the methods used for determining its funding under the AFAs. Specifically, as relevant here, the Citizen Potawatomi relied on Collier to challenge the Director's determination that the Absentee Shawnee and the Citizen Potawatomi share the same ISDA service area and thus, under factor 3 of the 1988 formula, share the funds provided to that area. The Citizen Potawatomi also challenged a determination by the Director that the 1988 formula is static and does not change as the data pertaining to tribal enrollment, tribal populations, and acreage of trust land change. See Norton, 248 F.3d at 996.

While the Citizen Potowatomi's district court action was pending, the Director revisited the Department's position and determined that Collier required the Department to alter its application of factor 3 in the 1988 formula. See 1999 OSG Position Paper. While the Director recognized that Collier specifically dealt with the acquisition of trust lands, he also concluded that Collier "strongly supports the proposition that the [Absentee Shawnee] does not possess inherent historical authority over what the courts have now determined to be the exclusive former reservation area of the [Citizen Potawatomi]." Id. at 2. The Director interpreted factor 3 in the 1988 formula as being dependent on the tribes' territorial jurisdiction, and concluded that, under Collier, the Absentee Shawnee did not share territorial jurisdiction over the former Potawatomi reservation but rather had jurisdiction only over Absentee Shawnee trust and allotted lands. Id. at 3-4, 7.

The Director recalculated the 1988 funding formula to account for this understanding of the effect of Collier. The Director determined that the original 1988 formula was based on the assumption that the tribal population within the Absentee Shawnee's jurisdictional area was 744, and adjusted that number to 224, which the Director estimated to be the number of Absentee Shawnee Indians living on Absentee Shawnee trust and allotted lands in 1988. The Director increased the tribal population served by the Potawatomi by an equivalent amount. That reduced the percentage of funds to be allocated to the Absentee Shawnee from 21.26 percent to 17.15 percent and increased the percentage to be allocated to the Potawatomi from 31.72 percent to 37.75 percent. This decreased Absentee Shawnee funding by $65,521 and increased Citizen Potawatomi funding by the same amount.

Despite objections by the Absentee Shawnee, the Director decreased the funding provided under the Absentee Shawnee's 2000 and 2001 AFAs by $65,521 and increased the Citizen Potawatomi's funding by the same amount. The Absentee Shawnee submitted claims to the Director under the Contract Disputes Act for reimbursement of these amounts. The Director denied these claims on January 26, 2001 and March 1, 2001, respectively.

On April 25, 2001, the Absentee Shawnee challenged these decisions in a post-award appeal filed under 25 U.S.C. § 450m-1(d) with the Interior Board of Contract Appeals (IBCA). 4/

On the same day that the Absentee Shawnee filed their appeal with the IBCA, the federal court of appeals issued a decision dismissing the Citizen Potawatomi's challenge to the Secretary's application of the 1988 funding formula. See Norton, 248 F.3d 993. With respect to the claims relevant here, the court of appeals affirmed the district court's dismissal on the grounds that the changes in the 1988 formula sought by the Citizen Potawatomi would change the funding allocations for other tribes, who were indispensable parties that could not, as sovereign entities, be joined as parties to the litigation. See id.

In its ruling, the court of appeals rejected the Citizen Potawatomi's argument that the Absentee Shawnee had no basis to claim any interest in the funding that the Absentee Shawnee historically had received for the shared service area. The Citizen Potawatomi had argued that the Absentee Shawnee had no such interest because Collier held that they do not share a reservation with the Citizen Potawatomi and thus do not share a service area with them. Id. at 999-1000. While the Court acknowledged that Collier "held that the United States had failed to adequately demonstrate that the Shawnee and the Citizen Potawatomi share a common former reservation," it expressly noted that "our Collier opinion did not decide whether the Shawnee and the Citizen Potawatomi share a common service area, which is the relevant question at issue here." Id. at 999 (emphasis in original).

In the wake of the ruling in Norton, the IBCA stayed proceedings in the Absentee Shawnee appeal to provide an opportunity for negotiations but no resolution of the dispute was achieved. On August 19, 2002, the IBCA granted the Citizen Potawatomi's application to intervene as a party in the appeal.

