**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                                      |     |                        |
| ------------------------------------ | --- | ---------------------- |
| **CITIZEN POTAWATOMI NATION,**       | )   |                        |
|                                      | )   |                        |
| **Plaintiff,**                       | )   |                        |
|                                      | )   |                        |
| **v.**                               | )   | **Case**               |
|                                      | )   | **Number:  1:06CV00830** |
| **DIRK KEMPTHORNE, <u>et al.</u>,**  | )   |                        |
|                                      | )   | **Judge Gladys Kessler** |
| **Defendants.**                      | )   |                        |

---

## MOTION FOR SUMMARY JUDGMENT

Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys, hereby files this Motion for Summary Judgment and moves for summary judgment in the above-captioned action pursuant to Rule 56 of the Federal Rules of Civil Procedure.   A Statement of Material Facts Not in Genuine Dispute is set forth herein in support of this motion.   A Statement of Points and Authorities in support of this motion is also set forth herein in support of this motion.

CITIZEN POTAWATOMI NATION

James D. Bachman
D.C. Bar No. 332650

Ron R. Hutchinson
D.C. Bar No. 428039

Doyle & Bachman, LLP
4350 N. Fairfax Drive, Suite 420
Arlington, Virginia  22203
(703) 465-5440
Fax:  (703) 465-5593

Dated:  December 29, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**CITIZEN POTAWATOMI NATION,**          )
                                        )
    **Plaintiff,**  )
                                        )
    **v.**           )   **Case**
                                        )   **Number:  1:06CV00830**
**DIRK KEMPTHORNE, <u>et al.</u>,**     )
                                        )    **Judge Gladys Kessler**
    **Defendants.** )
_____)

### STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE
### <u>IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys, hereby files this Statement of Material Facts Not In Genuine Dispute In Support of Plaintiff's Motion for Summary Judgment in the above-captioned action pursuant to Rule 56 of the Federal Rules of Civil Procedure.

1.    Plaintiff is a federally recognized Indian Tribe located in the State of Oklahoma who has entered into a Compact of Self-Governance and Annual Funding Agreements with the United States Department of Interior (the "Department" ) pursuant to the Tribal Self-Governance Program of Title IV of the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 458aa-458hh.  Pursuant to the Tribal Self-Governance Program, the Department is authorized to negotiate and enter into Compacts and Annual Funding Agreements ("AFA") with Indian tribes under which the

Indian tribes assume comprehensive responsibility for the planning and administration of programs and services previously provided by the Department and the Department transfers the related federal funds to the tribes to administer.   (Exhibit A hereto - Administrative Record ("AR") at Tab 4 and Tab 45.)

2.    In 1988, a funding formula (the "Funding Formula") for use in distributing federal funding was developed by the Department and the five tribes served by the Shawnee Agency of the Bureau of Indian Affairs.  The five tribes are CPN, the Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma.  (Exhibit A hereto – AR at Tab 40 and Tab 44.)

3.    In 1988, CPN, along with the four other tribes served by the Shawnee Agency (the Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma), issued tribal resolutions reflecting agreement that the Funding Formula was to be used by the Department for distributing federal appropriations in connection with "all Bureau of Indian Affairs provided operation and services in FY 89 and future years."  (Exhibit A hereto – AR at Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief - Declaration of Rhonda Butcher at page 1 (¶2) and Attachments 1 through 5.)  The tribal resolutions executed in 1988 by CPN and the four other Shawnee Agency tribes state, among other things, the following with respect to the Funding Formula:

> A RESOLUTION OF AGREEMENT WITH [CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma] TO CONTRACT THE FY89 OPERATION AND SERVICE OF THE SHAWNEE AGENCY OF THE BUREAU OF INDIAN AFFAIRS
> *     *     *     *     *     *     *     *     *     *

the Shawnee Agency tribes have agreed to a distribution of funds in the following formula:  25% equally divided, 25% in proportion to total tribal enrollment, 25% in proportion to resident tribal population within each tribe's jurisdictional area, and 25% in proportion to the amount of trust property in each tribe's jurisdiction.
*       *       *       *       *       *       *       *       *       *
the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency
*       *       *       *       *       *       *       *       *       *
THEREFORE, BE IT RESOLVED, that the [CPN, Absentee Shawnee Tribe of Oklahoma, the Kickapoo Tribe of Oklahoma, the Sac and Fox Nation, and the Iowa Tribe of Oklahoma] hereby agrees with the tribes served by the Shawnee Agency to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years.

(Exhibit A hereto – AR at Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief -

Declaration of Rhonda Butcher at Attachments 1 through 5.)

        4.      The only evidence contained in the administrative record in CPN's appeal

docketed as IBIA 04-16-A with respect to the meaning of the Funding Formula

agreement is (1) the language of the agreement itself as set forth in the five tribal

resolutions that comprise the agreement (Exhibit A hereto – AR – Tab 60 – CPN

Opening Brief – Declaration of Rhonda Butcher, at Attachments 1 through 5); (2) the

evidence submitted by CPN indicating that the intent was that the factors specified in the

Funding Formula must be applied each year by the Department based on the current,

actual tribal enrollment, resident tribal population and trust acreage that exists in that

year.  (Exhibit A hereto – AR at Tab 4 – CPN's AFA for Fiscal Year 2004 (at Section 3

and Footnotes A and W); Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief –

Declaration of Rhonda Butcher; Tab 66 – IBIA Decision, at page 173 (noting that none of

the other four tribal parties came forward to support or deny CPN's interpretation of the

Funding Formula agreement); (3) a letter dated November 15, 1999 from the Interior

Assistant Secretary-Indian Affairs (Exhibit A hereto – AR at Tab 40); and (4) a letter dated April 15, 1999 from the Director, Office of Self-Governance, Bureau of Indian Affairs (Exhibit A hereto – AR at Tab 44).

5.     In a 1999 memorandum prepared by the Department itself, the Department explained that although service area and territorial jurisdiction are not necessarily co-extensive, in the case of the five Shawnee Agency tribes and the 1988 inter-tribal resolutions, the Department determined that the service area designations were made with specific and exclusive reference to territorial jurisdiction under Factor 3 of the Funding Formula.  (Exhibit A hereto – AR at Tab 44, pages 2-3.)

6.     In a letter dated November 15, 1999, the Department's Assistant Secretary for Indian Affairs at the time (Mr. Kevin Gover) explained that although jurisdictional area and service area under the ISDA do not have to be synonymous, the Department has discretion to take former reservation boundaries into account to define service area for purposes of contracting and compacting Bureau of Indian Affairs programs under the ISDA.  He further explained that the situation in Oklahoma is unique in that there are no present reservation boundaries and that in developing Factor 3 of the Funding Formula, the former reservation boundaries were taken into account to define a tribe's jurisdictional area.  He also specifically stated that:

> When the Department took "former reservation boundaries" into account in determining "jurisdictional area" under prong (3) of the formula, it was acting on the conclusion of law that the AST [Absentee Shawnee] shared a common former reservation area with Citizen Potawatomi Nation (CPN). That legal conclusion was subsequently held incorrect by the federal courts in <u>Collier</u>.

 (Exhibit A hereto – AR at Tab 40.)

7.      Prior to Fiscal Year 1999, CPN did not participate in the Tribal Self-Governance Program but, instead, had entered into self-determination contracts with the Department pursuant to the Indian Self-Determination Program of Title I of ISDA, 25 U.S.C. §§ 450f-450n.  (Plaintiff's Complaint at ¶ 8.)

8.      Beginning with Fiscal Year 1999, CPN no longer entered into self-determination contracts with the Department under the Indian Self-Determination Program of Title I of the ISDA.  (Plaintiff's Complaint at ¶ 13.)

9.      In Fiscal Year 1999, CPN began its participation in the Tribal Self-Governance Program when it executed its first Compact of Self-Governance dated September 16, 1998.  (Exhibit A hereto – AR at Tab 45; Plaintiff's Complaint at ¶¶ 13-14.)

10.      Pursuant to its Compact of Self-Governance, CPN has entered into AFA's with the Department under the Tribal Self-Governance Program for each fiscal year since Fiscal Year 1999.  Each of those AFA's has been governed by the general terms of CPN's Compact of Self-Governance. (Plaintiff's Complaint at ¶ 14.)

11.      Shortly after execution on September 16, 1998 of its first Compact of Self-Governance pursuant to the Tribal Self-Governance Program of the ISDA, CPN filed suit on September 23, 1998 in federal district court in the Western District of Oklahoma challenging the methods used by the Department in applying the Funding Formula for determining funding under CPN's AFA for Fiscal Year 1999.  CPN's civil action challenged, among other things, the Department's determinations to (a) use outdated 1988 data for purposes of applying the Funding Formula in Fiscal Year 1999 and future years and (b) apply the Funding Formula based on a determination that CPN shared its

jurisdictional area with the Absentee Shawnee Tribe for purposes of Factor 3 of the Funding Formula (25% in proportion to resident tribal population within each tribe's jurisdictional area). That civil action was ultimately dismissed without ever addressing the merits of the issues raised by CPN. (Exhibit A hereto – AR at Tab 23; Tab 66 – IBIA Decision dated Jan. 25, 2006, at page 163; Citizen Potawatomi Nation v. Norton, 248 F.3d 993, modified on rehearing, 257 F.3d 1158 (10th Cir. 2001)).

12.    In December 2000, the Department issued, for the first time, regulations implementing the Tribal Self-Governance Program provisions of the ISDA. Those regulations became effective January 1, 2001. (65 Fed. Reg. 78,688 (Dec. 15, 2000); Plaintiff's Complaint at ¶ 22.)

13.    Among other things, the regulations implementing the Tribal Self-Governance Program provisions of the ISDA provide that a tribe may appeal pre-award disputes that arise prior to execution of an AFA or a Compact directly to the Interior Board of Indian Appeals ("IBIA"). (25 C.F.R. § 1000.432(b)(2); Plaintiff's Complaint at ¶ 23.)

14.    Prior to execution of its Fiscal Year 2004 AFA, CPN, by letter dated December 1, 2003, filed a pre-award appeal with the IBIA, pursuant to 25 C.F.R. § 1000.432(b)(2), challenging the Department's determinations to (a) continue to use outdated 1988 data for purposes of applying factors specified in the Funding Formula in Fiscal Year 2004 and (b) to continue to apply Factor 3 of the Funding Formula based on a determination that CPN shares its jurisdictional area with the Absentee Shawnee Tribe. (Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006, at page 166; Plaintiff's Complaint at ¶ 24.)

15.    The IBIA determined that it had jurisdiction over CPN's appeal and that it could address the merits of CPN's appeal.  The IBIA docketed CPN's appeal as Docket No. IBIA 04-16-A.  (Exhibit A hereto – AR at Tab Tab 54 – IBIA Order dated April 16, 2004; Tab 58 - IBIA Order dated Sept. 14, 2004; Plaintiff's Complaint at ¶ 25.)

16.    During the course of the IBIA proceedings, CPN objected to the administrative record produced by the Department.  CPN objected that the Department had failed to include any data at all indicating the actual tribal enrollment, resident tribal population and trust property that the Department utilized in determining CPN's funding for its Fiscal Year 2004 AFA.  CPN also objected to the Department's failure to include in the administrative record a certification, as required by 43 C.F.R. § 4.335(b)(3), that the record contained all the information and documents utilized by the Department in rendering its funding decision with respect to CPN's Fiscal Year 2004 AFA.  (Exhibit A hereto – Tab 58 - IBIA Order dated Sept. 14, 2004 at page 2; Plaintiff's Complaint at ¶ 26.)

17.    In an Order dated September 14, 2004, the IBIA ruled that the Department was not required to produce any documents relating to tribal enrollment, resident tribal population and trust property since it was the Department's position that it was not information that the Department considered or needed to consider in determining CPN's share of the disputed Fiscal Year 2004 AFA funding.  The IBIA's September 14, 2004 Order also stated that "[w]hether the Director's position is correct, either as a matter of law or as proper exercise of discretion, is one of the issues before the Board in this appeal."  The IBIA's Order also stated that:

> To the extent that the Nation contends that the Director has committed legal error or abused his discretion in failing to consider updated factual

statistics and failing to agree to adjusted funding levels to conform to
those statistics, the Nation is not precluded from raising those arguments
in this appeal and may append to its brief any documents or information
that it considers appropriate for the Board to consider in reviewing the
Director's decision.

