# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CITIZEN POTAWATOMI NATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case** |
| ) | **Number:  1:06CV00830** |
| **DIRK KEMPTHORNE, <u>et al.</u>,** ) | |
| ) | **Judge Gladys Kessler** |
| **Defendants.** ) | |
| ) | |

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN RESPONSE
## <u>TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys, hereby submits this Statement of Genuine Issues in response to Defendant's Statement of Material Facts Not In Dispute submitted in support of Defendant's Motion for Summary Judgment.

None of the statements contained in Defendant's Statement of Material Facts Not in Dispute raise any genuine issues necessary for litigation.   This is because Defendant's proffered statements completely ignore the procedural defects in the administrative decision issued by the Interior Board of Indian Appeals (the "IBIA Decision") and the shortcomings in the administrative record supporting the IBIA Decision identified by CPN in its complaint.  This action by CPN challenges the procedural defects in the IBIA Decision and the shortcomings of the administrative record supporting the IBIA Decision.  The remedy requested by CPN in this action is for remand back to the IBIA for

further development of the administrative record in order to cure the procedural defects and provide CPN with procedural due process.

None of the proffered statements contained in Defendant's Statement of Genuine Issues Not In Dispute address the procedural defects and shortcomings in the administrative record. CPN's Statement of Material Facts Not In Genuine Dispute that was filed in support of CPN's cross-motion for summary judgment in this action identify the material facts not in genuine dispute that are associated with the procedural defects and shortcoming in the administrative record associated with the IBIA Decision. CPN relies upon its Statement of Material Facts Not In Genuine Dispute as its separate statement of facts in opposition to the Government's Motion for Summary Judgment.

Respectfully submitted,

CITIZEN POTAWATOMI NATION

By: ___/s/ James D. Bachman___
James D. Bachman
D.C. Bar No. 332650

Ron R. Hutchinson
D.C. Bar No. 428039

Doyle & Bachman, LLP
4350 N. Fairfax Drive, Suite 420
Arlington, Virginia  22203
(703) 465-5440
Fax:  (703) 465-5593

Dated:  February 1, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
CITIZEN POTAWATOMI NATION,                              )
                                                        )
        Plaintiff,                                      )
                                                        )
        v.                                              )       Case
                                                        )       Number:  1:06CV00830
DIRK KEMPTHORNE, et al.,                                )
                                                        )       Judge Gladys Kessler
        Defendants.                                     )
                                                        )
_____)

STATEMENT OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys,

hereby submits this Statement of Points and Authorities in opposition to Defendant's

Motion for Summary Judgment.

**INTRODUCTION**

        Defendant's Motion should be denied because it mischaracterizes the nature of

this action and ignores the material procedural defects associated with the administrative

decision at issue here that are raised by CPN in its Complaint.

        Contrary to the characterization in Defendant's Motion, this action by CPN does

not seek for this Court to resolve the underlying merits of the issues raised by CPN in its

pre-award appeal before the Interior Board of Indian Appeals ("IBIA") and ruled on in

the final decision issued by the IBIA in Citizen Potawatomi Nation v. Director, Office of

Self-Governance, 42 IBIA 160, January 25, 2006 (the "IBIA Decision").  (Plaintiff's

Exhibit A – AR at Tab 66.)  Rather, CPN asks this Court to find that the IBIA Decision is

not sustainable on the basis of the existing administrative record because it is based upon

1

material procedural defects in that it fails to address material evidence in the
administrative record, assumes evidence not contained in the administrative record, and
otherwise fails to provide for an adequate basis for the conclusions reached.  Defendant's
Motion should be denied because it fails to address or otherwise overcome any of these
material procedural defects.

Defendant's Motion is also incorrect with respect to the scope of remedy
requested by CPN in this action.  Defendant incorrectly contends that any remedy in this
action will require relief beyond remand back to the IBIA since any such remedy will
purportedly require a substantive holding on the underlying merits of the issues addressed
by the IBIA which will be binding on the IBIA.  Defendant is wrong.  The remedy
requested is for this Court to order that the matter be remanded back to the IBIA for
further proceedings in order to correct the material procedural errors by providing a
proper basis in the administrative record to allow for the resolution by the IBIA of the
merits of the issues raised by CPN in its pre-award appeal at the IBIA.  The remedy
requested by CPN in this action will provide meaningful relief to CPN since it will allow
CPN to obtain due process before the IBIA in connection with the merits of the issues
raised in its pre-award appeal.

The nature of this action and the remedy requested by CPN are both shaped so
that any absent parties (i.e. the four other Shawnee Agency tribes) are not necessary to a
just adjudication of this action.  No holding by this Court is requested or required on the
merits of the substantive issues raised at the IBIA.

This Court should deny Defendant's Motion and sustain CPN's Motion for the
reasons set forth in CPN's Motion.

I.      **The Appropriate Standard of Review Is De Novo**

This action by CPN seeks review of the IBIA Decision which involved a pre-award dispute concerning CPN's 2004 Annual Funding Agreement ("AFA").  This action is brought pursuant to the Tribal Self-Governance Program provisions of Title IV of the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 458aa-458hh.  As stated in Section 403(h) of Title IV of the ISDA (25 U.S.C. § 458cc(h)), AFA's entered into pursuant to Title IV of the ISDA are considered "contracts" within the meaning of the Section 110 in Title I of the ISDA (25 U.S.C. § 450m-1(a)) granting original jurisdiction over any civil action arising under the ISDA to the United States district courts.  In addition, Section 406(c) of Title IV of the ISDA (25 U.S.C. § 458ff(c)), states specifically that Section 110 of Title I of the ISDA (25 U.S.C. § 450m-1) "shall apply to agreements provided under this title" – i.e. AFAs and Compact entered into by tribes with the Department under Title IV of the ISDA, such as CPN's Compact and AFAs.

Defendant correctly notes that the ISDA does not set forth any standard of review.  However, Defendant is wrong in contending that the required standard of review is the arbitrary and capricious standard of the Administrative Procedures Act ("APA") 5 U.S.C. §§ 702-706.  None of the cases cited by Defendant require application of the APA's arbitrary and capricious standard in this action in this Court.

There are no controlling cases in this jurisdiction that require application of the APA's standard in actions brought under the ISDA.

Defendant's reliance upon Ransom v. Babbitt, 69 F.Supp.2d 141 (D.D.C. 1999) and Feezor v. Babbitt, 953 F.Supp. 1 (D.D.C. 1996) is misplaced.   While both of those

cases applied the APA standard to challenges to IBIA decisions, neither of those actions

were brought pursuant to the ISDA since neither involved contracts subject to the ISDA.

     As the Court noted in <u>Shoshone-Bannock Tribes of Fort Hall v. Shalala</u>, 988

F.Supp 1306, 1313-1314 (D. Or. 1997), the only reported case at that time construing the

judicial review provision of the ISDA (25 U.S.C. § 450m-1(a)) was <u>Ramah Navajo</u>

<u>School Board, Inc. v. Babbitt</u>, 87 F.3d 1338 (D.C. Cir. 1996), from this Circuit.  But, as

the Court explained in <u>Shoshone-Bannock</u>, <u>supra</u>, 988 F.Supp. at 1313, the Court in

<u>Ramah Navajo</u> did not specifically address what standard of review would apply. The

Court also noted in <u>Shoshone-Bannock</u> that:

> Although making several direct references to the APA, *Ramah* did not
> explicitly state that the APA provides the standard of review.  To muddy
> the waters even further, a footnote suggests that the district court 'in its
> discretion, might choose to hold a hearing' on remand.  *Id.* at 1341, n.2.
> The dissent argued that such an approach 'turns principles of
> administrative law on their head . . . because it postures the district court
> as the primary decision maker rather than as a reviewing court with only
> limited writ under the APA.'  *Id.* at 1352.