On November 4, 2002, the IBCA granted the Absentee Shawnee's motion for summary judgment. See Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA 52 (2002). The IBCA noted that Norton clearly declared that Collier did not control on the question of what constituted the Absentee Shawnee's service area for the purposes of determining funding under the AFAs. The IBCA chided the Director for relying on Collier as the basis for reducing the Absentee Shawnee's funding and for not reconsidering that position on the basis of Norton, which "expressly negates [the Director's] alleged reason for changing [the Absentee Shawnee's] funding formula" and "should have put the matter to rest." Id. at 64. The IBCA concluded that there was "no obligation, legal

---

4/ 25 U.S.C. § 450m-1(d) provides that "all administrative appeals relating to [self-determination] contracts shall be heard by the Interior Board of Contract Appeals."

or otherwise, for the [Director] to modify the original AFA with the Shawnee as a result of <u>Collier</u>," reiterating that "<u>Norton</u> itself made clear that <u>Collier</u> had nothing to do with funding arrangements." <u>Id.</u> at 65.

The IBCA further concluded that Interior's unilateral reduction of the Absentee Shawnee's AFA funding violated 25 U.S.C. § 450j-1(b)(2), which sets forth the conditions under which the Secretary of the Interior may reduce the amount of funding provided in a self-determination contract. One of these conditions is "tribal authorization." 25 U.S.C. § 450j-1(b)(2)(C). The IBCA rejected the Director's argument that the reduction in funding was "tribally authorized" because it merely corrected a "mistake," as permitted by Section 3 of the Absentee Shawnee's AFA. <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, 35 IBCA at 65. The IBCA concluded that parties cannot make a "mistake" about a matter that the parties did not contemplate at the time of the contract. The IBCA noted that, at the time the parties initially entered into their AFAs, which incorporated funding levels based on the 1988 agreement, the parties believed that the two tribes had concurrent jurisdiction over the former Potawatomi reservation and did not contemplate there could be a change until <u>Collier</u> was decided. <u>Id.</u> at 64-65. In sum, the IBCA concluded:

> The Shawnee's consent was to the funding arrangement it originally entered into, not to a unilateral OSG modification ten years later that would deprive them of funds to which they were legally and historically entitled. It is simply not credible that the outcome of the <u>Collier</u> case can accurately be described as the "identification" of a "mistake" in the amount of funding allocated to the Shawnee Tribe, on the basis of a reed as slim as the actual wording of Section 3 of the AFA and without the Tribe's consent.

<u>Id.</u> at 65. Accordingly, the IBCA awarded the Shawnee $65,521 in damages for calendar year 2000 and the same amount for calendar year 2001, with interest. The IBCA also subsequently entered a stipulation awarding the Absentee Shawnee the $65,521 (plus interest) based on the reduction of this funding from its 2002 AFA. <u>See</u> <u>Absentee Shawnee Tribe of Oklahoma v. Director, Office of Self-Governance, Department of the Interior</u>, No. IBCA 459-03 (Dec. 23, 2003).

On September 8, 2003, the Director informed the Citizen Potawatomi that, in order to comply with the 2002 IBCA decision, he had reduced the funding for the Citizen Potawatomi's 2003 AFA by $65,521.00 and was transferring this funding to the Absentee Shawnee. On September 25, 2003, the Citizen Potawatomi filed a Contract Disputes Act claim with the Director for these funds, which was denied January 20, 2004. On March 1, 2004, the Citizen Potawatomi filed a post-award appeal of this decision with the IBCA,

pursuant to 25 C.F.R. § 1000.428.  On March 22, 2005, the IBCA held that the Department's withdrawal of the $65,521.00 was a breach of the contractual agreement represented by the 2003 AFA and ordered those funds restored.  See Appeal of Citizen Potawatomi Nation of Okahoma, IBCA 4522/04, 35 IBCA 207 (2005).

In the meantime, the Citizen Potawatomi also sought to maintain the additional $65,521 in its 2004 AFA.  The Director refused to agree to the inclusion of these funds, based on the IBCA's decision in Appeals of the Absentee Shawnee Tribe, 35 IBCA 52, and the Director's interpretation of the 1988 funding agreement.  In addition, the Citizen Potawatomi argued that, for its 2004 AFA, the 1988 funding formula should be adjusted annually to account for changes in tribal enrollment, tribal populations, and acreage of trust land.  The Director also disagreed with this position.

On December 1, 2003, the Citizen Potawatomi filed this pre-award appeal with the Board pursuant to 25 C.F.R. § 1000.432(b)(2).  On that same date, the Citizen Potawatomi's 2004 AFA was finalized based on the original application of the 1988 formula, with express reservations by the Citizen Potawatomi set forth in the AFA.