(Exhibit A hereto – AR at Tab 58 – IBIA Order dated Sept. 14, 2004, pages 2-3).

18.    The IBIA's September 14, 2004 Order did, however, require that the

Department file with the IBIA, on or before October 1, 2004, a certification stating that

the administrative record submitted to the IBIA was complete.  The IBIA Order also

stated that if the administrative record is not complete, the Department shall supplement

the record accordingly by that date, and provide the required certification of

completeness.  (Exhibit A hereto – AR at Tab 58 - IBIA Order dated Sept. 14, 2004, at

page 2.)

19.    The Department never filed any certification with the IBIA stating that

the administrative record was complete nor did the Department provide any further

supplemental documents.  (Plaintiff's Complaint at ¶ 28.)

20.    Subsequently, by decision dated January 25, 2006, the IBIA denied the

merits of CPN's appeal in Citizen Potawatomi Nation v. Director, Office of Self-

Governance, 42 IBIA 160 (January 25, 2006).  (Exhibit A hereto – AR at Tab 66 - IBIA

Decision dated Jan. 25, 2006.)

21.    Since its inception in 1988, the Funding Formula has been implemented

by the Department based on a static application.  (Exhibit A hereto – AR at 66 - IBIA

Decision dated Jan. 25, 2006, at page 173.)

22.    In its Opening Brief submitted to the IBIA, CPN provided the data

available to CPN at that time regarding total tribal enrollment, total tribal resident

population and total trust property for each of the five Shawnee Agency tribes. This data indicates that if the Funding Formula is applied using that data, CPN's share of funding would increase by approximately 10%. (Exhibit A- AR at Tab 66 - IBIA Decision, at page 171 (Footnote 9); Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief – Declaration of Rhonda Butcher, at pages 1-3).

23.    The IBIA Decision stated the following with respect to CPN's argument:

> This argument has force. If the parties to the agreement had wished to establish a static percentage share for each tribe, they simply could have determined the percentages and set them forth in the agreement. In addition, it would be reasonable for a formula to enable the allocation of funding to shift proportionally as the need among the tribes shifted, and it would seem that tribal enrollment, resident population, trust acreage provide a measure of that need.

(Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006, at page 172.)

24.    The IBIA Decision held, however, that the language of the Funding Formula was "ultimately ambiguous on this point" because the Funding Formula "does not state that the formula will be recalculated" and "does not state when or how often the formula will be recalculated, or how frequently a census would be required to be performed to determine tribal population for each AFA." The IBIA Decision also added that "[n]or do we think it would have been unreasonable for the parties to intend that existing data be applied to the formula to establish a fixed allocation for future years." (Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006, at page 172.)

25.    The IBIA Decision then held that the meaning of the ambiguous language should be determined by the parties' performance to determine the meaning of the Funding Formula:

> Looking to the parties' performance, the record shows that the 1988 agreement [*the Funding Formula*] has been implemented based on a static

application of the formula since its inception.  This performance has been rendered with the knowledge of the nature of the performance and opportunity for objection, but it was not until 1998 that the Citizen Potawatomi objected to this reading of the agreement.  None of the other parties has come forward to support the Citizen Potawatomi's reading of the agreement [footnote deleted].  Thus, we conclude that the Director did not err in determining that the parties to the 1988 agreement intended for the formula to apply in a static manner unless and until the parties agreed otherwise and thus did not abuse his discretion in applying the formula in that way.

(Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006, at page 173.)

26.    The administrative record in CPN's IBIA appeal docketed as IBIA 04-16-A did not contain any evidence with respect to CPN's knowledge prior to 1998 of the nature of the Department's application of the Funding Formula or CPN's opportunity to object to such application by the Department prior to 1998.  (Exhibit A hereto – AR.)

27.    With respect to CPN's contention that the decision in Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325 (10th Cir. 1998) requires the Department to apply Factor 3 of the Funding Formula based on a determination that CPN does not share its jurisdictional area with the Absentee Shawnee Tribe, the IBIA Decision held that CPN was collaterally estopped from litigating this issue based on the prior decision of the Interior Board of Contract Appeals in Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA  52 (2002) ("Absentee Shawnee Decision").  (Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006, at pages 167-170.)

28.    The Absentee Shawnee post-award appeal that resulted in the Absentee Shawnee Decision was filed by the Absentee Shawnee's on April 25, 2001.  (Exhibit A hereto – AR at Tab 22; Tab 16 – Absentee Shawnee Decision, at page 5.)

29.     Sixteen months after the filing of the appeal by the Absentee Shawnee, CPN filed, on August 9, 2002, an application "to intervene as either a party or an amicus" in the action that resulted in the <u>Absentee Shawnee</u> Decision.  (Exhibit A hereto – AR at Tab 16 – <u>Absentee Shawnee</u> Decision, at page 6.)

30.     On August 19, 2002, the Interior Board of Contract Appeals granted CPN's status as an "intervenor" in the action that resulted in the <u>Absentee Shawnee</u> Decision.  (Exhibit A hereto – AR at Tab 16 – <u>Absentee Shawnee</u> Decision, at page 6.)

31.     Final briefs were received by the Interior Board of Contract Appeals on October 21, 2002 in the action that resulted in the <u>Absentee Shawnee</u> Decision.  (Exhibit A hereto – AR at Tab 16 – <u>Absentee Shawnee</u> Decision, at page 6.)

32.     The Interior Board of Contract Appeals issued the <u>Absentee Shawnee</u> Decision on November 4, 2002.  (Exhibit A hereto – AR at Tab 16 – <u>Absentee Shawnee</u> Decision, at page 1.)

33.     In a subsequent ruling in connection with the <u>Absentee Shawnee</u> Decision, the Interior Board of Contract Appeals held that CPN "was not a party to the Appeal before the Board" and that the issue of CPN's entitlement to the $65,521 in funds in future fiscal years "was not before the Board" and that "we have no authority to" award CPN any similar amount of funds.  (Exhibit D hereto – Decision in <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA No. 4317R-4318R/02, Jan. 14, 2003 (the "<u>Absentee Shawnee II</u> Decision").)

34.     Even though the IBIA Decision found that CPN was collaterally estopped from litigating the merits of the Factor 3 shared jurisdictional issue, the IBIA Decision went ahead and addressed the merits.  On the merits, the IBIA Decision notes that at the

time in 1988 when the Funding Formula was first executed it was understood by the

Department, with respect to Factor 3, that both CPN and the Absentee Shawnee shared

the "jurisdictional area" represented by the boundaries of the former reservation. The

IBIA Decision went on to conclude that, as a result, it "appears" that Factor 3 of the

Funding Formula contemplated, with respect to CPN and the Absentee Shawnee, "that

funding would be apportioned based on the number of tribal members each tribe had

within the former reservation boundaries" and that nothing in <u>Citizen Band Potawatomi</u>

<u>Indian Tribe of Oklahoma v. Collier</u>, 142 F.3d 1325 (10th Cir. 1998) altered this

perceived intent. (Exhibit A hereto – AR at Tab 66 - IBIA Decision dated Jan. 25, 2006,

at pages 170-171.)


Respectfully submitted,

CITIZEN POTAWATOMI NATION


By:  __/s/ James D. Bachman_____
        James D. Bachman
        D.C. Bar No. 332650

        Ron R. Hutchinson
        D.C. Bar No. 428039

        Doyle & Bachman, LLP
        4350 N. Fairfax Drive
        Suite 420
        Arlington, Virginia  22203
        (703) 465-5440
        Fax:  (703) 465-5593

Dated:  December 29, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CITIZEN POTAWATOMI NATION,                           )
                                                    )
        Plaintiff,                                   )
                                                    )
        v.                                           )        Case
                                                    )        Number:  1:06CV00830
DIRK KEMPTHORNE, <u>et al.</u>,                      )
                                                    )        Judge Gladys Kessler
        Defendants.                                  )
_____)


STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

        Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys,

hereby submits this Statement of Points and Authorities in support of its Motion for

Summary Judgment.


                        CITIZEN POTAWATOMI NATION

                                James D. Bachman
                                D.C. Bar No. 332650

                                Ron R. Hutchinson
                                D.C. Bar No. 428039

                                Doyle & Bachman, LLP
                                4350 N. Fairfax Drive, Suite 420
                                Arlington, Virginia  22203
                                (703) 465-5440
                                Fax:  (703) 465-5593
Dated:  December 29, 2006

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

I.    CPN Has Established a Right to the Relief Requested . . . . . . . .     2

II.   Under Either a De Novo Standard of Review or an Arbitrary
      and Capricious Standard of Review, This Court Should Find
      That the the IBIA Decision Should Be Overturned and
      Remanded Back to the IBIA For Further Proceedings . . . . . . . .     4

III.  There Are No Genuine Issues of Material Facts and Entry of
      Summary Judgment Against the United States Is Appropriate . .     6

      A.    This Court Should Find That There Are No
            Genuine Issues of Material Facts With Respect
            To Count I of CPN's Complaint and Entry of
            Summary Judgment is Appropriate on Count I . . . . . . . . .     7

            1.    The Undisputed Material Facts Establish
                  That the Ambiguity Holding is Arbitrary,
                  Capricious and Otherwise Erroneous . . . . . . . . . . .     8

            2.    Even if This Court Upholds the Holding of
                  Ambiguity, This Court Should Still Find That
                  the IBIA Decision Is Erroneous Because the
                  Extrinsic Evidence Regarding CPN's Knowledge
                  and Actions Relied Upon By the IBIA Does Not
                  Exist in the Administrative Record . . . . . . . . . . . . .    20

      B.    This Court Should Find That There Are No Genuine
            Issue of Material Facts With Respect to Count II of
            CPN's Complaint and Entry of Summary Judgment
            Is Appropriate on Count II . . . . . . . . . . . . . . . . . . . . . . . .    24

      C.    This Court Should Find That There Are No Genuine
            Issues of Material Facts With Respect to Count III of
            CPN's Complaint and Entry of Summary Judgment
            Is Appropriate on Count III . . . . . . . . . . . . . . . . . . . . . . .    33

**IV.    There Are No Indispensable Party Issues That Could Affect This Court's Ability to Grant This Motion For Summary Judgment Against the Government** . . . . . . . . . . . . . . . . . . . . . . . . . .    **40**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **44**

## TABLE OF CASES AND AUTHORITIES

## CASES

Adams v. Bell, 711 F.2d 161 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . .    30

America First Inv. Corp. v. Goland, 925 F.2d 1518 (D.C. Cir. 1991) . . . . . . . .    9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . .    6

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1985) . . . . . . . . . . . . . . . . . . . . .    6, 7

Cherokee Nation of Oklahoma v. U.S., 190 F.Supp.2d 1248
        (E.D. Okla. 2001), aff'd, 311 F.3d 1054 (10th Cir. Okla. 2002),
        rev'd on other grounds, 543 U.S. 631, 125 S.Ct. 1172 (2005) . . . . . . . .    4

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d
        1325 (10th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24, 26,
                                                                                                                    27, 31,
                                                                                                                    34, 35,
                                                                                                                    36, 37,
                                                                                                                    38, 39

*Citizen Potawatomi Nation v. Norton, 248 F.3d 993 (10th Cir. 2001),
        modified on rehearing, 257 F.3d 1158 (10th Cir. 2001) . . . . . . . . . . . . .    23, 35,
                                                                                                                    36, 40,
                                                                                                                    42

Consol. Gas Transmission Corp v. FERC, 771 F.2d 1536, 1546
        (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Feezor v. Babbit, 953 F.Supp. 1, 6 (Footnote 4) (D.D.C. 1996) . . . . . . . . . . . .    3, 5, 43

Fort Sumter Tours, Inc. v. Babbit, 202 F.3d 349, 358 (D.C. Cir. 2000). . . . . . .    9

National Licorice Co. v. NLRB, 309 U.S. 350 (1960) . . . . . . . . . . . . . . . . . . . .    42