<u>Shoshone-Bannock</u>, <u>supra</u>, 988 F.Supp. at 1314.  In <u>Ramah Navajo</u>, the action involved

the Department's distribution of contract support funds under self-determination

contracts entered into under the Indian Self-Determination Program of Title I of the

ISDA and a challenge to the Department's new policy of applying a 50% penalty

reducing a tribe's contract support funding when the tribe failed to submit its proposal for

its indirect cost rate by the specified deadline.  In connection with its determination as to

whether the challenged agency action (the new 50% penalty) was reviewable or not, the

Court in <u>Ramah Navajo</u> briefly discussed both the APA and the judicial review provision

of the ISDA at 25 U.S.C. § 450m-1 but the Court did not discuss or decide the

appropriate standard of review under the judicial review provision of the ISDA.  Ramah

Navajo, supra, 87 F.3d at 1343-1344.  However, the Court did note that:

> "Section 450m-1(a) of the ISDA expressly declares that United States
> district courts shall have original jurisdiction over 'any civil action or
> claim against the appropriate Secretary *arising under [the Act]*."  ISDA §
> 450m-1(a). . . . . .
>
> Although the language of the statute's announcement of the availability of
> judicial review is perfectly clear and thus needs no illumination from the
> legislative history, the 1987 Senate Report accompanying the 1988
> Amendment which added the judicial review provision leaves no doubt
> that Congress intended exactly what it wrote:
>
>> The amendments made by [§ 450m-1(a)] are necessary to
>> give self-determination contractors [Tribes] *viable*
>> *remedies* for compelling BIA and IHS compliance with the
>> [ISDA].  The strong remedies provided in these
>> amendments are required because of *those agencies'*
>> *consistent failure over the past decade* to administer self-
>> determination contracts in conformity with the law.  Self-
>> determination contractors' rights under the Act have been
>> systematically violated *particularly in the area of funding*
>> *indirect costs. . . .*

Ramah Navajo, supra, 87 F.3d 1344. (Emphasis in original.)  The Court went on in

Ramah Navajo to conclude that the challenged agency action was judicially reviewable

but the Court did not discuss or specify the appropriate standard of review to apply.  But

the Court did go on to find that the Department's new policy instituting the 50% penalty

reduction exceeded its limited statutory authority in violation of the ISDA.  Ramah

Navajo, supra, 87 F.3d 1347-1350.  As indicated above, in ordering remand back to the

district court for further proceedings, the Court noted in Footnote 2 of its decision that the

district, in its discretion, might choose to hold a hearing to address the precise distribution

of the disputed funds held in escrow.  Ramah-Navajo, supra, 87 F.3d at 1341, n.2.  In

doing so, the Court accorded no discretion to the Department's actions and appears to have suggested that the district court apply a de novo review of the Department's actions.

In any event, the more persuasive decisions that have fully addressed the appropriate standard of review under the ISDA have concluded that the appropriate standard is de novo review.  See Cherokee Nation of Oklahoma v. U.S., 190 F.Supp.2d 1248 (E.D. Okla 2001), aff'd, 311 F.3d 1054 (10th Cir. 2002), rev'd on other grounds, 543 U.S. 631, 125 S.Ct. 1172 (2005); Shoshone-Bannock, supra, 988 F.Supp 1306 (D. Or. 1997).   Those decisions concluded that de novo review is appropriate because Section 450m-1(a) of the ISDA grants district courts "original jurisdiction" over "civil actions" with authorization to award money damages and that this combination denotes an intention by Congress to grant the right of de novo review.

Accordingly, this Court should find that the appropriate standard of review to apply in this action brought pursuant to the ISDA is a de novo standard and that the IBIA Decision's material procedural errors should be held to a strict de novo standard of review.   Nevertheless, as set forth in Plaintiff's Motion, even if this Court were to apply the APA's arbitrary and capricious standard of review, the IBIA Decision still should be overturned and remanded back to the IBIA for further proceedings due to the material procedural errors.

II.    **Defendant's Motion Does Not Overcome the Lack of Support In the Administrative Record for the IBIA's Holding That the Funding Formula Is Ambiguous and That CPN Knew Of and Acquiesced In the Department's <u>Static Application of the Funding Formula Prior to 1998</u>**

In its defense of the ambiguity holding of the IBIA Decision, Defendant recounts the findings in the IBIA Decision in support of this holding and incorrectly argues that the Funding Formula must be viewed as a "self-determination contract" within the meaning of 25 U.S.C. § 450(b)(1) and that, pursuant to 25 U.S.C. § 450m-1(b), as a purported self-determination contract, the Funding Formula cannot be altered without a tribe's consent.  This argument by Defendant is wrong on two levels.

First, the Funding Formula agreement is not a self-determination contract within the meaning of Section 4 of Title I of the ISDA (25 U.S.C. § 450(b)(1)).  The Funding Formula agreement is not a separate contract executed between any tribe and the Department of the Interior.  Rather, the Funding Formula agreement is comprised of five separate tribal resolutions issued by the five Shawnee Agency tribes and reflects agreement among the five tribes on four factors for the Department of the Interior to apply in distributing federal funding to the five Shawnee Agency five tribes.  <u>See</u> Plaintiff's Exhibit A – AR at Tab 60 –CPN Opening Brief-Declaration of Rhonda Butcher at Attachments 1 through 5.  As utilized by the Department with respect to distributing funding for AFAs entered into under the Tribal Self-Governance Program provisions of Title IV of the ISDA, the Funding Formula is a formula-driven "distribution formula" within the meaning of the regulations implementing Title IV of the ISDA at 25 C.F.R. § 1000.98.  As a formula-driven distribution formula, the Funding Formula agreement is required to "be reasonably related to the function or service performed."  25

C.F.R. § 1000.98(a)(1). Defendant appears to concede this point in its Motion, at page 11, when it argues, albeit erroneously, that a static application of the Funding Formula is "not unreasonable" within the meaning of 25 C.F.R. § 1000.98.

        To the extent that Defendant argues that Compacts and AFAs entered into with the Department by tribes pursuant to the Tribal Self-Governance Program provisions of Title IV of the ISDA (25 U.S.C. §§ 458aa-458hh) are "self-determination contracts" within the meaning of Title I of the ISDA (25 U.S.C. §§ 450-450n), Defendant is wrong as a matter of law. "Self-determination contract" is defined in 25 U.S.C. § 450(b) as those contracts between a tribe and the Department "entered into under Part A" of Subchapter II of Title 25. Part A of Subchapter II of Title 25 (25 U.S.C. §§450f-450n) governs the Indian Self-Determination Program provisions of the ISDA. Compacts and AFAs entered between tribes and the Department under Title IV of the ISDA (the Tribal Self-Governance Program) are governed by Part D of Subchapter II of Title 25 (25 U.S.C. §§ 458aa-458hh). Only certain provisions from Title I of the ISDA apply automatically by operation of law to Compacts and AFAs entered into under Title IV of the ISDA. See 25 U.S.C. §§ 458cc(h); 458ff(c). However, at the option of the participating tribe, any or all provisions of Part A of Subchapter II of Title 25 may be made a part of any agreement (i.e. Compact or AFA) entered into pursuant to Part D of Subchapter II of Title 25 (the Tribal-Self Governance Program provisions in Title IV of the ISDA). See 25 U.S.C. §§ 458cc(l). Therefore, any assertion by Defendant that Compacts and AFAs entered into under Title IV of the ISDA must be considered "self-determination contracts" as a matter of law is incorrect.

Second, Defendant's reliance upon the prohibition in 25 U.S.C. § 450m-1(b) against unilateral revision or amendment by the Department of "self-determination contracts" is also misplaced. Not only is the Funding Formula agreement not a "self-determination" contract within the meaning of this statutory prohibition or is otherwise governed by that statutory provision, there is nothing in this action by CPN in this Court that seeks or otherwise requests revision to or amendment of the Funding Formula agreement. In its pre-award dispute before the IBIA, CPN sought only to require that the Department correctly apply the formula set forth in the Funding Formula agreement according to its plain terms. No revision or amendment to the Funding Formula agreement was sought by CPN. In this action, CPN requests that this Court overturn the IBIA Decision upholding the Department's actions on the grounds that the IBIA Decision is based on material procedural defects. The merits of the proper application of the Funding Formula are not even before this Court. Therefore, Defendant's argument regarding the statutory prohibition in 25 U.S.C. § 450m-1(b) is an argument of no relevance.

What is before this Court is CPN's contention that there is no reasoned or rational support in the existing administrative record for the IBIA Decision's conclusions that (a) the tribal resolutions comprising the Funding Formula agreement are ambiguous and (b) it was reasonable for the Department to utilize the same data from 1988 for the past 18 years for purposes of distributing funding to the tribes, including funds to be distributed to CPN for Fiscal Year 2004. CPN's requested remedy is for this Court to remand this issue back to the IBIA for further proceedings in order to correct the material procedural defects with respect to these findings in the IBIA Decision.