On April 16, 2004, the Board issued an order directing the parties to brief whether the Board had jurisdiction over the appeal and whether the appeal should be stayed, narrowed, or dismissed because of the proceedings before the IBCA on the Citizen Potawatomi's 2003 AFA.  The parties agreed that the Board has jurisdiction over the dispute pursuant to 25 C.F.R. § 4.32(b)(2) pertaining to pre-award disputes.  The parties disagreed about the effect of the Citizen Potawatomi's IBCA appeal, as well as other prior adjudicatory decisions, on the scope of the appeal.  On September 14, 2004, the Board ruled that it has jurisdiction over the appeal and reserved consideration on whether the scope of the appeal should be limited in some manner pending briefing on the merits.

On the merits, the Citizen Potawatomi filed opening and reply briefs and the Director filed an answer brief.

<u>Discussion</u>

The Citizen Potawatomi challenge two aspects of the Director's application of the 1988 formula.  They argue that, following Collier, under factor 3 of the formula their jurisdictional area, and therefore their service area, is now exclusive and constitutes the entire area within the boundaries of their former reservation, excluding only Absentee Shawnee trust lands or allotments.  Under this argument, they claim the right to the $65,521 that has been in dispute between the two tribes since 2000.  They additionally argue that, under factors 2, 3, and 4, the numbers used to determine tribal enrollment,

resident tribal population, and trust acreage should be adjusted annually which, according to the Citizen Potawatomi, would result in a further proportional increase in funding for them.

On appeal, the Board reviews a decision in a pre-award dispute for abuse of discretion. See 25 C.F.R. § 1000.432(b)(2). Review of a discretionary decision includes determining whether the legal prerequisites for the exercise of discretion have been met. 5/ See Walter Torske & Sons v. Acting Billings Area Director, 32 IBIA 236, 238 (1998).

We begin with the dispute over the $65,521 the Director declined to include in the Citizen Potawatomi's 2004 AFA. As an initial matter, the question whether this appeal should be stayed, narrowed, or dismissed in favor of the Citizen Potawatomi's IBCA appeal was rendered moot by the IBCA's March 22, 2005 opinion deciding the Citizen Potawatomi's appeal. We note that the IBCA decision does not address any issues pertinent to the questions before the Board in the instant appeal.

Turning to the merits of the question, however, we hold that the Citizen Potawatomi is collaterally estopped by the 2002 IBCA decision in the Absentee Shawnee appeals from relitigating the question of the effect of the Collier decision on the 1988 formula. But even assuming collateral estoppel does not operate here, we conclude that the 1988 formula does not apportion funding to the Citizen Potawatomi and Absentee Shawnee based on legal determinations regarding the extent of their territorial jurisdiction, and thus the Director did not abuse his discretion in determining to apply the original funding percentages with respect to factor 3 of the formula.

Under the doctrine of collateral estoppel, a party generally may not relitigate an issue actually and necessarily determined by a court of competent jurisdiction. See Montana v. United States, 440 U.S. 147 (1979). For the doctrine of collateral estoppel to apply, the issue sought to be precluded must be the same as that involved in the prior litigation; that issue must have been actually litigated; it must have been determined by a valid and final judgment; and the determination must have been essential to the prior judgment. See Restatement (Second) of Judgments § 27 (1982); see also Arizona v. California, 530 U.S.

---

5/ Because we find that the Director made no legal error in his interpretation or application of the 1988 agreement, we do not reach the question whether the Director may have some discretion in the interpretation of such an agreement.

392, 414 (2000); <u>Park Lake Res. Ltd. Liability Co. v. U.S. Dept. of Agriculture</u>, 378 F.3d
1132, 1136 (10th Cir. 2004). <u>6</u>/

     The requirements of collateral estoppel are met.  First, the issue we deem to be
precluded — whether <u>Collier</u> requires the Department to recalculate factor 3 of the 1988
formula — is the same as the question involved in the Absentee Shawnee IBCA appeal.