Petroleum Communications, Inc. v. F.C.C., 22 F.3d 1164, 1172
        (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

Ransom v. Babbitt, 69 F.Supp.2d 141, 148 (D.D.C. 1999) . . . . . . . . . . . . . . . .    3, 5, 43

Shoshone-Bannock Tribes of Fort Hall v. Shalala, 998 F.Supp. 1306
        (D.Or. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

U.S. v. 111.2 Acres of Land, 293 F.Supp. 1042, aff'd, 435 F.2d 561
    (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

WMATA v. Mergentime Corp., 626 F.2d 959, 961 (D.C. Cir. 1980) . . . . . . . . .  9

Yamaha Corp. of America v. United States, 961 F.2d 245, 254
    (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 27

1901 Wyoming Ave. Coop Assoc. v. Lee, 345 A.2d 456, 461 n.7
    (D.C. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## ADMINISTRATIVE DECISIONS

*Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001,
    35 IBCA 52 (Nov. 4, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 26,
    27, 28,
    29, 30,
    31, 32,
    33

*Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA No.
    4317R-4318R/02, 2003 WL 133,274 (January 14, 2003) . . . . . . . . . . .  27, 28,
    29, 31

Appeal of Citizen Potawatomi Nation of Oklahoma, IBCA No. 4522/04,
    35 IBCA 207, 05-1 BCA ¶ 32,919 (March 22, 2005) . . . . . . . . . . . . . .  31, 32

Indians of the Quinault Reservation v. Commissioner of Indian Affairs,
    9 IBIA 63 (Oct. 15, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

## STATUTES

5 U.S.C. §§ 702-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

25 U.S.C. §§ 450f-450n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

25 U.S.C. § 450j-1(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

25 U.S.C. § 450m-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 41

25 U.S.C. §§ 458aa-458hh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2,
    13, 22

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

28 U.S.C. § 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

28 U.S.C. §§ 2201, 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

41 U.S.C. § 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

41 U.S.C. § 607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27, 29,
                                                                                                                       30

## REGULATIONS

25 C.F.R. Part 900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

25 C.F.R. Part 1000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22, 41

25 C.F.R. §§ 1000.91-1000.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

25 C.F.R. § 1000.98(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13, 15

25 C.F.R. §§ 1000.380-382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

25 C.F.R. § 1000.432(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

25 C.F.R. § 1000.428 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

43 C.F.R. § 4.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

43 C.F.R. § 4.312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

43 C.F.R. § 4.314(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

43 C.F.R. § 4.316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

43 C.F.R. § 4.335(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

## INTRODUCTION

This action by CPN seeks review of a final decision issued by the Interior Board of Indian Appeals ("IBIA") in <u>Citizen Potawatomi Nation v. Director, Office of Self-Governance,</u> 42 IBIA 160, January 25, 2006 (the "IBIA Decision") in connection with an appeal at the IBIA by CPN of a pre-award dispute with the Department of Interior (the "Department") that arose prior to execution of CPN's Annual Funding Agreement for Fiscal Year 2004 under the Tribal Self-Governance Program of Title IV of the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 458aa-458hh. A copy of the IBIA Decision is set forth in Exhibit A hereto – Administrative Record ("AR") at Tab 66. The relief requested by CPN in this action is for this Court to (1) overturn the IBIA Decision since it is erroneous; (2) enjoin the Department from implementing the IBIA Decision as final agency action; and (3) remand this matter back to the IBIA in order to further develop the administrative record and require that the IBIA issue a new decision based on the further-developed administrative record.

In order to provide the necessary evidentiary support to allow this Court to grant this Motion, a complete copy of the administrative record documents that were produced by the Department before the IBIA is enclosed with this Motion. As part of the administrative record, CPN also encloses with this Motion a copy of all rulings issued by the IBIA and all pleadings filed by CPN and the Department before the IBIA. CPN also attaches to this Motion other relevant documents in further support of the evidentiary basis allowing this Court to grant this Motion.

By this Motion and its prior complaint, CPN has provided ample evidence, based on the entire administrative record from the IBIA proceedings and the other documents attached hereto, that should be found by this Court to establish that there are no genuine issues of material facts and that entry of summary judgment against the United States is appropriate.

## ARGUMENT

### I.    CPN Has Established a Right to the Relief Requested

The "Tribal Self-Governance Act of 1994" was enacted as Title II of Public Law 103-413. The Tribal Self-Governance Act of 1994 established a Tribal Self-Governance Program on a permanent basis and was added as Title IV of the ISDA, 25 U.S.C. § 458aa-458hh. Pursuant to the Tribal Self-Governance Program, the Department is authorized to negotiate and enter into Compacts and Annual Funding Agreements ("AFA") with Indian tribes under which the Indian tribes assume comprehensive responsibility for the planning and administration of programs and services previously provided by the Department and the Department transfers the related funds to the tribes to administer those programs and services.

CPN is a federally recognized Indian Tribe located in the State of Oklahoma who has entered into a Compact of Self-Governance and an AFA with the Department pursuant to the Tribal Self-Governance Program provisions of the ISDA, 25 U.S.C. § 458aa-458hh. See Plaintiff's Statement of Material Facts at ¶ 1 (citing to Exhibit A – AR at Tabs 4 and 45).

The defendants are federal officials who, among other things, administer the Department's implementation of the ISDA and resolve disputes concerning the Department's implementation of the ISDA.

This Court has jurisdiction under the ISDA, 25 U.S.C. § 450m-1(a) because this is a civil action wherein the matter in controversy arises under the provisions of the ISDA. In addition, this Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1331 because it involves a question arising under the laws of the United States. Further, because this is a civil action brought by a duly recognized Indian tribe wherein the matter in controversy arises under the laws of the United States, this Court also has jurisdiction under 28 U.S.C. § 1362.

Sovereign immunity has been waived by the United States and a claim for relief exists under both the ISDA, 25 U.S.C. § 450m-1(a) and the Administrative Procedures Act, 5 U.S.C. §§ 702-706. An actual controversy exists for purposes of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

The IBIA Decision at issue in this action is considered final agency action subject to judicial review. 43 C.F.R. § 4.314(a). See also See, e.g., Ransom v. Babbitt, 69 F.Supp2d 141, 149 (D.C. 1999); Feezor v. Babbitt, 953 F.Supp. 1 (D.C. 1996) (both cases in which a district court reviewed, under the APA, a decision issued by the IBIA).

Accordingly, this Court should find that CPN has established a claim or right to the relief requested in its complaint.

**II.    Under Either a De Novo Standard of Review or an Arbitrary
and Capricious Standard of Review, This Court Should Find
That the IBIA Decision Should be Overturned and
<u>Remanded Back to the IBIA for Further Proceedings</u>**

In this action, CPN has not asked this Court to develop its own evidence and to

reach its own conclusions regarding the underlying merits of the issues raised by CPN in

the IBIA proceedings.  Rather, CPN asks this Court to find that the IBIA Decision at

issue here is not sustainable on the basis of the existing administrative record and that the

matter should be remanded back to the IBIA for further proceedings.  CPN contends that

the appropriate standard of review under the ISDA is de novo and that this Court should

find that the IBIA Decision is erroneous as a matter of law.  In addition, even if this Court

were to apply an arbitrary and capricious standard of review, this Court should still find

that the IBIA Decision at issue here is arbitrary, capricious, an abuse of discretion, and

otherwise not in accordance with the law.

The appropriate standard of review under the ISDA is de novo.  25 U.S.C. §

450m-1(a) of the ISDA authorizes district courts to exercise "original jurisdiction" over

"civil actions" under the ISDA and to order appropriate relief, including money damages

and injunctive relief.   However, it fails to provide any standard of review.  Courts that

have considered the issue of the appropriate standard of review under the ISDA in a civil

action in a district court have concluded that the appropriate standard is de novo.  De

novo review was found appropriate because Section 450m-1(a) of the ISDA grants

district courts "original jurisdiction" over "civil actions" with authorization to award

money damages and that this combination denotes an intention by Congress to grant the

right of de novo review.  <u>See</u> <u>Cherokee Nation of Oklahoma v. U.S.</u>, 190 F.Supp.2d 1248

(E.D. Okla. 2001), aff'd, 311 F.3d 1054 (10th Cir. Okla. 2002), rev'd on other grounds,

543 U.S. 631, 125 S.Ct. 1172 (2005); Shoshone-Bannock Tribes of Fort Hall v. Shalala,

998 F.Supp. 1306 (D.Or. 1997).

 Accordingly, this Court should find that the appropriate standard of review of the

IBIA Decision in this action under the ISDA is de novo, grant this Motion for the reasons

stated herein and order remand to the IBIA for further proceedings.

 Even if this Court does not conclude that the appropriate standard of review is de

novo but that the standard of review should be that provided for in the Administrative

Procedures Act ("APA") (review limited to the administrative record to determine

whether the decision at issue is arbitrary, capricious, an abuse of discretion or otherwise

not in accordance with the law), this Court should still grant this Motion.  See, e.g.,

Ransom v. Babbitt, 69 F.Supp.2d 141, 149 (D.C. 1999); Feezor v. Babbitt, 953 F.Supp. 1

(D.C. 1996) (both cases in which a district court reviewed, under the APA, a decision

issued by the IBIA and found that the decision was arbitrary, capricious and otherwise

erroneous and that the matter should be remanded back to the IBIA for further

proceedings).  As here, where the final agency decision has failed to provide a reasoned

explanation and where the record belies the conclusions reached, the Court must undo the

administrative action.  See Petroleum Communications, Inc. v. F.C.C., 22 F.3d 1164,

1172 (D.C. Cir. 1994) (citing to American Tel. & Tel. Co. v. F.C.C., 974 F.2d 1351 (D.C.

Cir. 1992)).

 Therefore, whether the IBIA Decision at issue here is reviewed under a de novo

standard or an APA standard, this Court should grant this Motion for the reasons stated

herein and should remand this matter back to the IBIA for further proceedings.

### III.    There Are No Genuine Issues of Material Facts and Entry of Summary Judgment Against the United States Is Appropriate

The standards this Court must follow in deciding summary judgment motions are quite clear.  This Court may only grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  In its summary judgment inquiry, the Court must carefully scrutinize the proffered facts to determine exactly what is at issue, but it is important to also note that this does not mean that all contradictions of fact are fatal.  Anderson, 477 U.S. at 247.  In this inquiry, "factual disputes that are irrelevant or unnecessary will not be counted."  Id.  Summary judgment can still be granted where the disagreement is tangential to the case; that is, the factual dispute is not "material" because it would not make a difference in the result of the case under the governing law.  Id.

It is now well-accepted that a moving party is not required to produce evidence showing an absence of a genuine material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1985).  A moving party need only point to an absence of evidence for a required element of the nonmoving party's case.  Id. at 324.  Even so, when a moving party properly identifies an absence of evidence in the nonmoving party's case, the burden shifts to the nonmoving party to make a showing sufficient to establish that element or create an issue of material fact.  Id. at 322.  It is critical to note that the nonmoving party may not rely on conclusory statements or assertions.  Id. at 324.  Once the burden shifts, the nonmoving party must go beyond its own pleadings and identify specific facts in the

6

record that show that there is a genuine issue as to material fact for trial. Id.  If it does

not, summary judgment must be rendered in favor of the moving party.  Id.

As set out herein, it cannot be disputed that the IBIA Decision at issue here (1)

erroneously ignores and fails to address material evidence in the administrative record;

(2) is contrary to material evidence in the administrative record; and (3) assumes and

relies upon evidence that is not contained anywhere in the administrative record.

Accordingly, the undisputed material facts establish that there are no genuine issues of

material facts and CPN is entitled to judgment as a matter of law.

> **A.    This Court Should Find That There Are No Genuine Issues of Material Facts With Respect to Count I of CPN's Complaint and Entry of Summary Judgment Is Appropriate on Count I**

In Count I of CPN's complaint, CPN contends that the holding of  the IBIA

Decision that the Funding Formula agreement at issue here is ambiguous fails to address

evidence in the administrative record, assumes evidence not contained in the

administrative record and is otherwise erroneous as a matter of law.  The undisputed

material facts support judgment as a matter of law as to these allegations in Count I of

CPN's complaint.