Defendant does not dispute the fact that the IBIA Decision's holding of ambiguity failed to address in any manner the following provisions of the five tribal resolutions comprising the Funding Formula agreement stating that: (1) the Funding Formula is to be used "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years"; and (2) that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."  Nor does Defendant dispute the fact that these provisions from the tribal resolutions are material and relevant to any interpretation of the Funding Formula agreement.

Even under the limited scope of review of the APA, this Circuit has recognized that a Court should intervene to ensure that the agency has examined the relevant data and evidence and articulated a satisfactory explanation for its action.  See Petroleum Communications, Inc. v. F.C.C., 22 F.3d 1164, 1172 (D.C. Cir. 1994) (citing to Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)).  Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, the Court must undo the action.  Id. (citing to American Tel. & Tel. Co. v. F.C.C., 974 F.2d 1351, 1354 (D.C. Cir. 1992).  See also Ransom v. Babbitt, 69 F.Supp.2d 141, 149 (D.D.C. 1999) (where the Court applied this standard to review of an IBIA decision and concluded that the IBIA decision must be overturned as arbitrary, capricious and contrary to law).

Here, it is undisputed that the IBIA Decision fails to address or explain in any manner the above-quoted language contained in the tribal resolutions that comprise the Funding Formula agreement.  It is also undisputed that this language is material and

10

relevant to any interpretation of the Funding Formula agreement. Therefore, the undisputed material facts establish that the IBIA Decision failed to examine the relevant data and evidence contained in the administrative record and has failed to articulate a satisfactory explanation for its conclusion that the Funding Formula agreement is ambiguous. Accordingly, even under the limited scope of review of the APA, this Court should overturn the IBIA Decision's ambiguity holding.

With respect to the language in the tribal resolutions stating that the tribes "contract for all Bureau of Indian Affairs provided operation and services for FY 89 and future years," Defendant attempts to explain what the IBIA Decision failed to even address. Defendant argues in its Motion that this language is not indicative of any intent that the "figures used in the formula change from year to year" but "merely states that the formula will be employed for a time period extending beginning in FY 1989 and continuing in future years." Defendant's Motion, page 10. This argument by Defendant is not based on anything contained in the IBIA Decision or in the administrative record and is nonsensical.

However, this argument by Defendant is an admission that the above-quoted language from the tribal resolutions comprising the Funding Formula agreement is relevant and material to any interpretation of that agreement since Defendant itself admits that this language means that "the formula will be employed for a time period extending beginning in FY 1989 and continuing in future years." As Defendant admits, the formula is to be applied in future years beyond Fiscal Year 1989. But Defendant argues that this can be done without using any data other than that from 1988. This assertion is irrational. There must be something to apply the formula to in those future years. There can be no

application of the formula in those future years, if there is no current data from those future years against which to apply the formula. There can be no application of the formula specified in the Funding Formula in any year other than Fiscal Year 1989 if only 1988 data is used to establish a static percentage of funds to be used in all future years beyond Fiscal Year 1989. This argument by Defendant should be rejected by this Court as irrational on its face. More significantly, the IBIA Decision's holding of ambiguity completely failed to address the meaning of this language of the Funding Formula agreement and Defendant cannot now be allowed to create an interpretation of that language in its Motion in support of the IBIA's ambiguity holding. CPN is entitled to have this matter remanded back to the IBIA in order to require the IBIA to address the meaning of this language contained in the five tribal resolutions that comprise the Funding Formula agreement.

In addition, Defendant's Motion does not address the language in the tribal resolutions stating that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency." Defendant offers no reason why the IBIA Decision's holding of ambiguity should be upheld even though the IBIA Decision failed address or discuss in any way this material language from the Funding Formula agreement. Defendant appears to attempt an interpretation of this language when it addresses the annual reporting requirements set forth in 25 U.S.C. § 458ee and 25 C.F.R. § 1000.381 and the regulation governing formula-driven distribution formulas at 25 C.F.R. § 1000.98. See Defendant's Motion, pages 10-11. Defendant's proffered interpretation is not based on anything contained in the administrative record and was not addressed or considered in any way in the IBIA Decision. For this reason

alone, Defendant's proffered interpretation should be rejected since it is not part of the administrative record and was not considered or addressed in any way in the IBIA Decision.

Moreover, Defendant's assertions mischaracterize CPN's contentions and are otherwise not persuasive.

CPN contends that it was prejudicial error for the IBIA Decision to completely fail to address or discuss in any way the language in the five tribal resolutions stating that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency." CPN cites to and relies upon the statutory and regulatory reporting provisions at 25 U.S.C. § 458ee and 25 C.F.R. § 1000.381 as well as the regulatory provision governing formula-driven distribution formulas at 25 C.F.R. § 1000.98 in support of its argument that the IBIA Decision's failure to address the above-quoted language from the Funding Formula in connection with its ambiguity holding was a material prejudicial error. Contrary to Defendant's assertions, at page 10-11 of its Motion, CPN does not ask this Court to conclude that these statutory and regulatory provisions, on their face, require that the Department utilize current data in calculating funding to be distributed to tribes. That issue is not before this Court. Rather, CPN asks this Court to find that these statutory and regulatory provisions should have been addressed and considered in the IBIA Decision as part of its interpretation of the Funding Formula agreement, especially in connection with the language from the tribal resolutions stating that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."

Defendant's assertions regarding these statutory and regulatory provisions are not persuasive. Defendant contends that the reporting obligations of 25 U.S.C. § 458ee and 25 C.F.R. § 1000.381 have nothing to do with the amount of funding to be provided to tribes under the Tribal Self-Governance Program of Title IV of the ISDA but instead "**only** concern data collected for statutory reporting requirements." See Defendant's Motion, at page 10. (Emphasis in original.) However, as set out in Plaintiff's Motion, the data that the Department collects on an annual basis is the very same data that is identified as Factors 2, 3 and 4 of the Funding Formula at issue here – i.e. tribal enrollment, tribal resident population, and trust acreage. It is disingenuous for the Department to contend that even though it annually collects the very type of data that is identified in the Funding Formula it should not do anything with that current data but simply collect it, report it to Congress and then file it away. The Department is under an obligation, as required in 25 C.F.R. § 1000.98, to ensure that any formula-driven distribution formula, such as the Funding Formula at issue here, reasonably relates to the function or service performed. Without consideration of this current data, there will be no basis in the administrative record to conclude that the funds distributed in any given fiscal year reasonably relate to the functions or service performed. It is not rational or reasonable for the Department to contend that utilizing static data from 1988, that is over 18 years old, satisfies that obligation. The functions and services performed by the tribes during those 18 years are likely to have shifted and changed materially based on material changes in tribal enrollment, tribal resident population and trust acreage. Consideration of this current data that the Department collects on an annual basis is material to any determination by the IBIA of the impact, if any, of the regulation at 25 C.F.R. § 1000.98

14

(requiring that any formula-driven distribution formula reasonably relate to the function or service performed) on the IBIA's interpretation of the material language in the Funding Formula agreement stating that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."