     Second, the issue was actually litigated.  The parties briefed the issue and the IBCA
expressly decided it, concluding that the <u>Collier</u> decision did not require the Director to alter
funding allocations that were based on the 1988 formula and incorporated into the original
AFAs.  The Citizen Potawatomi argue that the IBCA decision held only that the Director
had failed to establish an alleged "mistake" that would allow him to unilaterally reduce
funding for the Shawnee AFA.  We do not agree.  Although the IBCA's discussion of the
meaning of <u>Collier</u> is interwoven with its analysis as to whether or not Interior's prior
interpretation of the 1988 funding agreement could be deemed a "mistake" within the
meaning of Section 3 of the Absentee Shawnee's AFA, it is clear that the IBCA reached both
issues:  (1) whether <u>Collier</u> required the Department to alter its interpretation of the funding
formula that was embodied in its compact and AFA with the Absentee Shawnee; and
(2) whether Interior's prior interpretation could constitute a "mistake" subject to correction
to which the Absentee Shawnee had consented.  This is evidenced by the opinion's clear and
express holding that <u>Collier</u> imposed "no obligation, legal or otherwise" for the Director to
modify the Absentee Shawnee's AFA, which was based on the 1988 formula agreed to by
the tribes. <u>7</u>/

_____

<u>6</u>/  It is immaterial that the party opposing the Citizen Potawatomi in the IBCA appeal, the
Absentee Shawnee, is not the opposing party in this case.  The analysis here establishes that
the Citizen Potawatomi would be precluded from relitigating the effect of <u>Collier</u> on the
1988 formula with the Absentee Shawnee, and a party precluded from litigating an issue
with an opposing party is also precluded from doing so with another person, subject to
exceptions that do not apply here.  <u>See</u> Restatement (Second) of Judgments § 29 (1982).

<u>7</u>/  The IBCA opinion fails to recognize that the <u>Norton</u> decision was modified on rehearing
and thus mischaracterizes the language of that opinion in part.  The IBCA opinion states
that "<u>Norton</u> made clear that the door was still open for the United States to offer proof of
joint jurisdiction."  35 IBCA at 64-65.  While that was true of the original opinion in
<u>Norton</u>, the specific sentence on which the IBCA opinion relies for this proposition was
deleted on rehearing.  <u>See</u> <u>Citizen Potawatomi Nation</u>, 248 F.2d at 999, <u>modified on reh'g</u>,
257 F.2d 1158.  We do not view this portion of the <u>Norton</u> decision to be essential to the
IBCA's determination that <u>Collier</u> did not require the Department to revise its application of
factor 3 of the 1988 formula.

Indeed, in its recent decision on the Citizen Potawatomi's appeal of the reduction of funding in its 2003 AFA, the IBCA explained that its 2003 decision in Appeals of the Absentee Shawnee restored the funding that the Department had withdrawn from the Absentee Shawnee for three reasons:

> because [1] the five tribes had been receiving their allocated funding for over ten years (as reflected by the Compact); [2] there was no direct connection between Collier and the Director's subsequent decision to reduce Shawnee funds; and [3] 25 U.S.C. 450j-1(b)(2) prohibited the Government from making unilateral reductions in their funding without the tribe's consent. [8/]

Appeal of Citizen Potawatomi Nation of Oklahoma, 35 IBCA at 208.  The IBCA thus confirmed that it had held that the Director's reduction in funding was not required by Collier.

The third criterion for collateral estoppel is met because the issue was determined as part of a valid and final judgment issued by the IBCA.

Whether the IBCA decision meets the fourth criterion for collateral estoppel — that the determination of the issue was essential to the judgment — is a closer question.  The IBCA appeal involved the question whether the Director erred in making unilateral reductions in the Absentee Shawnee's AFAs in response to the Collier decision.  As discussed above, the IBCA decision in favor of the Absentee Shawnee rests on two alternative rulings: that the Collier decision did not require a change in the Absentee Shawnee's "jurisdictional area" as understood by the parties to the 1988 formula; and that, even if the Collier decision did require such a change, the Director lacked authority under ISDA to unilaterally reduce the Absentee Shawnee's funding based on a change in the understanding of the legal extent of the Absentee Shawnee's jurisdictional area.

Some courts and commentators maintain that, where a decision by a court of first instance rests on two alternative rulings, neither ruling is considered "necessary" to the decision.  See, e.g., Restatement (Second) of Judgments § 27(i); 18 C. Wright, A. Miller &

---

8/  The statement that "there was no direct connection between Collier and the Director's subsequent decision to reduce Shawnee funds" necessarily refers to the IBCA's conclusion that Collier did not compel the Director to reduce the Shawnee funds, not whether the Director himself made such a connection.  That is because, as discussed above, the Director's express reason for making the reduction was the Collier decision.

E. Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> § 4421 (2005).  The concern is that a rule that would give estoppel effect to both rulings would leave the losing party who concedes the adequacy of one ground no appellate remedy for the patent invalidity of the other except a frivolous appeal.  <u>See</u> <u>Dozier v. Ford Motor Co.</u>, 702 F.2d 1189, 1194 & n.9 (D.C. Cir. 1983).  Under these authorities, however, when a decision is issued by an appellate body that rules on both alternative bases for deciding the appeal, the rulings on both alternative bases are considered "necessary" to the decision for collateral estoppel purposes.  <u>See</u> <u>id.</u>; <u>Restatement (Second) of Judgments</u> § 27(o) (1982).

We determine that, under the circumstances here, it would not be improper to apply collateral estoppel to the IBCA's ruling that <u>Collier</u> did not require the Department to recalculate the 1988 funding formula.  In the administrative context, the IBCA is the highest adjudicatory body that could hear the Citizen Potawatomi's claim in the <u>Absentee Shawnee</u> case, so that concerns about the effects of further administrative appeals are inapplicable.  Furthermore, in this particular case, there also can be no concern about the effect collateral estoppel would have with respect to federal court litigation, because the dismissal in <u>Norton</u> precludes litigating the question of the effect of <u>Collier</u> on the Shawnee Agency AFAs in federal court.  Thus, we conclude that the Citizen Potawatomi are barred from relitigating the issue of the effect of <u>Collier</u> on the 1988 formula in this appeal.  And, since the only basis advanced by the Citizen Potawatomi for regaining the disputed $65,521 is based on the <u>Collier</u> decision, their appeal of the Director's decision not to provide these funds fails.

Even assuming the IBCA decision does not control, we independently conclude that <u>Collier</u> does not require the Department to alter the application of the 1988 formula.  It is clear that, regardless of the meaning of <u>Collier</u>, factor 3 contemplates that, in carrying out duties contracted under ISDA, the Citizen Potawatomi and the Absentee Shawnee each would serve their own tribal members.  Factor 3 provides for the allocation of a portion of funds based on the "tribal population within each tribe's jurisdictional area."  In the typical case, this language would appear to mean that, within a certain geographical area, each tribe would serve whatever tribal members resided within that area.

In the unusual situation of the Citizen Potawatomi and the Absentee Shawnee, however, such a reading could lead to an anomalous and implausible result.  At the time the agreement was made, both tribes were understood to share the "jurisdictional area" represented by the boundaries of the former reservation.  Thus, in factor 3, the term "jurisdictional area" as understood at that time did not provide a basis for apportioning funds between the two tribes.  Read literally, factor 3 would appear to require funding be apportioned to both tribes based on the entire tribal population within the former reservation boundaries, thus covering each tribal member twice.  Attributing such intent,

however, is implausible.  It would also be inconsistent with past practice, because the record shows that the two tribes were apportioned different percentages of funds under factor 3, with the Citizen Potawatomi allocated approximately 36 percent (of the 25 percent of total funding allocated pursuant to factor 3), and the Absentee Shawnee approximately 22 percent.  See 1999 OSG Position Paper at 7.  Rather, it appears that factor 3 of the agreement contemplated, with respect to the Citizen Potawatomi and the Absentee Shawnee, that funding would be apportioned based on the number of tribal members each tribe had within the former reservation boundaries.  Collier does nothing to alter this intent.

Next we turn to the second question raised by the Citizen Potawatomi:  whether the 1988 formula should be recalculated annually to reflect current data.  9/  As a threshold matter, the Director argues that this question was resolved by the federal court of appeals in Norton, which dismissed this claim on indispensable party grounds.  Administrative tribunals, however, are not bound to invoke traditional rules of joinder and of necessary or indispensable parties.  See National Licorice Co. v. NLRB, 309 U.S. 350 (1960).  The Board has adjudicated a number of other cases without the participation of tribes who might be deemed to be necessary or indispensable parties under the federal rules.  See, e.g., Indians of the Quinault Reservation v. Commissioner of Indian Affairs, 9 IBIA 63, 65 (1981).  10/  Thus, the Board will consider this issue on the merits.