Count I of CPN's complaint also contends that, even if the holding of an

ambiguity is supported by the record and is not found to be otherwise erroneous, the IBIA

Decision's related holding that CPN failed to timely object to the Department's static

application of that Funding Formula is without any support in the administrative record

and is also erroneous.  The undisputed material facts support judgment as a matter of law

as to these alternative allegations in Count I of CPN's complaint.

1.  **The Undisputed Material Facts Establish
    That the Ambiguity Holding Is Arbitrary,
    <u>Capricious and Otherwise Erroneous</u>**

The undisputed material facts establish that in 1988 an agreement on a funding

formula (the "Funding Formula agreement") was reached among the five tribes served by

the Shawnee Agency of the Department's Bureau of Indian Affairs.  The five Shawnee

Agency tribes are (1) CPN; (2) the Absentee Shawnee Tribe of Oklahoma; (3) the

Kickapoo Tribe of Oklahoma; (4) the Sac and Fox Nation; (5) and the Iowa Tribe of

Oklahoma.  The Funding Formula agreement is reflected in tribal resolutions issued by

each of the five tribes.  <u>See</u> Plaintiff's Statement of Material Facts at ¶¶ 2, 3 (citing to

Exhibit A – AR at Tabs 40 and 44; Tab 60 – CPN Opening Brief – Exhibit A to CPN

Brief – Declaration of Rhonda Butcher, at page 1 (¶2), and Attachments 1 through 5).

Each of the tribal resolutions comprising the Funding Formula agreement set out the

same four factors for the Department to apply in distributing federal funding to the five

tribes.  The four factors are:

Factor 1 – 25% equally divided;

Factor 2 – 25% in proportion to total tribal enrollment;

Factor 3 – 25% in proportion to resident tribal population within each tribe's

jurisdictional area;

Factor 4 – 25% in proportion to the amount of trust property in each tribe's

jurisdiction.

See Plaintiff's Statement of Material Facts at ¶ 3 (citing to Exhibit A – AR at Tab 60 –

CPN Opening Brief - Exhibit A to CPN Brief – Declaration of Rhonda Butcher, at

Attachments 1 through 5.)

The undisputed material facts also establish that each tribal resolution states that

the Funding Formula agreement is to be used "to contract for all Bureau of Indian Affairs

provided operation and services **in FY 89 and future years**."  See Plaintiff's Statement

of Material Facts at ¶ 3 (citing to Exhibit A – AR at Tab 60 – CPN Opening Brief -

Exhibit A to CPN Brief – Declaration of Rhonda Butcher, at Attachments 1 through 5.)

(Emphasis supplied.)  The undisputed material facts further establish that each tribal

resolution states that "**the tribes will conform to all aspects of the CFR appropriate to

the given program** to be contracted by all five tribes of the Shawnee Agency."  See

Plaintiff's Statement of Material Facts at ¶ 3 (citing to Exhibit A – AR at Tab 60 – CPN

Opening Brief - Exhibit A to CPN Brief – Declaration of Rhonda Butcher, at

Attachments 1 through 5.)  (Emphasis supplied.)

The governing principles regarding interpretation of a contract, such as the

Funding Formula agreement at issue here, are well-established.  The plain meaning of a

contract is determined by the language used by the parties to express their agreement.

WMATA v. Mergentime Corp., 626 F.2d 959, 961 (D.C. Cir. 1980).  If that language is

unambiguous "the court may interpret it as a matter of law."  America First Inv. Corp. v.

Goland, 925 F.2d 1518, 1520 (D.C. Cir. 1991).  When interpreting the language of a

contract, a court must give reasonable meaning to all parts of the contract and not render

portions of the contract meaningless.  Fort Sumter Tours, Inc. v. Babbit, 202 F.3d 349,

358 (D.C. Cir. 2000).

A contract is ambiguous when it is "reasonably susceptible of different constructions or interpretations."  1901 Wyoming Ave. Coop Assoc. v. Lee, 345 A.2d 456, 461 n.7 (D.C. 1975).  Only if the contract is ambiguous may extrinsic evidence, such as the intent of the parties or the subsequent action of the parties, be introduced to clarify the meaning of the agreement.  Consol. Gas Transmission Corp v. FERC, 771 F.2d 1536, 1546 (D.C. Cir. 1985).

In reaching its conclusion that the Funding Formula agreement is ambiguous, the IBIA Decision irrationally ignored material language contained in the Funding Formula agreement and otherwise rendered several portions of the agreement meaningless.  The IBIA Decision did acknowledge the "force" of CPN's contention that, based on the plain language of the tribal resolutions, the percentages of annual funds allocated by the Department to each of the five tribes each year pursuant to the Funding Formula agreement must be recalculated annually based on the actual tribal enrollment, resident tribal population, and trust acreage that exists in that year by applying the factors specified in the Funding Formula to the current data for that fiscal year.  See Plaintiff's Statement of Material Facts at ¶ 24 (citing to Exhibit A – AR at Tab 66 – IBIA Decision, at page 172.)  However, the IBIA Decision went on to erroneously conclude that the language of the tribal resolutions was "ultimately ambiguous on this point" and held that the Funding Formula agreement does not state if, when or how often the funding percentages will be recalculated or how frequently a census would be required to be performed.  See  Plaintiff's Statement of Material Facts at ¶ 24 (citing to Exhibit A – AR – Tab 66 – IBIA Decision, at page 172).

This holding of ambiguity in the IBIA Decision completely ignored and otherwise failed to explain the meaning of the plain terms of the tribal resolutions stating that (1) the Funding Formula is to be applied "for all Bureau of Indian Affairs provided operation and services in FY89 and future years" and (2) each of the five tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."

It was arbitrary, capricious and otherwise erroneous for the IBIA in its Decision to have failed to consider or address this material language contained in the Funding Formula agreement.  If the IBIA had properly considered this material language in the Funding Formula agreement, the IBIA could not have rationally concluded that the Funding Formula agreement does not state if, when or how often the funding percentages will be recalculated or how frequently a census would be required to be performed.

Each of the tribal resolutions that comprise the Funding Formula agreement state plainly that funds are to be distributed based on the following formula "**in FY 89 and future years**":  Factor 1 - 25% equally divided; Factor 2 - 25% in proportion to total tribal enrollment; Factor 3 - 25% in proportion to resident tribal population within each tribe's jurisdictional area; and Factor 4 - 25% in proportion to the amount of trust property in each tribe's jurisdiction.   See Plaintiff's Statement of Material Facts at ¶ 3 (citing to Exhibit A – AR at Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief - Declaration of Rhonda Butcher at Attachments 1 through 5).  This plain language states that the factors specified are to be applied "in FY 89 and future years." By completely ignoring this material language and otherwise failing to explain or address it, the IBIA in its Decision renders meaningless Factors 2, 3 and 4 specified in the tribal resolutions as to

future fiscal years beyond Fiscal Year 1989.  Factor 2 specifies that 25% of available funding is to be allotted in any given fiscal year in proportion to total tribal enrollment. Factor 3 specifies that 25% of available funding is to be allotted in any given fiscal year in proportion to resident tribal population within each tribe's jurisdictional area.  Factor 4 specifies that 25% of available funding is to be allotted in any given fiscal year in proportion to the amount of trust property in each tribe's jurisdiction.  Under the construction of the Funding Formula agreement as applied by the Department and erroneously affirmed in the IBIA Decision, there is no application of these three factors in any year other than Fiscal Year 1989 since only 1988 data is used to establish the percentage of funds to be distributed in all future years, including Fiscal Year 2004 at issue here.  Under this unreasonable interpretation, the percentage of funds to be allocated to each of the five tribes under these three factors remains static and is forever locked into place based on 1988 data.  After Fiscal Year 1989, Factors 2, 3 and 4 of the Funding Formula are rendered meaningless.

The IBIA Decision also ignored and otherwise failed to address or explain the material language in the Funding Formula agreement stating that each of the five tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."  If the IBIA had properly considered this material language it would have found the answer in the Department's own regulations governing the Tribal Self-Governance Program to the very things that the IBIA determined are not specified in the Funding Formula agreement – if, when and how often funding percentages will be recalculated and how frequently a census would be required to be performed.

The Department's Tribal Self-Governance Program regulations governing formula-driven distribution formulas, such as the Funding Formula at issue here, specifically provide, at 25 C.F.R. § 1000.98(a)(1), that "[d]istribution formulas must be reasonably related to the function or service performed by an office, and must be consistently applied to Tribes within each regional and agency office."  Under the Department's interpretation of the Funding Formula agreement as affirmed by the IBIA Decision, the percentage of funds to be allocated to each of the five tribes has remained static after Fiscal Year 1989 and has forever been locked into place based on 1988 data. This is contrary to the Department's own regulation requiring that distribution formulas must be reasonably related to the function or service performed.  The data that existed in 1988 on tribal enrollment, tribal resident population and trust acreage is not reasonably related to the function and services performed by each tribe over 18 years later.  The functions and services of the tribes have shifted and changed materially during those 18 years based on the significant changes in tribal enrollment, tribal resident population and trust acreage.  Only current-day data can be used to reasonably determine the functions and services to be performed by each tribe during the fiscal year in which those functions and services are to be performed.

In addition, pursuant to the provisions of the ISDA (25 U.S.C. § 458ee) and the Department's regulation's governing the Tribal Self-Governance Program of ISDA (25 C.F.R. §§ 1000.380-382), the Department currently requires collection, on an annual basis, of data from each tribe indicating each tribe's tribal enrollment, resident tribal population and trust property.   Pursuant to the tribal resolutions comprising the Funding

13

Formula, each of the five tribes have agreed to comply with those provisions of the ISDA statute and the Department's implementing regulations.

Each year, the Department's Bureau of Indian Affairs sends out a request to every tribe participating in the Tribal Self-Governance Program and requests that the tribe complete and send back to the Department a form containing, among other things, current data on each tribe's tribal enrollment, resident tribal population and trust property.   A copy of the Department's most recent annual request dated January 10, 2006 to the tribes is attached hereto as Exhibit B – Office of Self-Governance Annual Data Request to Tribes.   The Department's most recent annual letter states, among other things, that:

> The purpose of this memorandum is to ask self-governance tribes to provide the Office of Self-Governance (OSG) with information on their 2005 tribal self-governance activities by May 15, 2006.
>
> This information is needed for the Secretary to meet the requirements of Section 405 of Pub. L. 93-638, as amended, as they relate to the submission of the 2004 annual report to Congress on the relative costs and benefits of self-governance, as well as implementing regulations contained in 25 CFR § 1000.380 to 382.
>
> *     *     *     *     *     *     *     *     *     *
>
> Please be advised that Reatha Tom of the Self-Governance Communication & Education Tribal Consortium (SGCETC) will be sending a copy of the 2005 minimum data collection form to you via e-mail for your use.  In addition, the form has been posted on and can be downloaded for your use from the SGCETC website at http://www.tribalselfgov.org.

See Exhibit B - Office of Self-Governance Annual Data Request to Tribes attached hereto.  A copy of the 2005 minimum data collection form that is referenced in the Department's January 10, 2006 letter is attached hereto as Exhibit C – Self-Governance Minimum Data Collection Form.  As set forth in the Self-Governance Minimum Data

Collection Form, the Department requires each tribe to provide data on, among other things, (1) total tribal enrollment, (2) total tribal resident Indian population (TRIP), and (3) total amount of trust/restricted acres of land.  See Exhibit C –Self-Governance Minimum Data Collection, at page 1 (Tribal Demographics & Enrollment).

As these documents establish, the Department annually collects current data needed to apply Factors 2, 3 and 4 of the Funding Formula in any given fiscal year.