Finally, Defendant's Motion fails to address CPN's contention that, even if the IBIA Decision's holding of ambiguity, is upheld, the IBIA Decision should still be overturned because it relies upon evidence not contained in the administrative record relating to the alleged knowledge of and actions of CPN regarding the Department's static application of the Funding Formula prior to 1998. Defendant simply notes that the IBIA Decision "found that CPN knew of the static application (performance) but failed to object until 1998." Defendant's Motion, at page 7. However, Defendant fails to cite to any evidence contained in the administrative record supporting this factual allegation. That is because there is none. The only reference relied upon in Defendant's Motion for this factual assertion is the unsupported statement contained in the IBIA Decision itself. On page 9 of its Motion, Defendant purports to discuss "the parties' practice of consistently applying static 1988 figures" but Defendant cites only to the IBIA Decision itself and to arguments made by attorneys for the Absentee Shawnee Tribe ("AST") in a letter dated May 6, 1999. As indicated in CPN's Motion, the IBIA Decision itself does not cite to or rely upon any evidence in the administrative record regarding CPN's knowledge and actions regarding the Department's static application of the Funding Formula prior to 1998. In addition, nothing in the arguments made by attorneys for AST in the May 1999 letter provide any evidence establishing that CPN knew of and

acquiesced in the Department's static application of the Funding Formula prior to 1998. Moreover, Defendant itself does not dispute that it was not until September 1998 that CPN entered into its first Compact of Self-Governance and AFA pursuant to the Tribal Self-Governance Program provisions of Title IV of the ISDA.  See Defendant's Statement of Material Facts Not In Dispute, at ¶ 8.  Nor does Defendant dispute the fact that prior to 1998 CPN entered only self-determination contracts under Title I of the ISDA.  See Defendant's Statement of Material Facts Not In Dispute, at ¶ 9.  Defendant also does not dispute the fact that in 1998, in connection with negotiation and award of its first Compact and AFA under Title IV of the ISDA (the Tribal Self-Governance Program), CPN objected to the Department's use of 1988 data for purposes of applying the factors in the Funding Formula and that CPN noted its objections in each subsequent AFA from Fiscal Year 1999 up through its current AFA for Fiscal Year 2006.  See Defendant's Statement of Material Facts Not In Dispute, at ¶¶ 10-11.

It is undisputed there is no basis in the administrative record supporting the factual conclusion in the IBIA Decision that CPN knew of and acquiesced in the Department's static application of the Funding Formula prior to 1998.  It is also undisputed that this factual finding in the IBIA Decision was a material factual finding supporting the IBIA's holding that the Department did not err in determining that the parties to the 1988 Funding Formula agreement intended for the formula to apply in a static manner.  See Plaintiff's Exhibit A – AR at Tab 66 – IBIA Decision, at page 173. Even under the limited scope of review of the APA, where the agency's conclusions are not supported by the evidence in the administrative record or otherwise assumes evidence not contained in the record, those conclusions will be overturned as arbitrary, capricious

and contrary to law.  See Petroleum Communications, supra, 22 F.3d at 1172; Ransom, supra, 69 F.Supp.2d at 149.  Therefore, the undisputed material facts establish that this Court should find that it was a prejudicial error for the IBIA to have made this factual conclusion without any support in the administrative record.

For all these reasons and for the reasons, this Court should find that Defendant's Motion fails to overcome the lack of support in the administrative record for the IBIA's holding that the Funding Formula agreement is ambiguous and that CPN knew of and acquiesced in the Department static application of the formula prior to 1998.

### III.    Defendant's Arguments In Support of the IBIA's Collateral Estoppel Holding Are Erroneous

Defendant's arguments in support of the IBIA Decision's collateral estoppel holding are inconsistent and legally erroneous.  This Court should reject Defendant's arguments.

Defendant argues that the IBIA was correct to conclude that the decision issued by the Interior Board of Contract Appeals ("IBCA") in Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA 52 (2002) (the "Absentee Shawnee Decision") collaterally estops CPN from litigating CPN's entitlement to $65,521 in funding under Factor 3 of the Funding Formula in its pre-award appeal at the IBIA concerning CPN's 2004 AFA.  Defendant engages in the same convoluted, inconsistent and legally erroneous analysis as did the IBIA in its decision.

Defendant's erroneously argues that the issue regarding CPN's entitlement to at least $65,521 in funding under Factor 3 of the Funding Formula that was raised by CPN in its 2004 pre-award appeal at the IBIA is the same issue that was litigated and finally decided in the Absentee Shawnee Decision.  Defendant is as wrong.

17

Defendant cannot avoid the undisputed fact that the <u>Absentee Shawnee</u> Decision involved a post-award breach of contract dispute between the Department and the Absentee Shawnee tribe concerning the Absentee Shawnee's AFAs for Fiscal Years 2000 and 2001 based on the Department's post-award unilateral removal of funds already promised and agreed to in contracts with the Absentee Shawnee.  Defendant's own Statement of Material Facts Not In Dispute admits this fact.  <u>See</u> Defendant's Statement of Material Facts Not In Dispute, at ¶¶ 33-35.  It cannot be disputed that the issue presented and litigated in the <u>Absentee Shawnee</u> Decision was a breach of contract dispute in which the Absentee Shawnee tribe sought to recover funds previously promised to it in its prior contracts for Fiscal Years 2000 and 2001 and then unilaterally withdrawn by the Department.  It also cannot be disputed that the judgment in the <u>Absentee Shawnee</u> Decision was limited to a holding that the decision in <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, 142 F.3d 1325 (10th Cir. 1998) (the "<u>Collier</u> Decision") did not provide a sufficient legal basis to permit a post-award unilateral reduction by the Department in funding previously agreed to be provided to the Absentee Shawnee tribe for those fiscal years.  Defendant's own characterization of the holding of the <u>Absentee Shawnee</u> Decision admits as much – arguing that the decision rested on two alternative rulings:  (1) that the <u>Collier</u> Decision did not require a change in the Absentee Shawnee's jurisdictional area as understood by the parties; and (2) that, even if the <u>Collier</u> Decision did require such a change, the Department lacked authority under the ISDA to unilaterally reduce the Absentee Shawnee's funding based on a change in the understanding of the legal extent of the Absentee Shawnee's jurisdictional area.  <u>See</u> Defendant's Motion, at pages 16-17.

The judgment in the <u>Absentee Shawnee</u> Decision did not resolve any issue of whether or not the <u>Collier</u> Decision requires a change in the application of Factor 3 of the Funding Formula in any future fiscal years that had yet to be contracted for by CPN or the Absentee Shawnee tribe. The IBCA could not have and did not resolve any such issue because the IBCA's jurisdiction is limited to post-award contract disputes, as defined in the Contract Disputes Act, 41 U.S.C. § 607(d) . <u>See also</u> 43 C.F.R. § 4.100(b) (stating that the IBCA's jurisdiction for considering appeals is limited to considering and determining appeals from decisions of contracting officers relating to contracts).

Defendant's own arguments make this very same point with respect to CPN's post-award breach of contract action in <u>Appeal of Citizen Potawatomi Nation of Oklahoma</u>, IBCA No. 4522/04, 35 IBCA 207, 05-1 BCA ¶ 32,919 (Mar. 22, 2005) (the "<u>CPN</u> Decision"). The <u>CPN</u> Decision involved a post-award breach of contract action by CPN seeking to recover the $65,521 in funding that the Department had unilaterally removed post-award from CPN's 2003 AFA funding pursuant to Factor 3 of the Funding Formula. In the <u>CPN</u> Decision, the IBCA held that the Department's post-award withdrawal of the $65,521 in funds from CPN's 2003 AFA was a breach of contract and that the Department was required to restore those funds to CPN. In its Motion, at pages 19-20, the Department asserts that "the IBCA could hear the CPN's challenge to DOI's withholding of the $65,521 because the issue concerned breach of contract based on removing funds already promised (post-award) not a pre-award dispute concerning the applicability of <u>Collier</u> to factor 3." This very same assertion can be made about the <u>Absentee Shawnee</u> Decision involving the exact same type of breach of contract action by the Absentee Shawnee challenging the Department's post-award removal of $65,521

19

in funds previously promised to the Absentee Shawnee's in their 2000 and 2001 AFAs. Defendant cannot have it both ways and this Court should reject Defendant's arguments as inconsistent and legally erroneous.

Defendant also makes another legally erroneous assertion in its Motion in support of the IBIA's collateral estoppel holding.  Defendant erroneously asserts that "CPN had an opportunity to seek judicial review of the IBCA's determination in <u>Absentee Shawnee Appeals</u> but it failed to do so and thus collateral estoppel precludes relitigation of this determination."  Defendant's Motion, at page 18.  CPN had no such opportunity or legal right to seek any judicial review of the <u>Absentee Shawnee</u> Decision.  It is undisputed that CPN was only a permissive intervenor for the final two months of the appeal resulting in the <u>Absentee Shawnee</u> Decision.  <u>See</u> Defendant's Statement of Material Facts Not In Dispute, at ¶ 37.  As such, CPN had no legal right to seek judicial review of the <u>Absentee Shawnee</u> Decision.  Any judicial review of the <u>Absentee Shawnee</u> Decision is governed by the judicial review provision of the Contract Disputes Act, 41 U.S.C. § 607(g), which states that a decision of an agency board of contract appeals, such as the <u>Absentee Shawnee</u> Decision issued by the IBCA, is final except that (A) "a contractor may appeal such a decision to the United States Court of Appeals for the Federal Circuit" within 120-days after receipt of the decision; or (B) "the agency head, if he determines that an appeal should be taken, and with the prior approval of the Attorney General, transmits the decision" to the Court of Appeals for the Federal Circuit within 120-days from receipt of the decision.  In connection with the <u>Absentee Shawnee</u> Decision, the Absentee Shawnee tribe was the contractor and the Secretary of the Department of Interior was the agency head within the meaning of the judicial review provisions of 41 U.S.C. § 607(g).  CPN

was neither and had no legal right to seek any judicial review of the <u>Absentee Shawnee</u> Decision.