---

9/  We note that the Citizen Potawatomi allege that, if the formula was calculated with current-day numbers, their share of the funding would increase from 31.72 percent to 42.42 percent.  While the Citizen Potawatomi provide no citation for the source of the data on which this calculation relies, they do provide a declaration providing the data and the effects of its application to the 1988 formula.  As the Director has not disputed this allegation, the Board considers it sufficient to show that the Citizen Potawatomi suffer an injury from the alleged improper application of the formula and thus have standing to appeal on this issue.

10/  Tribes deemed to be interested parties may seek leave to intervene in such cases or may be granted permission to participate amicus curiae.  See Indians of the Quinault Reservation, 9 IBIA at 65 & n.4.  None of the other parties to the 1988 agreement have sought to participate in this appeal.  The Board notes that it mistakenly did not include the other parties to the 1988 agreement in the distribution list for this appeal and thus did not notify them of its docketing.  The Citizen Potawatomi, however, distributed its key filings, including its notice of appeal and briefs on the merits, to the other four potentially affected tribes.  Thus, the other potentially interested parties received actual notice of the appeal.  In any event, because the Board decides this appeal against the Citizen Potawatomi, the Board's omission of the other parties to the 1988 formula from the distribution list is harmless error.

The 1988 formula constitutes an agreement among the tribes that the Board interprets by applying the rules of contract interpretation. The objective of the interpretation is to determine the intent of the parties — here, the five tribes. In interpreting an agreement "[w]ords and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." Restatement (Second) of Contracts, § 202(1).

The intent of the parties may be revealed in an agreement's plain language. See Nevaco, Inc. v. Acting Pheonix Director, 24 IBIA 157, 164 (1991). The Citizen Potawatomi argue that, by its plain language, the 1988 agreement requires the formula to be recalculated annually based on the actual tribal enrollment, resident tribal population, and trust acreage each year. This argument has some force. If the parties to the agreement had wished to establish a static percentage share for each tribe, they simply could have determined the percentages and set them forth in the agreement. In addition, it would be reasonable for a formula to enable the allocation of funding to shift proportionally as the need among the tribes shifted, and it would seem that tribal enrollment, resident population, and trust acreage provide a measure of that need.

Nevertheless, the agreement's language is ultimately ambiguous on this point. The agreement does not state that the formula will be recalculated. The agreement does not state when or how often the formula will be recalculated, or how frequently a census would be required to be performed to determine tribal population for each AFA. Nor do we think it would have been unreasonable for the parties to intend that existing data be applied to the formula to establish a fixed allocation for future years.

In the face of this ambiguity in the agreement's language, the Board looks to the subsequent actions of the parties. As the Restatement (Second) of Contracts explains:

> Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

§ 202(4). Under this theory, the Board has repeatedly held that the meaning of ambiguous language in a contract may be determined by the parties' performance. See Thompson v. Acting Northwest Regional Director, 40 IBIA 216, 225 (2005), rev'd in part on other grounds, Thompson v. U.S. Dept. of the Interior, No. CV-05-044-E-BLW (D. Idaho Sept. 27, 2005); Plains Marketing and Transportation, Inc. v. Acting Muskogee Area

Director, 37 IBIA 73, 83 (2001); Plumage v. Billings Area Director, 19 IBIA 134, 140 (1991).

Looking to the parties' performance, the record shows that the 1988 agreement has been implemented based on a static application of the formula since its inception.  This performance has been rendered with the knowledge of the nature of the performance and opportunity for objection, but it was not until 1998 that the Citizen Potawatomi objected to this reading of the agreement.  None of the other parties has come forward to support the Citizen Potawatomi's reading of the agreement. 11/  Thus, we conclude that the Director did not err in determining that the parties to the 1988 agreement intended for the formula to apply in a static manner unless and until the parties agreed otherwise and thus  did not abuse his discretion in applying the formula in that way.

Conclusion

Therefore, pursuant to the authority delegated to the Board of Indian Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the Board affirms the Director's pre-award decisions not to include the disputed $65,521 in the Citizen Potawatomi's 2004 AFA and not to alter the application of the 1988 formula based on current data regarding tribal enrollment, tribal population, and acreage of land in trust.

I concur:

_____// original signed_____          _____// original signed_____
Katherine J. Barton                              Steven K. Linscheid
Acting Administrative Judge                      Chief Administrative Judge

---

11/  According to the Citizen Potawatomi's calculations, one other tribe, the Iowa Tribe, would see its allocation increase under a non-static application of the 1988 formula (from 7.56 percent to 10.71 percent).