Without consideration of this current data, there is no basis in the administrative record to conclude that the Department complied with its own regulations governing the Tribal Self-Governance Program of the ISDA.  As indicated above, the Department's governing regulations at 25 C.F.R. § 1000.98(a)(1) require that any formula-driven distribution formula, like the Funding Formula agreement at issue here, must be reasonably related to the function or service performed.  Without some consideration and review of current data for a given fiscal year on tribal enrollment, tribal resident population and trust acreage, there is no basis for the IBIA to conclude that the funds that were actually allocated by the Department in Fiscal Year 2004 to the five Shawnee Agency tribes reasonably relate to functions and services performed by the five Shawnee Agency tribes in that fiscal year.  This is especially true here, where it is undisputed that the Department utilized data that is over 18 years old to allocate funding under the Funding Formula agreement.

During the proceedings before the IBIA, CPN objected to the Department's failure to include any data or documents relating to the factors of the Funding Formula, including any current data for Fiscal Year 2004 on the total tribal enrollment, total tribal resident population and total trust property for each of the five Shawnee Agency tribes.

CPN also objected to the Department's failure to provide a certification that the administrative record contains all information and documents utilized by the deciding official in rendering the decision appealed, as required by the IBIA's own regulations at 43 C.F.R. § 4.335(b)(3). In an Order dated September 14, 2004, the IBIA partially granted and partially overruled CPN's objections. See Plaintiff's Statement of Material Facts at ¶¶ 16, 17 (citing to Exhibit A – AR at Tab 58 – IBIA Order dated Sept. 14, 2004; Plaintiff's Complaint at ¶ 26).

With respect to CPN's objection to the Department's failure to include any data or documents relating to the factors of the Funding Formula, the IBIA ruled that the Department did not have to produce any such data or documents since it was the Department's position that it was not information that the Department considered or needed to consider in determining CPN's share of the disputed Fiscal Year 2004 AFA funding. The IBIA also noted that "[w]hether the Director's position is correct, either as a matter of law or as a proper exercise of discretion, is one of the issues before the Board in this appeal." The IBIA's Order also stated that CPN was free to append to its brief any documents or other information that it considered appropriate for the IBIA to consider. See Plaintiff's Statement of Material Facts at ¶ 17 (citing to Exhibit A – AR at Tab 58 - IBIA Order, at pages 2-3).

The IBIA's September 14, 2004 Order did require the Department to file with the IBIA the required certification that the administrative record was complete. See Plaintiff's Statement of Material Fact at ¶ 18 (citing to Exhibit A – AR at Tab 58 - IBIA Order, at page 2). However, the Department never filed the required certification nor did

the Department provide any further supplemental documents.  See Plaintiff's Statement of Material Facts at ¶ 19 (citing to Plaintiff's Complaint at ¶ 28).

In response to the IBIA's September 14, 2004 Order, CPN subsequently submitted to the IBIA the most current data available to CPN regarding total tribal enrollment, total tribal resident population and total trust property for each of the five Shawnee Agency tribes.  This data showed that if the most current data available to CPN were utilized to apply Factors 2, 3 and 4 of the Funding Formula, CPN's percentage of allotted funds would increase by approximately 10%.   See Plaintiff's Statement of Material Facts at ¶ 22 (citing to Exhibit A – AR at Tab 66 – IBIA Decision, at page 171 (Footnote 9); Tab 60 – CPN Opening Brief – Exhibit A to CPN Brief - Declaration of Rhonda Butcher, at pages 2-3).

The data presented by CPN during the IBIA proceedings was the most current data available to CPN but it was not the most current data available to the Department. That current data exists and is readily available to the Department.  As set out above, it was legal error for the IBIA to conclude that the Department was not required to produce that current data and that the IBIA was not required to consider that current data in connection with determining CPN's AFA funding for Fiscal Year 2004.  The data is available to the Department and the IBIA should have required that it be produced and the IBIA should have considered the data in connection with its interpretation of the Funding Formula agreement at issue here.

The IBIA's legal error was further compounded by the undisputed fact that, even though the IBIA specifically ordered the Department to do so, the Department never certified to the IBIA that the administrative record documents that were provided to the

17

IBIA were complete.  <u>See</u> Plaintiff's Statement of Material Facts at ¶ 19 (citing to Plaintiff's Complaint at ¶ 28).  The Department thumbed its nose at the IBIA and the IBIA simply looked the other way.

Therefore, for all these reasons, this Court should find that it was arbitrary, capricious and otherwise erroneous for the IBIA to have ignored and failed to address or explain the material language of the Funding Formula agreement indicating that (1) each of the factors of the Funding Formula agreement are to be applied "in FY89 and future years" and (2) that each of the five tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."  This Court should remand this issue back to the IBIA and require that the IBIA further develop the administrative record to determine the meaning of this material language of the Funding Formula agreement.

Finally, not only does the IBIA Decision ignore and otherwise fail to address or explain material language of the Funding Formula agreement, the Decision also goes on to rely upon extrinsic evidence of the parties' alleged intent that does not exist anywhere in the administrative record.  In support of its finding of ambiguity, the IBIA Decision states that "[n]or do we think it would have been unreasonable **for the parties to intend** that existing data be applied to the formula to establish a fixed allocation for future years."  (Emphasis supplied.)  <u>See</u> Plaintiff's Statement of Material Facts at ¶ 24 (citing to Exhibit A – AR at Tab 66 - IBIA Decision, at page 172).

There is no evidence in the administrative record that could rationally support the IBIA's finding that the intent of the five tribal parties was that the factors specified in the Funding Formula agreement should be applied only once in 1988 based on data that

existed in 1988 in order to establish a fixed allocation forever locked into place in order to allocate federal federal to the five tribes in future years. It is undisputed that the only evidence in the administrative record establishing the meaning of the Funding Formula agreement is (1) the language of the agreement itself as set forth in the five tribal resolutions that comprise the agreement; (2) the evidence submitted by CPN indicating that the intent was that the factors specified in the Funding Formula must be applied each year by the Department based on the current, actual tribal enrollment, resident tribal population and trust acreage that exists in that year; (3) a letter dated November 15, 1999 from the Interior Assistant Secretary-Indian Affairs; and (4) a letter dated April 15, 1999 from the Director, Office of Self-Governance, Bureau of Indian Affairs. See Plaintiff's Statement of Material Facts at ¶ 4. The undisputed material facts set forth in the record contradict this unsupported conclusion in the IBIA Decision regarding the alleged intent of the five tribal parties to the Funding Formula agreement.

For all these reasons, this Court should find that the holding of ambiguity in the IBIA Decision with respect to the Funding Formula fails to address material evidence in the administrative record, assumes evidence not contained in the administrative record, and is otherwise erroneous as a matter of law. Further, this Court should order remand of this matter back to the IBIA for further proceedings in order to (1) require the IBIA to further develop the administrative record to determine the meaning of the language of the Funding Formula agreement stating that (a) the four factors are to be used "to contract for all Bureau of Indian Affairs provided operation and services in FY89 and future years" and (b) each tribe "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency"; (2) for the

Department to supplement the administrative record with current data for Fiscal Year

2004 on the actual tribal enrollment, resident tribal population, and trust acreage in order

to establish a basis for the IBIA to determine the Department's compliance with its

regulation at 25 C.F.R. § 1000.98(a)(1) that requires any formula-driven distribution

formula to be reasonably related to the function or service performed; (3) require that, if

after further development of the administrative record the IBIA determines that the

Funding Formula agreement is not ambiguous, the IBIA should interpret that agreement,

without reliance upon extrinsic evidence, based only on the plain language of the tribal

resolutions that comprise the agreement; and (4) require that, if after further development

of the administrative record the IBIA determines that the agreement is still viewed as

ambiguous, the administrative record should be developed to determine the intent of the

parties to the Funding Formula agreement.

> **2.     Even if This Court Upholds the Holding of Ambiguity, This Court Should Still Find That the IBIA Decision Is Erroneous Because the Extrinsic Evidence Regarding CPN's Knowledge and Actions Relied Upon by the IBIA Does Not Exist In the Administrative Record**

Even if the IBIA Decision's holding that the Funding Formula agreement is

ambiguous is upheld by this Court, the IBIA Decision should still be found to be

arbitrary, capricious and otherwise erroneous.  In resolving the alleged ambiguity in the

Funding Formula agreement, the IBIA Decision relies upon extrinsic evidence relating to

the alleged knowledge and actions of CPN that does not exist in the administrative

record.  Specifically, the IBIA Decision states the following:

> Looking to the parties' performance, the record shows that the 1988 agreement has been implemented based on a static application of the

> formula since its inception.  **This performance has been rendered with
> the knowledge of the nature of the performance and opportunity for
> objection, but it was not until 1998 that the Citizen Potawatomi
> objected to this reading of the agreement.**  None of the other parties has
> come forward to support the Citizen Potawatomi's reading of the
> agreement. [Footnote omitted.]  Thus, we conclude that the Director did
> not err in determining that the parties to the 1988 agreement intended for
> the formula to apply in a static manner unless and until the parties agreed
> otherwise and thus did not abuse his discretion in applying the formula in
> that way.

See Plaintiff's Statement of Material Facts at ¶ 25 (citing to Exhibit A – AR at Tab 66 -

IBIA Decision, at page 173).  (Emphasis supplied.)  The IBIA Decision fails to cite any

evidence contained in the administrative record in support of its factual conclusion that

CPN had knowledge of and opportunity to object prior to 1998 to the Department's static

application of the Funding Formula agreement.  That is because it is undisputed that there

is no such evidence contained in the administrative record.  See Plaintiff's Statement of

Material Facts at ¶ 26 (citing to Exhibit A – AR).

The issue of CPN's knowledge of and opportunity to object to the Department's

actions prior to 1998 was not raised by the Department or by CPN.  No evidence was

introduced during the IBIA proceedings by any party on this issue because the issue was

never raised.  The IBIA raised this issue sua sponte for the first time in its final decision

without any related evidence in the record.  If the IBIA had adequately developed the

administrative record on this issue, the record would show that CPN had no knowledge of

or opportunity to object to the Department's actions prior to 1998.

It is undisputed that it was not until September 1998 that CPN entered into its first

Compact of Self-Governance and AFA with the Department pursuant to the Tribal Self-

Governance Program provisions of the ISDA.  See Plaintiff's Statement of Material Facts

at ¶ 9 (citing to Exhibit A – AR at Tab 45; Plaintiff's Complaint at ¶¶ 13-14).

It is also undisputed that prior to Fiscal Year 1999, CPN did not participate in the

Tribal Self-Governance Program under the ISDA, but, instead, had entered into self-

determination contracts with the Department pursuant to the Indian Self-Determination

provisions of the ISDA, 25 U.S.C. §§ 450f-450n.  See Plaintiff's Statement of Material

Facts at ¶¶ 7-8 (citing to Plaintiff's Complaint at ¶¶ 8, 13).  Self-determination contracts

entered into by a tribe under the Self-Determination provisions of the ISDA, 25 U.S.C. §§

450f-450n, and the Department's implementing regulations at 25 C.F.R. Part 900, are

materially different from Compacts and AFAs entered into by tribes under the Self-

Governance Program provisions of the ISDA, 25 U.S.C. §§ 458aa-458hh, and the

Department's implementing regulations at 25 C.F.R. Part 1000.

Under the Self-Determination provisions of the ISDA and its implementing

regulations, a tribe submits a contract proposal to the Department and the Department

either accepts the proposal and provides the funds requested in the proposal or declines to

accept the proposal.  See 25 C.F.R. Part 900.  In contrast, under the Self-Governance

Program provisions of the ISDA and its implementing regulations, a tribe and the

Department enter into negotiations for a Compact of Self-Governance and then, in each

year, the tribe negotiates an AFA to provide funding to the tribe.  See 25 C.F.R. Part

1000.  During negotiations under the Self-Governance Program, a tribe negotiates with

the Department regarding the specific levels of funding and gains insight into how the

Department determines the level of funds.  See 25 C.F.R. §§ 1000.91 through 1000.104.