For all these reasons, this Court should reject the Department's arguments in support of the collateral estoppel holding of the IBIA Decision.

**IV.    Defendant's Arguments In Support of the IBIA Decision's Alternative Holding on CPN's Claim Under Factor 3 of the Funding Formula Do Not Overcome the Failure of the IBIA Decision to Adequately Address or Explain the Impact of the <u>Collier Decision and Other Contradictory Evidence In the Record</u>**

Defendant makes two general arguments in support of the IBIA's alternative holding regarding CPN's claim under Factor 3 of the Funding Formula. Defendant argues (1) the administrative record supports the IBIA's alternative holding; and (2) legal precedent supports the IBIA's alternative holding. Here again, Defendant attempts to provide what is missing from the IBIA Deicision – an explanation of the IBIA's alternative summary conclusion that the <u>Collier</u> Decision had no impact on how funding is to be distributed under Factor 3 of the Funding Formula agreement.

In its alternative holding, the IBIA Decision summarily concluded, with no explanation, analysis, or citation to the administrative record, that the <u>Collier</u> Decision had no impact upon how funds are to be distributed to CPN under Factor 3 of the Funding Formula agreement. <u>See</u> Plaintiff's Exhibit A – AR at Tab 66 – IBIA Decision, at page 171. Defendant does not dispute that the IBIA Decision failed to provide a reasoned explanation of or cite to any support in the administrative record for its alternative holding that the <u>Collier</u> Decision had no impact on Factor 3. Rather, Defendant attempts to provide that which is lacking in the IBIA Decision. Such attempt should be rejected by this Court. CPN should be entitled to due process before the IBIA

and this Court should require that the IBIA Decision fully support and explain any conclusion reached in that decision based on a reasoned analysis of all the evidence contained in the administrative record. The IBIA Decision failed to do that and the matter should be remanded back to the IBIA for further proceedings.

Even under the limited scope of review of the APA, a Court is required to intervene to ensure that an agency has examined all the relevant evidence in the administrative record and articulated a reasoned explanation for its conclusions and actions. Where the final agency action, such as the IBIA Decision at issue here, has failed to provide that reasoned explanation and the evidence in the record belies the conclusions reached, the Court must undo the agency action. See Petroleum Communications, supra, 22 F.3d at 1172; Ransom, supra, 69 F.Supp.2d at 149. Accordingly, since the undisputed material facts establish that the IBIA Decision failed to address or examine all the relevant evidence in the administrative record with respect to its alternative holding on Factor 3 and failed to provide or articulate any explanation, much less a reasoned explanation, for that alternative holding, this Court should find that such alternative holding must be overturned and remanded for further consideration by the IBIA.

Defendant's attempt to provide the missing analysis or support in the administrative record for the IBIA's alternative holding regarding Factor 3 is misplaced and not persuasive. Aside from citing the language of the IBIA Decision itself, Defendant attempts to establish undisputed facts by relying primarily upon legal arguments made in (1) a May 16, 1999 letter from an attorney for the Absentee Shawnee tribe to the Department (Defendant's AR at 367-375); (2) an October 19, 1999 letter from

an attorney for the Absentee Shawnee tribe to the Department (Defendant's AR at 375-381); (3) a February 5, 2001 claim letter submitted by the Absentee Shawnee tribe to the Department (Defendant's AR at 277-282); (4) an April 25, 2001 appeal letter sent by an attorney for the Absentee Shawnee tribe to the Interior Board of Contract Appeals (Defendant's AR at 248-252); and (5) a July 19, 2001 letter from an attorney for the Absentee Shawnee tribe to an attorney for the Department (Defendant's AR at 205-213). Defendant takes this approach throughout this portion of its Motion.  See Defendant's Motion, at pages 20-30.  Those documents do not establish any undisputed facts at all, not to mention any undisputed facts with respect to the meaning of Factor 3 of the Funding Formula agreement.  Rather, those documents relied upon by Defendant contain nothing more than legal arguments made by the Absentee Shawnee tribe in attempt to convince the Department of the Absentee Shawnee's position that "service area" is not the same as "territorial jurisdiction" for purposes of Factor 3.  Defendant all but concedes that none of the assertions cited to in its Motion based on those documents establish any undisputed facts because Defendant does not include any of those assertions in its Statement of Material Facts Not In Dispute.  Moreover, there is no indication at all in the IBIA Decision that the IBIA actually considered these legal arguments to be supportive of its alternative holding regarding Factor 3.

Defendant does not address at all the contradictory evidence contained in the administrative record that was also ignored and not addressed in the IBIA Decision. Namely, (1) the April 15, 1999 letter sent by the BIA Director, Office of Self-Governance along with an enclosed position paper to the Governor of the Absentee Shawnee tribe; and (2) the November 15, 1999 letter from the Department's Assistant

Secretary-Indian Affairs to an attorney for the Absentee Shawnee tribe. <u>See</u> Plaintiff's Exhibit A – AR at Tabs 40 and 44. Both of these documents were written by and issued by the Department itself and both documents state unequivocally that, in Factor 3 of the Funding Formula agreement, the service area designations were made with specific and exclusive reference to territorial jurisdiction and that, in connection with the five Shawnee Agency tribes, a tribe's former reservation boundaries were taken into account to define service area for purposes of defining territorial jurisdiction. <u>Id.</u>

Defendant's attempt to provide the analysis and explanation of the <u>Collier</u> Decision that is missing from the IBIA Decision's alternative holding regarding Factor 3 is also misplaced and not persuasive. Defendant mischaracterizes CPN's assertions regarding the holding of the <u>Collier</u> Decision. Contrary to Defendant's assertion, on page 25 of its Motion, CPN does not contend that the <u>Collier</u> Decision determined "that the former reservation area was the same as the service area." CPN makes no such contention. What CPN does contend, and what is not and cannot be disputed by Defendant, is that the <u>Collier</u> Decision conclusively and finally held that the CPN have "the exclusive use and occupancy of its former reservation" (<u>Collier</u>, <u>supra</u>, 142 F.3d at 1334). The fact that this holding was made in the context of a dispute over trust acquisitions under 25 C.F.R. § 151.8 is of no relevance. The issue of CPN's exclusive right to the use and occupancy of its former reservation was actually and necessarily determined by a court of competent jurisdiction in the <u>Collier</u> Decision and the Department, as the defendant in that action, was an active and full party to that litigation. The Department is collaterally estopped from relitigating that issue in any case, whether that case involves trust acquisitions under 25 C.F.R. § 151.8 or a pre-award dispute over

funding under an AFA filed under the ISDA, such as the action at issue here.  See, e.g.,
Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).

In addition, Defendant incorrectly argues that this holding in the Collier Decision
has no effect on how funding is to be allocated under Factor 3 of the Funding Formula
agreement.  Defendant, like the IBIA Decision, completely ignores the evidence in the
administrative record indicating that, for purposes of Factor 3, service area designations
were made with specific and exclusive reference to territorial jurisdiction and that, in
connection with the five Shawnee Agency tribes, a tribe's former reservation boundaries
were taken into account to define service area for purposes of defining territorial
jurisdiction.

Defendant's reliance upon Douglas Indian Association v. Juneau Area Director,
30 IBIA 48 (Oct. 16, 1996) is equally misplaced.  In Douglas Indian Association, the
IBIA addressed an action in which the appellant tribe challenged the Department's
determination of its service area.  There was no funding formula agreement at issue in
that case, as there is in this case, that circumscribed the Department's ability to define the
tribe's service area.  The Douglas Indian Association decision is not relevant to the issues
in this action.  Unlike the circumstances at issue here, the Department in Douglas Indian
Association was free to exercise its discretion in determining the appropriate service area
without being constrained by any previously issued tribal resolutions comprising a
funding formula agreement.  Accordingly, Defendant's reliance upon Douglas Indian
Association is misplaced since that decision is of no relevance to this action.