If the IBIA had adequately developed the administrative record as to this issue, rather than raise the issue sua sponte for the first time in its final decision, the record would establish the following facts.  Prior to 1998 in connection with award of its self-determination contracts, CPN had no basis to know whether the Department had utilized outdated data from 1988 for purposes of providing funding of CPN's self-determination contracts.  It was not until 1998, in connection with negotiation of CPN's first Compact of Self-Governance and Fiscal Year 1999 AFA under the Self-Governance Program of the ISDA, when CPN first became aware that the Department was utilizing outdated data from 1988 for purposes of determining the percentages of funding allotted to CPN under the Funding Formula.  It was then, in 1998, after first becoming aware of the Department's erroneous application of the Funding Formula that CPN objected.  See Plaintiff's Statement of Material Facts at ¶ 11 (citing to Exhibit A – AR at Tab 23; Tab 66 - IBIA Decision at page 163; Citizens Potawatomi Nation v. Norton, 248 F.3d 993, modified on rehearing, 257 F.3d 1158 (10th Cir. 2001)).

Therefore, for all these reasons, even if this Court should uphold the finding of ambiguity, this Court should still find that the undisputed material facts establish that the IBIA Decision is arbitrary, capricious and otherwise erroneous since the IBIA Decision relies upon extrinsic evidence that does not exist in the administrative record to support its conclusion that CPN failed to timely object to the Department's erroneous interpretation of the Funding Formula.

Accordingly, if this Court upholds the IBIA Decision's conclusion that the Funding Formula agreement is ambiguous, this Court should still overturn the IBIA Decision and order remand of the matter back to the IBIA to further develop the

administrative record regarding CPN's knowledge and actions prior to 1998 with respect to the Department's actions in applying the factors specified in the Funding Formula agreement.

      **B.    This Court Should Find That There Are No Genuine Issues of Material Facts With Respect to Count II of CPN's Complaint And Entry of Summary Judgment Is Appropriate on Count II**

In Count II of CPN's complaint, CPN challenges the IBIA Decision's holding that CPN is collaterally estopped from litigating the issue of CPN's entitlement to at least $65,521 in funds for Fiscal Year 2004 under Factor 3 of the Funding Formula agreement (25% in proportion to resident tribal population within each tribe's jurisdictional area). The undisputed material facts establish that the IBIA Decision's holding of collateral estoppel is erroneous as a matter of law and must be overturned.

It is undisputed that one of the issues before the IBIA in CPN's pre-award appeal was CPN's contention that, as a result of the decision in Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325 (10th Cir.1998) (the "Collier Decision"), it must be found that CPN does not share a jurisdictional area with the Absentee Shawnee for purposes of Factor 3 of the Funding Formula and that, as a result, the Department may not, under Factor 3 of the Funding Formula, withhold at least $65,521 in funding from CPN in Fiscal Year 2004 based on a position that CPN and the Absentee Shawnee share a jurisdictional area. See Plaintiff's Statement of Material Facts at ¶ 14 (citing to Exhibit A – AR at Tab 66 – IBIA Decision, at page 166; Plaintiff's Complaint at ¶ 24).

In its Decision, the IBIA held that CPN was collaterally estopped from litigating this issue before the IBIA based solely on a prior decision by the Interior Board of

Contract Appeals ("IBCA") in <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA
4317-4318/2001, 35 IBCA 52 (2002) (the "<u>Absentee Shawnee</u> Decision").  <u>See</u>
Plaintiff's Statement of Material Facts at ¶ 27 (citing to Exhibit A – AR at Tab 66 - IBIA
Decision at pages 167-170.)  <u>See</u> <u>also</u> Exhibit A – AR at Tab 16 (which contains a copy
of the IBCA's <u>Absentee Shawnee</u> Decision).  The IBIA Decision's holding of collateral
estoppel is strained, convoluted, ignores several material facts and is erroneous as a
matter of law.

The D.C. Circuit utilizes a three-prong test for establishing application of the
doctrine of issue preclusion, commonly invoked under the heading of collateral estoppel.
First, the same issue now being raised must have been contested by the parties and
submitted for judicial determination in the prior case.  Second, the issue must have been
actually and necessarily determined by a court of competent jurisdiction in that prior
case.  Third, preclusion in the second case must not work a basic unfairness to the party
bound by the first determination.  <u>See</u> <u>Yamaha Corp. of America v. United States</u>, 961
F.2d 245, 254 (D.C. Cir. 1992).

Here, issue preclusion is not applicable because (1) the issues are not the same;
(2) the issue raised by CPN before the IBIA was not actually and necessarily determined
by the IBCA in the <u>Absentee Shawnee</u> Decision; and (3) it would be unfair to apply issue
preclusion against CPN since it was not a "party" to the prior litigation resulting in the
<u>Absentee Shawnee</u> Decision sufficient to require issue preclusion against CPN based on
the judgment of the <u>Absentee Shawnee</u> Decision.

The issue adjudicated by the IBCA in the <u>Absentee Shawnee</u> Decision is
materially different from the issue that was raised by CPN before the IBIA.  The

25

Absentee Shawnee Decision involved a post-award breach of contract dispute between the Department and the Absentee Shawnee tribe with respect to the Absentee Shawnee's previously executed AFAs for Fiscal Years 2000 and 2001.  In the Absentee Shawnee case, after execution of the Absentee Shawnee's AFAs for Fiscal Years 2000 and 2001, the Department unilaterally removed $65,521 in funding from the Absentee Shawnee's for those years in response to the Collier Decision.  See Exhibit A – AR at Tab 16 – Absentee Shawnee Decision at page 1.  The issue presented and resolved in the Absentee Shawnee Decision was a breach of contract dispute.  With respect to the effect of the Collier Decision, the IBCA in the Absentee Shawnee Decision determined only that it did not provide a sufficient basis to authorize a post-award unilateral reduction by the Department pursuant to 25 U.S.C. § 450j-1(b)(2)(C) based on the "mistake correction" provisions contained in the Absentee Shawnee's Fiscal Year 2000 and 2001 AFAs.  In reaching this conclusion, the IBCA addressed the impact of the Collier Decision and ruled only that the Collier Decision did not impose any obligation, legal or otherwise, for the Department to issue a unilateral modification reducing funding by $65,521 after award of the AFA contracts with the Absentee Shawnee's for Fiscal Years 2000 and 2001 without the Absentee Shawnee's express consent.  See Exhibit A – AR at Tab 16 – Absentee Shawnee Decision at pages 13-14.

The judgment in the Absentee Shawnee Decision was limited to the finding that the Collier Decision did not provide a sufficient basis to allow a post-contract award unilateral reduction by the Department in funding previously agreed to be provided to the Absentee Shawnee's in their Fiscal Year 2000 and 2001 AFA contracts.  As the D.C.

Circuit has made clear, it is the prior judgment that matters, not the court's opinion explicating the judgment.  See Yamaha Corp., supra, 961 F.2d at 254.

The judgment in the Absentee Shawnee Decision did not resolve any issue of whether or not the Collier Decision requires a change in the application of Factor 3 of the Funding Formula in any future fiscal years.  Nor did anything in the Absentee Shawnee Decision establish or hold that, in future fiscal years, the CPN and the Absentee Shawnee should still be viewed, despite the holding of the Collier Decision, as sharing a jurisdictional area for purposes of allocating funds under Factor 3 of the Funding Formula – 25% in proportion to resident tribal population within each tribe's jurisdictional area.  Nor could the IBCA have resolved any such issue regarding the effect of the Collier Decision in any future AFA contracts that had not yet then been executed. The IBCA's jurisdiction is limited to claims relating to existing contracts entered into by executive agencies of the Government, as defined in § 2 of the Contract Disputes Act, 41 U.S.C. § 601.  See 41 U.S.C. § 607; 43 C.F.R. § 4.100; 25 C.F.R. § 1000.428.

In addition, the IBIA Decision's holding of collateral estoppel completely ignores the fact that, after issuance of the IBCA's Absentee Shawnee Decision, CPN moved for reconsideration of the Absentee Shawnee Decision and asked the IBCA to award CPN the same amount as was awarded to the Absentee Shawnee -- $65,521 – based on the argument that the IBCA's Absentee Shawnee Decision would likely cause the Department to withhold the same amount from CPN in future fiscal years and that the Department should be prohibited from doing so.  The IBCA dismissed CPN's request without addressing the merits of the argument and ruled in Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA No. 4317R-4318R/02 (January 14, 2003), 2003 WL 133,274

27

(the "<u>Absentee Shawnee II</u> Decision") that the issue of CPN's future entitlement to the $65,521 in funding under Factor 3 was not an issue litigated before the IBCA in that action and that it had no authority to do award such amount to CPN.  A copy of the IBCA's <u>Absentee Shawnee II</u> Decision is attached hereto as Exhibit D.  The IBCA's <u>Absentee Shawnee II</u> Decision makes clear that CPN's claim and entitlement to the $65,521 in funding for future fiscal years based on the impact of the <u>Collier</u> Decision was not an issue litigated or decided in the <u>Absentee Shawnee</u> Decision.

Therefore, the undisputed material facts establish that the issue actually litigated and decided by the judgment in the <u>Absentee Shawnee</u> Decision is not the same issue that CPN raised in its pre-award appeal before the IBIA.

Moreover, even if the issues were viewed as the same, the doctrine of issue preclusion should still not be applicable because the undisputed material facts establish that CPN was not a "party" to the prior action that resulted in the <u>Absentee Shawnee</u> Decision for purposes of applying issue preclusion against CPN in its subsequent appeal before the IBIA.  It is undisputed that the Absentee Shawnee post-award appeal with respect to its Fiscal Year 2000 and Fiscal Year 2001 AFAs was filed on April 25, 2001.  <u>See</u> Plaintiff's Statement of Material Facts at ¶ 28 (citing to Exhibit A – AR at Tab 22; Tab 16 – <u>Absentee Shawnee</u> Decision, at page 5).  It is also undisputed that 16-months after the filing of the appeal by the Absentee Shawnee, CPN first filed, on August 9, 2002, an application "to intervene as either a party or an amicus" and that, on August 19, 2002, the IBCA granted CPN the status as a permissive "intervenor" in the action.  <u>See</u> Plaintiff's Statement of Material Facts at ¶¶ 29, 30 (citing to Exhibit A – AR at Tab 16 – <u>Absentee Shawnee</u> Decision, at page 6).   It is further undisputed that the final briefs in

the Absentee Shawnee action were submitted to the IBCA on October 21, 2002, just two

months after CPN's permissive intervention was granted. See Plaintiff's Statement of

Material Facts at ¶ 31 (citing to Exhibit A – AR at Tab 16 – Absentee Shawnee Decision,

at page 6). The Absentee Shawnee Decision was subsequently issued on November 4,

2002. See Plaintiff's Statement of Material Facts at ¶ 32 (citing to Exhibit A hereto – AR

at Tab 16 – Absentee Shawnee Decision, at page 1). As these undisputed facts indicate,

CPN's was not allowed to participate in the Absentee Shawnee action as a full party in

interest but only as a permissive intervenor. CPN's participation was limited to the final

two months of the briefing schedule in the case with no opportunity to control the

litigation that is reasonably expected between formal co-parties to an action.

In the subsequent Absentee Shawnee II Decision in response to CPN's motion for

reconsideration of the Absentee Shawnee Decision, the IBCA noted that CPN, as an

"intervenor", was not a party to the action and had no standing to file any such motion for

reconsideration. See Exhibit D - Absentee Shawnee II Decision at page 1. Further, as a

permissive intervenor and not a party to that action, CPN had no right to file an appeal in

any appellate court of the Absentee Shawnee Decision. As indicated in the Absentee

Shawnee Decision, any appeal of that decision was subject to the provisions of the

Contract Disputes Act, 41 U.S.C. § 607(g)(1)(B). See  Exhibit A – AR at Tab 16 –

Absentee Shawnee Decision at page 15. Only the "contractor" who filed the appeal or

the Government contracting agency against whom the appeal was filed has the right to

appeal a final decision of an agency board of contract appeals, such as the Absentee

Shawnee Decision. See Contract Disputes Act, 41 U.S.C. § 607(g)(1). A permissive

intervenor, such as CPN, in an appeal filed by a contractor against a Government agency

has no right to file an appeal pursuant to 41 U.S.C. § 607(g)(1) of any resulting final decision issued by the agency board of contract appeals.

Based on its limited involvement in the action and without any rights to control the litigation, seek reconsideration at the IBCA or pursue an appeal in court of the <u>Absentee Shawnee</u> Decision, it is fundamentally unfair for CPN to be considered a "party" to the action resulting in the <u>Absentee Shawnee</u> Decision for purposes of issue preclusion against CPN in the IBIA appeal filed by CPN.