Finally, Defendant's reliance upon the statutory prohibition against reduction in
funding in Section 106 of Title I of the ISDA at 25 U.S.C. §§ 450j-1(a)(1) and 450j-

1(b)(2) is equally without merit.  The IBIA Decision itself does not cite to or rely upon these statutory provisions in support of its alternative holding on Factor 3 and Defendant cannot be allowed in this action to support the IBIA Decision on the basis of these statutory provisions.

To the extent that Defendant is arguing that the amount of funding to be distributed to the Absentee Shawnee tribe cannot ever be altered from year to year based on current data applied to the factors specified in the Funding Formula, such an argument is without any merit and not relevant to the issues raised by CPN in this current action since CPN does not ask this Court to address the merits of whether or not such adjustment in funding is required.  Moreover, pursuant to Section 106(b)(2) of Title I of the ISDA, 25 U.S.C. § 450j-1(b)(2), the amount of funds to be provided by the Department to a tribe may not be reduced in subsequent years except based on several specific exceptions – one of which is pursuant to a "tribal authorization."  It cannot be disputed that the five tribal resolutions issued by each of the Shawnee Agency tribes in 1988 that comprise the Funding Formula agreement are "tribal authorizations" within the meaning of 25 U.S.C. § 450j-1(b)(2).  While Section 106 of Title I of the ISDA is not one of the Title I statutory provisions that automatically applies to Compacts and AFAs entered into under the Tribal Self-Governance Program provisions of Title IV of the ISDA (see 25 U.S.C. § 458ff(c)), tribes participating in agreements (i.e. Compacts and AFAs) entered into under Title IV of the ISDA have the option, pursuant to 403(l) of Title IV of the ISDA (25 U.S.C. § 458cc(l)), of including any or all of the statutory provisions of Title I of the ISDA into those agreements.  Here, it is undisputed that both CPN's and the Absentee Shawnee tribes' Compacts that were entered into under Title IV

of the ISDA incorporate Section 106(b) of Title I of the ISDA (25 U.S.C. § 450j-1) into those agreements and make Section 106(b) a part of those agreements. See Defendant's AR at 00544 (CPN's Compact at Section 15 stating that the "Tribe is assured future funding of successor Annual Funding Agreements which shall only be reduced pursuant to the provisions of Section 106(b) of Pub.L. 93-368, as amended"); and Defendant's AR at 00583 (Absentee Shawnee's Compact at Section 3 "Funding Amount" stating that "[s]ubject only to the appropriations of funds by Congress and to adjustments pursuant to Section 106(b) of Pub.L. 100-472, the Secretary or his authorized representative shall provide to the Tribe the total amount specified in the Annual Agreement incorporated by reference to Title VI, Section 2.")   Therefore, there is no basis for the Department to argue that there is an absolute prohibition against any adjustments (either decreases or increases) in funding to be provided to the Absentee Shawnee tribe.

Moreover, Defendant's arguments based on these statutory provisions are not rational.  Defendant contends that these statutory provisions prohibit the Department from reducing funding by $65,521 under Factor 3 for the Absentee Shawnee tribe but somehow allow the Department to do that very thing to the CPN – reduce funds to the CPN under Factor 3 by $65,521.  Defendant argues that such reduction to the CPN "is merely correctly applying the 'terms of the self-determination contract' and thus, it is providing the funds required under 25 U.S.C. 450j-1(a)(1) instead of reducing funds." Defendant's Motion, at pages 28-29.  It is undisputed that the Department was required to provide the $65,521 in funds to CPN under Factor 3 in connection with CPN's AFA for Fiscal Year 2003.  See Plaintiff's Exhibit E – Appeal of Citizen Potawatomi Nation of Oklahoma, IBCA No. 4522/04, 35 IBCA 207, 05-1 BCA ¶ 32,919 (March 22, 2005) (the

"CPN Decision").  But yet, Defendant contends that the Department is free to remove the same $65,521 in funds under Factor 3 from CPN for Fiscal Year 2004 while at the same time be prohibited from taking similar action with respect to the Absentee Shawnee tribe. Defendant cannot have it both ways and its novel legal theory is not rational and should be rejected.

Defendant's argument does appear to constitute an admission that the tribal resolutions comprising the Funding Formula agreement constitute "tribal authorizations" within the meaning of the "tribal authorization" exception to the prohibition against funding reduction set forth in 25 U.S.C. § 450j-1(b)(2)(C) and, on that basis, the Department is permitted to reduce CPN's 2004 AFA under Factor 3 by $65,521 because, as Defendant contends, the terms of Factor 3 require it.  Such an argument constitutes an admission by Defendant that the five tribal resolutions comprising the Funding Formula agreement at issue here, including Factor 3 of that Funding Formula, constitute "tribal authorizations" within the meaning of  25 U.S.C. § 450j-1(b)(2)(C).  However, Defendant's argument erroneously presupposes the fact that CPN and the Absentee Shawnee tribe must still be viewed as sharing a "jurisdictional area" within the meaning of Factor 3 even after issuance of the Collier Decision.   There is no support in the administrative record for such a conclusion.  In fact, as set out herein and in Plaintiff's Motion, the evidence contained in the administrative record establishes the opposite -- that in light of the holding of the Collier Decision, CPN and the Absentee Shawnee tribe can no longer be considered to share a "jurisdictional area" for purposes of Factor 3 of the Funding Formula agreement.

In any event, the IBIA Decision did not address or analyze in any way the effect of this statutory provision in connection with its alternative holding of the Factor 3 issue. Nor did the IBIA Decision offer any explanation or other support for its summary conclusion that the <u>Collier</u> Decision did not require any adjustment in the level of funding provided to CPN under Factor 3 of the Funding Formula agreement. CPN should be entitled to due process before the IBIA. This Court should require that the IBIA Decision fully support and explain, based on evidence in the administrative record, its alternative conclusion regarding the purported lack of impact of the <u>Collier</u> Decision on Factor 3 of the Funding Formula agreement. The IBIA Decision failed to do that and the matter should be remanded back to the IBIA for further proceedings in order to require the IBIA to do so.

For all these reasons, this Court should reject the Department's arguments in support of the alternative holding of the IBIA Decision with respect to the Factor 3 funding issue.

**V.    Contrary to Defendant's Assertions, Dismissal Is Not Required Because the Absent Parties Are Not Necessary Since This Action Seeks Only To Have This Court Find That the Challenged IBIA Decision Is Not Sustainable On the Existing Administrative Record and That the Matter Should Be Remanded Back to the IBIA In Order to Provide CPN <u>With the Due Process To Which It is Entitled to From the IBIA</u>**

Defendant mischaracterizes the nature of CPN's present action in this Court and erroneously argues that it is "virtually indistinguishable from" <u>Citizen Potawatomi Nation v. Norton</u>, 248 F.3d 993, <u>modified on rehearing</u>, 275 F.3d 1158 (10th Cir. 2001) (the "<u>Norton</u> Decision"). <u>See</u> Defendant's Motion, page 38. Defendant further argues incorrectly that any remand back to the IBIA in this action "would be premised on a

holding that the IBIA made a substantive mistake regarding the factors in the Funding Formula."  See Defendant's Motion, at page 39.  Defendant is wrong.

In this action, CPN asks this Court to find that the IBIA Decision is not sustainable on the basis of the existing administrative record because it is based upon material procedural defects in that the Decision fails to address material evidence in the administrative record, assumes evidence not contained in the administrative record, and otherwise fails to provide an adequate basis for the conclusions reached.  CPN does not ask this Court to resolve any of the underlying merits of the issues raised by CPN in its pre-award appeal before the IBIA that resulted in the IBIA Decision or to otherwise making any substantive holdings adjudicating the merits of those underlying issues that would be binding on the IBIA.  The remedy requested by CPN in this action is for this Court to order remand back to the IBIA for further proceedings in order to provide a proper basis in the administrative record to resolve the merits of the issues raised by CPN in its pre-award appeal at the IBIA.  Such a remedy will provide meaningful relief to CPN and will do so without the necessity of any absent party since it will provide  for correction of the material procedural defects associated with the IBIA Decision at issue here without making any substantive holdings on the underlying merits to be addressed by the IBIA.