Generally, the doctrine of issue preclusion (or collateral estoppel) does not bind non-parties or affect the relief available to them in a subsequent action. <u>See</u>, <u>e.g.</u>, <u>Adams v. Bell</u>, 711 F.2d 161, 203 (D.C. Cir. 1983). While intervention as a party of right in a prior action will generally bind that intervening party in connection with subsequent litigation involving the same issues, permissive intervention in an action in a limited role does not generally rise to the level of participation necessary for application of issue preclusion against that intervenor. <u>See</u> <u>Adams v. Bell</u>, supra, 711 F.2d at 197 (Footnote 128) (stating that "[i]t is clear that appearance as *amici* does not rise to the level of participation necessary for preclusion). <u>See</u> <u>also</u> <u>U.S. v. 111.2 Acres of Land</u>, 293 F.Supp. 1042, 1049, <u>aff'd</u>, 435 F.2d 561 (9th Cir. 1970) (where the court held that issue preclusion could not be applied against the State of Washington based on a decision in a prior litigation, even though the State of Washington had intervened in that prior litigation, since it was not a "party" to that litigation in that it had no right to appeal the decision in that prior litigation). Similarly, here, CPN's limited participation as a permissive intervenor in the prior litigation resulting in the <u>Absentee Shawnee</u> Decision

does not rise to the level of participation as a party for purposes of application issue preclusion against CPN.

Therefore, for all these reasons, even if this Court determines that the issues are the same and were actually and necessarily decided in the prior action, this Court should still find that the doctrine of issue preclusion also does not apply because CPN was not a "party" to the prior action that resulted in the Absentee Shawnee Decision. CPN should not be precluded from litigating its entitlement to the $65,521 in funding for Fiscal Year 2004 under Factor 3 of the Funding Formula based on the Collier Decision.

Further, the IBIA Decision ignores the fact that in a subsequent post-award breach of contract dispute action brought by CPN under its Fiscal Year 2003 AFA before the same IBCA administrative judge (Administrative Judge Parrette) who issued the Absentee Shawnee and Absentee Shawnee II Decisions, the IBCA conclusively held that CPN was not barred from litigating CPN's entitlement to the $65,521 in funding under Factor 3 in connection with CPN's Fiscal Year 2003 AFA. In Appeal of Citizen Potawatomi Nation of Oklahoma, IBCA No. 4522/04, 35 IBCA 207, 05-1 BCA ¶ 32,919 (March 22, 2005) (the "CPN Decision"), the IBCA held that the Department's withdrawal of the $65,521 in funds under Factor 3 from CPN's Fiscal Year 2003 AFA funding was a breach of contract and ordered that those funds be restored to CPN. A copy of the IBCA's CPN Decision is attached hereto as Exhibit E.

In the IBCA's CPN Decision, the Department had argued that CPN was barred from litigating its entitlement to the $65,521 in funds under the doctrine of res judicata

based on the IBCA's <u>Absentee Shawnee</u> Decision.  The IBCA rejected the Department's

argument and held that the doctrine of <u>res judicata</u> did not apply and did not bar CPN

from litigating its entitlement to the $65,521 in funds at issue, stating:

> Department counsel argues that since the Nation was a party to the
> Shawnee's appeal, it is bound by the Board's decision under the doctrine
> of <u>res judicata</u>, which essentially holds that the same party can't litigate
> the same issue twice.  As the headnote in <u>Israel Discount Bank Ltd v.</u>
> <u>Entin</u>, 951 F.2d 311 (11th Cir. 1992), a case cited by the Government,
> states:
>
>> Res judicata will bar subsequent action if:  prior decision
>> was rendered by court of competent jurisdiction; there was
>> a final judgment on the merits; parties were identical in
>> both suits; and prior and present causes of action are the
>> same.
>
> Here, by contrast, the parties are not identical in both suits; and the prior
> and present causes of action also are not the same.  In <u>Absentee Shawnee</u>,
> the issue was the withholding of $65,521 from the Shawnees; here it is the
> withholding of $65,521 from the Nation, a different party with opposing
> interests.  Accordingly, we reject the Government's res judicata defense as
> inapplicable.

<u>See</u> Exhibit E – <u>CPN</u> Decision, at page 3.

Inexplicably, the IBIA Decision at issue here cites to and relies upon the IBCA's

prior <u>CPN</u> Decision but fails to address or acknowledge the IBCA's holding in the <u>CPN</u>

Decision that CPN was not barred from litigating its entitlement to the $65,521 in funds

for Fiscal Year 2003.  <u>See</u> Exhibit A –AR at Tab 66 - IBIA Decision at page 169.

As indicated above, the very same IBCA administrative judge who issued the

<u>Absentee Shawnee</u> Decision ruled that CPN was not subsequently barred from litigating

its entitlement to the $65,521 in funds for Fiscal Year 2003.  Not only that, the IBCA

held that CPN was entitled to the $65,521 in funds for Fiscal Year 2003.  <u>See</u> Exhibit E -

<u>CPN</u> Decision at page 7.  It is irrational for the IBIA to now conclude in its IBIA

Decision, based on the IBCA's <u>Absentee Shawnee</u> Decision, that CPN is collaterally estopped from raising CPN's entitlement to at least the $65,521 in funds for Fiscal Year 2004.

Therefore, for all these reasons, the IBIA Decision's ruling that CPN is collaterally estopped from litigating its entitlement to the $65,521 in funds for Fiscal Year 2004 is erroneous as a matter of law. Accordingly, this Court should overturn the IBIA Decision's holding of collateral estoppel and order remand of this issue back to the IBIA for further proceedings as to the merits of this issue.

**C.    This Court Should Find That There Are No Genuine Issues of Material Facts With Respect to Count III of CPN's Complaint And Entry of Summary Judgment Is Appropriate on Count III**

Even though the IBIA Decision concluded that CPN was collaterally estopped from litigating its entitlement to at least the $65,521 in funds withheld for Fiscal Year 2004 by the Department under Factor 3 (25% in proportion to resident tribal population within each tribe's jurisdictional area) of the Funding Formula, the IBIA Decision went ahead and addressed the merits of CPN's claim and concluded, in an abbreviated fashion, that CPN is not entitled to those funds for Fiscal Year 2004. In Count III of its complaint, CPN contends that the IBIA Decision's finding that CPN is not entitled to at least the $65,521 in funds under Factor 3 for Fiscal Year 2004 fails to address or consider material facts in the record, is contradicted by other material facts and is otherwise erroneous. The undisputed material facts support judgment against the Department as a matter of law as to these allegations in Count III of CPN's complaint.

The Department's current position is that CPN and the Absentee Shawnee tribe share a jurisdictional area and, that as a result, under Factor 3 of the Funding Formula – 25% in proportion to resident tribal population within each tribe's jurisdictional area – CPN's funding must be reduced by $65,521.  CPN contends that, as a result of the Collier Decision, supra, 142 F.3d 1325 (10th Cir.1998), it does not share a jurisdictional area with the Absentee Shawnee and that, as a result, the Department has illegally and continues to illegally withhold at least $65,521 in funding from CPN in Fiscal Year 2004 and each fiscal year thereafter.

Without any explanation or citation to the administrative record, the IBIA Decision summarily concluded that the Tenth Circuit's Collier Decision has no impact upon how the $65,521 in funds are to be distributed to CPN under Factor 3 of the Funding Formula agreement.  The IBIA Decision states that "**it appears** that factor 3 of the agreement contemplated, with respect to the Citizen Potawatomi and the Absentee Shawnee, that funding would be apportioned based on the number of tribal members **each** tribe had within the former reservation boundaries" and that "Collier does nothing to alter this **intent**."  (Emphasis supplied.)  See Plaintiff's Statement of Material Facts at ¶ 34 (citing to Exhibit A – AR at Tab 66 - IBIA Decision, at pages 170-171).  This summary conclusion in the IBIA Decision simply restates the Department's erroneous legal conclusion from 1988 – that CPN and the Absentee Shawnee share a common former reservation – and further perpetuates the Department's erroneous position that all funding percentages under the Funding Formula are to be fixed and forever locked into place based on data that existed only in 1988.

This summary conclusion in the IBIA Decision is without any support in the administrative record and ignores contradictory material facts contained in the record. As indicated above, the administrative record does not contain any evidence that could rationally support the IBIA Decision's conclusion that the five tribal parties to the Funding Formula agreement intended that all funding percentages were to be forever locked into place based on data and events that existed or were understood to exist only in 1988. The IBIA Decision's conclusion that the Collier Decision has no impact on how funds are to be apportioned to CPN under Factor 3 of the Funding Formula is without any support in the record and contradicts material facts in the record.

The IBIA Decision fails to address or explain the fact that the Collier Decision held that the CPN and the Absentee Shawnee do not share a common former reservation area and that the Absentee Shawnee has no jurisdiction over the CPN's exclusive former reservation area. See Collier Decision, supra, 142 F.3d at 1334 (where the Court concluded that "[i]n sum, we conclude that the language, legislative history, and historical circumstances of the 1891 Act do not evince a sufficiently clear Congressional intent to abrogate the Potawatomi Tribe's treaty right to the **exclusive use and occupancy of its former reservation.**" (Emphasis supplied)).

The 10th Circuit's subsequent decision in Citizen Potawatomi Nation v. Norton, 248 F.3d 993 (10th Cir. 2001), modified on rehearing, 257 F.3d 1158 (10th Cir. 2001) (the "Norton Decision"), which is relied upon in the IBIA Decision, did not state that its holding in the Collier Decision had no impact on the issue of how funds are to be apportioned to CPN under Factor 3 of the Funding Formula agreement, which was raised by CPN as an issue in the Norton action. The Norton Decision dismissed the action

without addressing the merits of the issues raised.  In dismissing the action, the Court in

Norton merely clarified that its holding in the Collier Decision had not decided whether

or not the CPN and the Absentee Shawnee share a common service area for purposes of

Factor 3 of the Funding Formula agreement.  See Norton, supra, 248 F.3d at 999 (where

the Court stated that "[m]oreover, our *Collier* opinion did not decide whether the

Shawnee and the Citizen Potawatomi share a *common service area*, which is the relevant

question at issue here.")  This issue was left unresolved by both the Collier Decision and

the Norton Decision.

However, the Norton Decision, as modified upon rehearing en banc, did make

clear that the United States was further prevented from attempting to offer any further

proof of joint jurisdiction by CPN and the Absentee Shawnee over CPN's former

reservation.  See, Norton, supra, 257 F.3d 1158 (where the Court, on rehearing en banc,

modified its opinion to remove the sentence stating: "We did not hold, however, that the

United States could not provide that proof.")

Therefore, both the Collier Decision and the Norton Decision establish

conclusively that the CPN and the Absentee Shawnee do not share a common former

reservation area and that the Absentee Shawnee has no jurisdiction over the CPN's

exclusive former reservation area.  The issue that did not get resolved in either of those

decisions is whether the holding in the Collier Decision (that CPN has the right to the

exclusive use and occupancy of its former reservation) means that CPN and the Absentee

Shawnee also do not share a common service area for purposes of allocating funding

under Factor 3 of the Funding Formula agreement.  That is the issue that CPN raised in

the proceedings before the IBIA.   But rather than rationally address the merits of this

issue, the IBIA Decision summarily concluded, with no explanation, that the holding of

the Collier Decision has no impact on how funds are to be allocated to CPN under Factor

3 of the Funding Formula agreement.

Not only did the IBIA Decision fail to explain its summary conclusion that the

Collier Decision has no impact on Factor 3 of the Funding Formula agreement, it also

erroneously ignored contradictory evidence in the administrative record establishing the

opposite.  The evidence in the administrative record establishes that in developing Factor

3 (25% in proportion to resident tribal population within each tribe's jurisdictional area)

of the Funding Formula, a tribe's former reservation boundaries were used to define the

tribe's jurisdictional area for purposes of allocating funding under Factor 3 and that

jurisdictional area and service area were co-extensive.  It is undisputed that, in a 1999

memorandum prepared by the Department itself, the Department explained that although

service area and territorial jurisdiction are not necessarily co-extensive, in the case of the

five Shawnee Agency tribes and the 1988 inter-tribal resolutions, the Department

determined that the service area designations were made with specific and exclusive

reference to territorial jurisdiction under Factor 3 of the Funding Formula.  See Plaintiff's

Statement of Material Facts at ¶ 5 (citing to Exhibit A – AR at Tab 44, pages 2-3).