Contrary to Defendant's assertions, the instant action by CPN in this Court is materially different from the action addressed in the Norton Decision.   As Defendant itself admits, CPN's action that resulted in the Norton Decision was an original action filed in United States District Court for the Western District of Oklahoma directly challenging the Department's determinations to (a) use 1988 data for purposes of

applying the Funding Formula in Fiscal Year 1999 and future years and (b) to apply such Funding Formula under Factor 3 based on a determination that CPN shared its jurisdictional area with the Absentee Shawnee tribe.  See Defendant's Statement of Material Facts Not In Dispute, at ¶ 13; Defendant's Motion, at pages 31-32.  In the resulting Norton Decision, the 10th Circuit Court of Appeals dismissed CPN's action without resolving the merits on the grounds that the four other Shawnee Agency tribes were indispensable parties to the action and that joinder was not feasible.

Defendant erroneously argues that the instant action by CPN in this Court involves "the same issues (the use of the 1988 statistics in the funding formula and territorial jurisdiction (as defined in the 1988 funding agreement)), the same parties (the DOI and the CPN), and the same absent parties (AST and the other tribes of the Shawnee Agency). . ."  Defendant's Motion, at page 38.  However, Defendant's argument overlooks and omits some material key facts that make all the difference: (1) that the IBIA is now available to hear and resolve pre-award disputes concerning AFA's under the ISDA without the constraints of joinder of indispensable parties; and (2) that the instant action by CPN in this Court seeks review of the IBIA Decision on procedural grounds and does not seek resolution in this Court of the merits of the underlying determinations made by the Department.

Defendant admits that it was not until January 1, 2001 that the regulations implementing the Tribal Self-Governance Program provisions of the ISDA first became effective.  See Defendant's Statement of Material Facts Not In Dispute, at ¶ 15.  It was not until January 1, 2001 when those regulations first became effective that a tribe, such as CPN, was provided with a right to appeal pre-award disputes that arise prior to

execution of an AFA under the ISDA directly to the IBIA.  Id.  See also Federal Register, 65 Fed. Reg. 68,688 (Dec. 15, 2000); 25 C.F.R. § 1000.432(b)(2).

The pre-award dispute concerning CPN's Fiscal Year 2004 AFA that is the subject of the IBIA Decision at issue in this action was filed by CPN under 25 C.F.R. § 1000.432(b)(2).  Under the provisions of the ISDA at 25 U.S.C. § 450m-1(a), CPN has the right to seek review in this Court of the IBIA Decision, which is considered final agency action.  Remand from a federal court back to the IBIA is also specifically provided for in the Department's regulations governing the IBIA appeal process at 43 C.F.R. § 4.316.

In this action in this Court, CPN seeks review of the IBIA Decision on the grounds of the material procedural defects associated with that Decision and seeks remand back to the IBIA for further proceedings in order to correct those procedural defects.  In contrast to the action that resulted in the Norton Decision, CPN does not directly challenge in this Court the underlying determinations made by the Department and CPN does not ask this Court to resolve the merits of those determinations.

CPN relies upon Feezor v. Babbit, 953 F.Supp. 1 (D.D.C. 1996) and Ransom v. Babbit, 69 F.Supp.2d 141 (D.D.C. 1999) as examples of other cases involving district court review of an IBIA decision in which the court was able to afford some review of the IBIA decision at issue, even where the underlying issues addressed by the IBIA decision may have involved issues that otherwise would have required joinder of an indispensable party.  CPN's citation to those two cases was for the purpose of illustrating the point that a district court can adequately shape the remedy granted in such situations,

including remand back to the IBIA, so as to avoid prejudice to any absent parties such that they are not necessary or indispendsable for a just adjudication of the action.

The fact that the IBIA is able to adjudicate the merits of the Department's determinations that were raised by CPN before the IBIA without regard to the joinder of any alleged indispensable parties does not present a complete bar to this Court's ability to review the IBIA Decision at issue here for material procedural defects and to order remand back to the IBIA in order to correct those material procedural defects.

Contrary to Defendant's contention, CPN does not ask this Court to find that, as a matter of law, remand back to the IBIA precludes consideration by this Court of any indispensable party issues.  See Defendant's Motion, at page 39.  Instead, CPN asks this Court to make a pragmatic decision based on practical considerations given the context of this particular litigation in order to determine that any absent parties are not necessary nor indispensable to a just adjudication of this action.  Indeed, the very cases from this Circuit relied upon by the Defendant in its Motion stands for this same proposition. Defendant cites to Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt, 43 F.3d 1491 (D.C. Cir. 1995) and Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765 (D.C. Cir. 1986).  See Defendant's Motion, at pages 39-41.  As the U.S. Court of Appeals for the District of Columbia noted in Kickapoo Tribe:

> . . . whether a party is indispensable for a just adjudication requires a determination regarding whether the absent party is necessary to the litigation; if so, whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the lawsuit can nevertheless proceed 'in equity and good conscience.'  Fed.R.Civ.P. 19; [footnote omitted] *see Western Md. Ry. Co. v. Harbor Inc. Co.*, 910 F.2d 960, 961 (D.C.Cir. 1990).  The rule calls for a pragmatic decision based on practical considerations in the context of particular litigation. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116-7 n. 12, 118, 88 S.Ct 733, 741-42 n. 12 742, 19 L.Ed.2d 936 (1968); Wright,

Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1601, at 10, 14 (1986). . . .

Kickapoo Tribe, supra, 43 F.3d at 1494-1495. As the Court in Kickapoo Tribe points out, Rule 19 requires a practical and fact-specific inquiry. The Court also noted in Wichita and Affiliated Tribes that relief can be shaped in a case so as to avoid prejudice to any absent parties (including Indian tribes with sovereign immunity), especially where remand is for reevaluation in light of material procedural defects, such as here. Wichita and Affiliated Tribes, supra, 788 F.2d at 776.

The Department bears the burden of persuasion on the indispensable party issue. See Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990); Ilan-Gai Engineers, Ltd. v. Antigua Intern. Bank, 659 F.2d 234, 242 (D.C. Cir. 1981); Sierra Club v. Watt, 608 F.Supp. 305 , 320-321 (E.D. Cal. 1985). In its Motion, the Department fails to establish any specific factual predicates in the context of this instant action upon which any finding of indispensability must necessarily depend. Defendant does little more than recite the facts of the Norton Decision, recite the holdings of some unrelated cases, and summarily conclude with no explanation that "[i]n the instant case, a remand to IBIA would also be in effect 'relief beyond remand to IBIA' because it would be premised on a holding that the IBIA made a substantive mistake regarding the factors in the Funding Formula." Defendant's Motion, at page 39. But Defendant offers no specific factual assertions in the context of this action explaining exactly how the remand requested by CPN in this action would in fact constitute a holding that the IBIA made a substantive mistake regarding the factors in the Funding Formula. That is because no such holding by this Court is required that would bind the IBIA on remand with respect to any

substantive determination of the underlying merits regarding the Department's

challenged actions associated with the factors in the Funding Formula.

Aside from the failure to provide a factual predicate, Defendant's argument falls

on legal grounds as well.

Unlike the litigation circumstances addressed in the <u>Norton</u> Decision, the other

four Shawnee Agency tribes should not be viewed as "necessary" parties within the

meaning of Rule 19(a) of the Federal Rules of Civil Procedure with respect to this instant

action.  As the Court in <u>Ramah Navajo</u> noted:

> Rule 19(a) of the Federal Rules of Civil Procedure describes an absent
> party as "necessary" if that party "claims an interest relating to the subject
> of the action and is so situated that the disposition of the action in the
> [party's] absence may . . . as a practical matter impair or impede the
> [party's] ability to protect that interest."  Fed.R.Civ.P. 19(a).  If the court
> determines that a party is necessary under Rule 19(a), it must then balance
> the equitable factors listed in Rule 19(b) to determine if that party is
> "indispensable."