It is also undisputed that even the Department's Assistant Secretary for Indian

Affairs at the time (Mr. Kevin Gover) asserted this same position.  In a letter dated

November 15, 1999, he explained that although jurisdictional area and service area under

the ISDA do not have to be synonymous, the Department has discretion to take former

reservation boundaries into account to define service area for purposes of contracting and

compacting Bureau of Indian Affairs programs under the ISDA.  He further explained

37

that the situation in Oklahoma is unique in that there are no present reservation

boundaries and that in developing Factor 3 of the Funding Formula, the former

reservation boundaries were taken into account to define a tribe's jurisdictional area.  He

also specifically stated that:

> When the Department took "former reservation boundaries" into account
> in determining "jurisdictional area" under prong (3) of the formula, it was
> acting on the conclusion of law that the AST [Absentee Shawnee] shared a
> common former reservation area with Citizen Potawatomi Nation (CPN).
> That legal conclusion was subsequently held incorrect by the federal
> courts in Collier.

 See Plaintiff's Statement of Material Facts at ¶ 6 (citing to Exhibit A – AR at Tab 40).

As these undisputed facts establish, in 1988, the Department was acting on the

erroneous legal conclusion that the Absentee Shawnee shared a common former

reservation area with CPN and, based on that erroneous conclusion, apportioned funding

under Factor 3 of the Funding Formula utilizing the number of tribal members each tribe

had within CPN's former reservation boundaries.  The legal conclusion reached in 1988

that CPN and the Absentee Shawnee share a common former reservation was

subsequently held to be incorrect in Collier, supra 142 F.3d 1325, 1334, which

definitively established that CPN has the "right to the **exclusive use and occupancy of**

**its former reservation**".  (Emphasis supplied.)  Now that the Collier Decision has

established that the CPN and the Absentee Shawnee do not share a common former

reservation and that CPN has the exclusive territorial jurisdiction over its former

reservation, the impact of the Collier Decision on the "jurisdictional area" portion of

Factor 3 of the Funding Formula cannot rationally be denied.

Further, since the IBIA refused to require the Department to produce any current data as to any of the factors in the Funding Formula, including the number of resident tribal population within each tribe's jurisdictional area for purposes of Factor 3, the administrative record is incomplete as to how much additional funding CPN is due under Factor 3 if current data is applied. CPN has claimed at least the $65,521 in funding that the Department has withdrawn. But if current data is utilized, the amount of funding due CPN under Factor 3 could well be greater than $65,521.

Accordingly, for all these reasons, this Court should find that the IBIA Decision's ruling that CPN is not entitled to at least the $65,521 claimed with respect to Factor 3 of the Funding Formula is erroneous as a matter of law and must be overturned. This Court should find that the undisputed material facts establish that the IBIA Decision's summary conclusion that the Collier Decision has no impact on Factor 3 of the Funding Formula agreement is inadequate and without any support in the administrative record.

This Court should order remand of this issue back to the IBIA to develop the administrative record with respect to (1) the intent of the parties with respect to Factor 3 of the Funding Formula agreement, and (2) the effect on the "territorial jurisdiction" element of Factor 3 of the Funding Formula of the Collier Decision's holding that CPN has the exclusive use and occupancy of its former reservation. Further, this Court should order that, if after further development of the administrative record the IBIA determines that CPN's territorial jurisdiction for purposes of allocating funding under Factor 3 is defined by its former reservation boundaries, the administrative record must be further supplemented to include current data establishing the number of total resident tribal

population (both members of CPN and members of other tribes) in CPN's territorial

jurisdiction as defined by its former reservation boundaries.

> **IV.    There Are No Indispensable Party Issues That Could
> Affect This Court's Ability to Grant This Motion
> <u>For Summary Judgment Against the Government</u>**

Although involving similar underlying issues on the merits, this action in this

Court by CPN is materially different from the action addressed in the <u>Norton</u> Decision,

<u>supra</u>, 248 F.3d 993, <u>modified on rehearing</u>, 257 F.3d 1158, where the court affirmed

dismissal of CPN's action because CPN was unable to join as necessary and

indispensable parties other tribes participating in the Funding Formula agreement.

The action at issue in the <u>Norton</u> Decision was an original action directly filed in

U.S. district court and was not proceeded by any administrative appeal process available

at the Department.  Nor was there any remand available to the district court in which to

send the matter back to an administrative board, like the IBIA, for resolution of the

merits.  In the <u>Norton</u> action, CPN sought resolution by the court of the merits of the

issues raised by CPN regarding the Department's application of the Funding Formula

agreement and the shared service area issue.  As indicated in the <u>Norton</u> Decision, the

action brought by CPN in that instance was one for a 'mandatory injunction in the nature

of mandamus'".  <u>Norton</u>, <u>supra</u>, 248 F.3d at 995.  In <u>Norton</u>, the district court ruled that it

could not address the merits of CPN's action due to the lack of indispensable parties and

dismissed CPN's action on those grounds.  The appellate court affirmed the district

court's dismissal.  <u>Id.</u>

It is undisputed that at the time that CPN initiated its action resulting in the

<u>Norton</u> Decision, there were no regulations implementing the Self-Governance Program

provisions of the ISDA.  Nor were there any administrative remedies available under the

Self-Governance Program of the ISDA in which to bring an administrative pre-award

action at the Department.   It was not until December 2000 when the Department issued,

for the first time, regulations implementing the Self-Governance Program provisions of

the ISDA.  Those regulations became effective January 1, 2001.  65 Fed. Reg. 78,688

(Dec. 15, 2000).  Among other things, the regulations implementing the Self-Governance

Program provisions of the ISDA provide that a tribe may appeal pre-award disputes that

arise prior to execution of an AFA or a Compact directly to the IBIA.  25 C.F.R. §

1000.432(b)(2).  See Plaintiff's Statement of Material Facts at ¶¶ 12, 13 (citing to 65 Fed.

Reg. 78,688 (Dec. 15, 2000); 25 C.F.R. § 1000. 432(b)(2); Plaintiff's Complaint at ¶ 22-

23).

      The pre-award dispute concerning CPN's Fiscal Year 2004 AFA that is the

subject of the IBIA Decision at issue in this action was filed by CPN under 25 C.F.R. §

1000.432(b)(2) (which allows for pre-award appeals of disputes regarding AFAs directly

to the IBIA).  The IBIA Decision is considered final for the Department.  See 43 C.F.R. §

4.312.  Under the provisions of the ISDA at 25 U.S.C. § 450m-1(a), CPN has the right to

seek review in this Court of any final action of the Department, which includes the IBIA

Decision at issue here.  Remand from a federal court back to the IBIA is also specifically

provided for in the Department's regulations governing the IBIA appeal process at 43

C.F.R. § 4.316 (addressing IBIA procedures whenever any matter is remanded from any

federal court to the IBIA for further proceedings).

      As indicated above, in this action, CPN seeks review by this Court of the IBIA

Decision and a ruling from this Court holding that the IBIA Decision is without any

support in the administrative record and is otherwise erroneous. However, in contrast to

the action addressed in the <u>Norton</u> Decision, the underlying merits of the issues raised by

CPN at the IBIA and addressed by the IBIA Decision are not before this Court and will

not be resolved in this Court by this action. This Court is not asked by CPN to develop

its own evidence and to reach its own conclusions regarding the underlying merits of the

issues raised by CPN in the IBIA proceedings. Rather, CPN asks this Court to find that

the conclusions reached by the IBIA Decision are without any support in the

administrative record and otherwise erroneous as a matter of law. The relief requested by

CPN is for this Court to remand the matter back to the IBIA for further proceedings in

order to supplement the administrative record so that the IBIA may reasonably and

rationally resolve the merits of the issues raised based on the supplemented record.

The IBIA has long recognized that it is not required and does not invoke

traditional rules of joinder and of necessary or indispensable parties. <u>See</u>, <u>e.g.</u>, <u>Indians of</u>

<u>the Quinault Reservation v. Commissioner of Indian Affairs</u>, 9 IBIA 63 (Oct. 15, 1981)

(citing to <u>National Licorice Co. v. NLRB</u>, 309 U.S. 350 (1960)). The IBIA may proceed

to resolve the merits of the issues raised by exercising its trust responsibility to both the

appellant and any alleged absent indispensable party. This trust responsibility obligates

the IBIA to consider the rights of all tribes, regardless of their participation, or lack

thereof. Indeed, the IBIA did so in connection with the instant appeal that resulted in the

IBIA Decision at issue here. <u>See</u> Exhibit A – IBIA Decision, at page 171 (Footnote 10).

Other courts that have reviewed IBIA decisions involving potential issues of the

joinder of indispensable parties have been able to afford some review of the IBIA

decision while limiting the relief granted to remand of the decision back to the IBIA for

further proceedings on the merits of the issues.  <u>See</u>, <u>e.g.</u>, <u>Feezor v. Babbit</u>, 953 F.Supp.

1, 6 (Footnote 4) (D.D.C. 1996) (where the court reviewed a decision by the IBIA and

limited the remedy to remand back to the IBIA for further proceedings and noted that, by

doing so, the question of the absence of a potential indispensable party need not be

addressed.)  In other cases, the courts reviewing an IBIA decision have been able to

conclude that, even though non-party Indian tribes might be affected by the court's

review, their joinder was unnecessary for the court to conduct its review.  <u>See</u>, <u>e.g.</u>,

<u>Ransom v. Babbitt</u>, 69 F.Supp.2d 141, 148 (D.D.C. 1999) (where the court found that a

non-party Indian tribal government was not an indispensable party even though it might

be affected by the court's review of the agency's actions, including review of an IBIA

decision.)

     Here, by not seeking resolution by this Court of the underlying merits of the

issues raised in the IBIA proceedings and by limiting the remedy in this action to remand

back to the IBIA for further proceedings as requested herein, the issue of any alleged

indispensable party need not be addressed or otherwise resolved in this action.  On

remand from this Court, the IBIA will be able to address the merits of the issues raised by

CPN without the constraints of any indispensable party issues.  Therefore, joinder of any

other party that might have an interest in this action, including the other four Shawnee

Agency tribes, is not necessary or required for this Court to conduct its review and grant

the relief requested.

     Accordingly, for all these reasons, this Court should conclude that the issue of

joinder of any indispensable party need not be addressed or otherwise resolved in order to

grant this Motion by CPN in this action.

## **CONCLUSION**

For all these reasons, CPN respectfully requests that this Court grant this Motion and grant CPN the following relief:

1. Declare that the IBIA Decision is erroneous for the reasons stated herein;

2. Enjoin the Department from implementing the IBIA Decision as final agency action;

3. Remand this matter back to the IBIA for further proceedings as requested herein; and,

4. Grant all other relief that this Court deems just and appropriate.

Respectfully submitted,

CITIZEN POTAWATOMI NATION

By:  ___/s/ James D. Bachman___
      James D. Bachman
      D.C. Bar No. 332650

      Ron R. Hutchinson
      D.C. Bar No. 428039

      Doyle & Bachman, LLP
      4350 N. Fairfax Drive, Suite 420
      Arlington, Virginia  22203
      (703) 465-5440
      Fax:  (703) 465-5593

Dated:  December 29, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of December, 2006, I caused to be delivered

the following by overnight delivery a copy of Plaintiff's Motion for Summary Judgment

along with all Exhibits:

    Jeffrey A. Taylor, U.S. Attorney
    Rudolph Contreras, Assistant U.S. Attorney
    John F. Henault, Assistant U.S. Attorney
    U.S. Department of Justice
    555 4th Street, N.W.
    Washington, D.C.  20530


                                <u>/s/ James D. Bachman</u>
                                James D. Bachman