<u>Ramah Navajo</u>, <u>supra</u>, 87 F.3d at 1350-1351.  As the Court indicated, in order to be

necessary, a party must show prejudice to a legally protected interest in the subject matter

of the action at issue.  In this regard, Rule 19(a) provides that a party is "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among
> those already parties; (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the action in
> the person's absence may (i) as a practical matter impair or impede the
> person's ability to protect that interest or (ii) leave any of the persons
> already parties subject to a substantial risk of incurring double, multiple,
> or otherwise inconsistent obligations by reason of the claimed interest. . .

Rule 19(a) of the Federal Rule of Civil Procedure.

The subject matter of the instant action is limited to the material procedural

defects in the IBIA Decision, not the underlying determinations by the Department

regarding the factors in the Funding Formula that were at issue in the <u>Norton</u> Decision.

Here, the absent Shawnee Agency tribes have no legally protected interest in the outcome of the challenged material procedural defects in the IBIA Decision.  Complete relief based on the requested remand back to the IBIA can be accorded among the existing parties – CPN and the Department.  No interest of the other four Shawnee Agency tribes will be impaired or impeded as a result of the requested remand back to the IBIA to correct the identified material procedural defects since no part of such a remand back to the IBIA needs to be or is required to be premised on a substantive holding by this Court on the underlying merits that would be binding on the IBIA regarding the factors in the Funding Formula agreement.  Nor will the requested remand back to the IBIA expose the Department to any substantial risk of incurring multiple or inconsistent obligations since the remand back to the IBIA will not, in and of, itself bind the Department or otherwise constrain the Department with respect to its application of the factors of the Funding Formula agreement.

 As set forth in Count I of its Complaint and as explained in Plaintiff's Motion, CPN contends that the IBIA committed several material procedural errors in connection with its conclusions that (a) the tribal resolutions comprising the Funding Formula agreement are ambiguous; and (b) it was reasonable for the Department to utilize the same, static data from 1988 for the past 18 years for purposes of distributing funding to the Shawnee Agency tribes, including CPN.  In connection with these allegations in Count I, CPN asks this Court to find that the IBIA committed the following material procedural errors with respect to its ambiguity holding and its holding that the Department's actions were reasonable in light of that ambiguity:

(1) failed to address or otherwise explain in any manner the meaning or materiality of the following language from the tribal resolutions comprising the Funding Formula agreement stating that: (a) each tribes agrees "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years" pursuant to the provisions set forth in the tribal resolutions, including the specified formulas for funding distribution; and (b) each tribe "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency";

(2) failed to address or otherwise explain the effect, if any, on the meaning of the Funding Formula agreement of the statutory and regulatory provisions governing the Tribal Self-Governance Program of Title IV of the ISDA that require the Department to collect and report on an annual basis data indicating each tribes' tribal enrollment, resident tribal population and trust property;

(3) failed to address or otherwise explain the effect, if any, on the meaning of the Funding Formula agreement and on the reasonableness of the Department's actions of the Department's regulation at 25 C.F.R. § 1000.98(a)(1) requiring that any formula-driven distribution formula be reasonably related to the function or service performed by an office; and,

(4) assumed evidence not contained anywhere in the administrative record with respect to its material factual finding that, prior to 1998, CPN knew of and acquiesced in the Department's static application of the same data from 1988 in applying the Funding Formula agreement.

To remedy these material procedural errors with respect to Count I of CPN's Complaint, this Court could shape the following remedy to order that the matter be remanded back to the IBIA in accordance with the following instructions:

(1)  further develop the administrative record to determining the meaning of the following language from the tribal resolutions comprising the Funding Formula agreement stating that each tribe agrees "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years" pursuant to the provisions set forth in the tribal resolutions, including the specified formulas for funding distribution;

(2)  further develop the administrative record to determine the meaning of the following language from the tribal resolutions comprising the Funding Formula agreement stating that each tribe "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency," including determination of the impact, if any, of the regulation at 25 C.F.R. § 1000.98 (which requires that any formula-driven distribution formula reasonably relate to the function or service performed) based on consideration of current data available to the Department of tribal enrollment, tribal resident population and trust acreage;

(3)  if, after such further development of the administrative record, the IBIA determines that the agreement is still viewed as ambiguous, the administrative record should be further developed to determine the intent of the parties based on extrinsic evidence, including CPN's knowledge of and actions prior to

1998 with respect to the Department's static application of the factors specified in that agreement.

As set forth in Count II of its Complaint and explained in Plaintiff's Motion, CPN contends that the IBIA committed a material procedural error in holding that CPN was collaterally estopped from litigating its entitlement to at least $65,521 in funds pursuant to Factor 3 of the Funding Formula agreement. In connection with Count II, CPN asks this Court to find that the IBIA's collateral estoppel holding was erroneous and should be overturned. To remedy this material procedural error with respect to Count II, this Court could issue a remand order requiring the IBIA to allow CPN to fully adjudicate this issue before the IBIA.

As set forth in Count III of its Complaint and as explained in Plaintiff's Motion, CPN contends that the IBIA committed material procedural errors in connection with its alternative holding that CPN was, nevertheless, not entitled to the $65,521 in funds under Factor 3 of the Funding Formula. In connection with this allegation, CPN asks this Court to find that the IBIA committed the following material procedural errors with respect to its alternative holding:

(1) failed to explain or support with any citation to the administrative record its summary conclusion that the holding of the <u>Collier</u> Decision has no impact on how funds are to be distributed to CPN under Factor 3 of the Funding Formula agreement; and,

(2) failed to address in any manner or otherwise explain other evidence in the administrative record indicating that, for purposes of Factor 3, service area designations were made with specific and exclusive reference to territorial

jurisdiction and that a tribe's former reservation boundaries were taken into account to define territorial jurisdiction.

To remedy these material procedural errors with respect to Count III of CPN's Complaint, this Court could shape a remedy to order that the matter be remanded back to the IBIA in accordance with the following instructions:

(1)  further consider and/or develop the administrative record to fully address and explain the effect, if any, of the holding of the <u>Collier</u> Decision on Factor 3 of the Funding Formula agreement; and,

(2)  if, after such further consideration and/or development of the administrative record, the IBIA determines that the effect of the <u>Collier</u> Decision is that CPN's territorial jurisdiction for purposes of Factor 3 of the Funding Formula agreement is defined by its former reservation boundaries, further develop the administrative record with respect to how funds are to be apportioned to CPN under Factor 3 based on that determination.

Nothing in any of these requested findings to be made by this Court or in the requested remand to be ordered by this Court requires any holding that the IBIA made a substantive mistake with respect to the merits of any of the underlying issues or otherwise binds the IBIA as to the ultimate adjudication of any of the merits of the underlying issues.  At the same time, these requested findings and requested remedy do provide meaningful relief to CPN in that such findings and associated remedy will ensure that CPN is accorded the due process to which it is entitled to before the IBIA.

Accordingly, for all these reasons and for the reasons previously articulated by CPN in its prior filings, this Court should find that the absent Shawnee Agency tribes are

not necessary to a just adjudication of this action and that Defendant's request for dismissal for an alleged failure to join necessary and indispensable parties should be denied.

## **CONCLUSION**

For all these reasons, CPN respectfully requests that this Court deny Defendant's Motion and grant Plaintiff's Motion and grant CPN the following relief:

1. Declare that the IBIA Decision is erroneous for the reasons stated herein;

2. Enjoin the Department from implementing the IBIA Decision as final agency action;

3. Remand this matter back to the IBIA for further proceedings as requested herein; and,

4. Grant all other relief that this Court deems just and appropriate.

Respectfully submitted,

CITIZEN POTAWATOMI NATION

By: ___/s/ James D. Bachman___
James D. Bachman
D.C. Bar No. 332650

Ron R. Hutchinson
D.C. Bar No. 428039

Doyle & Bachman, LLP
4350 N. Fairfax Drive, Suite 420
Arlington, Virginia  22203
(703) 465-5440
Fax:  (703) 465-5593

Dated:  February 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2007, I caused to be delivered the

following by first class mail postage prepaid a copy of Plaintiff's Oppositon to

Defendant's Motion for Summary Judgment:

> Jeffrey A. Taylor, U.S. Attorney
> Rudolph Contreras, Assistant U.S. Attorney
> John F. Henault, Assistant U.S. Attorney
> U.S. Department of Justice
> 555 4th Street, N.W.
> Washington, D.C.  20530

> /s/ James D. Bachman
> James D. Bachman