**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **CITIZEN POTAWATOMI NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case** |
| | ) | **Number: 1:06CV00830** |
| **DIRK KEMPTHORNE, et al.,** | ) | |
| | ) | **Judge Gladys Kessler** |
| **Defendants.** | ) | |

_____

## PLAINTIFF'S REPLY BRIEF

Citizen Potawatomi Nation ("CPN", or "Plaintiff"), by its undersigned attorneys, hereby submits this Reply Brief in support of its Motion for Summary Judgment.

## INTRODUCTION

The undisputed material facts establish that the IBIA Decision at issue here is not sustainable on the basis of the existing administrative record because it is based upon material procedural defects that render the decision erroneous as a matter of law and otherwise arbitrary and capricious.

There is no reasoned or rational support in the existing administrative record for the IBIA Decision's conclusion that (a) the tribal resolutions comprising the Funding Formula agreement are ambiguous; and (b) it was reasonable for the Department to utilize the same data from 1988 for the past 18 years for purposes of distributing funding to the tribes, including funds to be distributed to CPN for Fiscal Year 2004. These conclusions reached by the IBIA failed to address or otherwise explain in any manner the meaning of and materiality of the following language from tribal resolutions that comprise the Funding Formula agreement stating that: (a) "to contract for all Bureau of

Indian Affairs provided operation and services in FY 89 and future years" and (b) "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."   In its motion and its opposition to Plaintiff's motion, Defendant does not dispute that this language from the tribal resolutions is material.  Instead, Defendant attempts to provide that which is missing from the IBIA Decision by offering up an interpretation and explanation of this material language.  This Court should reject Defendant's post-hoc rationalizations and should require that this matter be remanded back to the IBIA in order to require that the final decision issued by the IBIA fully address this material language from the tribal resolutions and reasonably and rationally assess its impact on the meaning of the Funding Formula agreement.

Nor is there any factual basis in the existing administrative record supporting the IBIA Decision's factual conclusion that, prior to 1998, CPN knew of and acquiesced in the Department's static application of outdated data from 1988 in distributing funding to CPN.  This factual conclusion reached by the IBIA erroneously assumed evidence not contained anywhere in the administrative record.  Nowhere in its motion or in its opposition to Plaintiff's motion does Defendant cite to any evidence in the administrative record establishing that CPN knew of or acquiesced in the Department's actions prior to 1998.  Rather, Defendant simply points to the lack of such evidence and erroneously attempts to shift the burden to Plaintiff to establish that it either lacked knowledge of the Department's application of the Formula prior to 1998 or did not have an opportunity to object prior to 1998.   The burden of establishing these facts is on the Defendant since the IBIA Decision reached the factual conclusion that CPN knew of and acquiesced in the

Department's static application of the Funding Formula prior to 1998. This factual

conclusion was central to the IBIA Decision's interpretation of the Funding Formula

agreement. The lack of any evidence in the administrative record supporting this factual

conclusion is fatal to the IBIA Decision.

The undisputed material facts also establish that the IBIA Decision was wrong as

a matter of law to conclude that, as a result of the holding in Appeals of Absentee

Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA ¶ 52 (2002) (the

"Absentee Shawnee Decision"), CPN is collaterally estopped from litigating its

entitlement to at least $65,521 in funding under Factor 3 of the Funding Formula in this

action. The issues in this action are not the same as were resolved in the Absentee

Shawnee Decision. Nor was the issue of CPN's entitlement to $65,521 in funding under

Factor 3 of the Funding Formula agreement actually or necessarily determined in the

Absentee Shawnee Decision. Finally, it would be fundamentally unfair to apply issue

preclusion against CPN in this action based on the Absentee Shawnee Decision because

CPN had no right to appeal the Absentee Shawnee Decision to any forum.

Further, the undisputed material facts establish that the IBIA Decision failed to

articulate any reasoned or rational support for its alternative holding that, even if CPN is

not collaterally estopped, it is nevertheless not entitled to the $65,521 in funding under

Factor 3. Here again, Defendant attempts to provide that which is missing from the IBIA

Decision by offering up a post-hoc rationale explaining this alternative holding in the

IBIA Decision. This Court should reject Defendant's post-hoc rationalizations and

should require that this matter be remanded back to the IBIA in order to require that the

final decision issued by the IBIA fully address and explain its holding that the decision in

<u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, 142 F.3d 1325 (10th Cir. 1998) (the "<u>Collier</u> Decision") had no impact on how funds are to be allocated to CPN under Factor 3 of the Funding Formula agreement.

The remedy requested by CPN in this action is for this Court to order remand back to the IBIA for further proceedings in order to provide a proper basis to resolve the merits of the issues raised by CPN in its pre-award appeal at the IBIA.  Such a remedy will provide meaningful relief to CPN since it will provide for correction of the material procedural defects associated with the IBIA Decision and will do so without any substantive holdings on the underlying merits addressed by the IBIA.  In ordering this remedy, CPN asks this Court to make a pragmatic determination based on practical considerations given the specific context of this particular litigation in order to determine that any absent parties are neither necessary nor indispensable to a just adjudication of this action.

## **ARGUMENT**

### I.    **Defendant's Opposition Fails To Overcome the Undisputed Material Facts Establishing That the Ambiguity Holding Is Arbitrary, Capricious and Otherwise Erroneous**

In its Opposition to CPN's Motion, Defendant does not dispute the fact that the IBIA Decision ignored and otherwise failed to explain the meaning of the following language from the tribal resolutions that comprise the Funding Formula agreement stating that:  (1) the Funding Formula is to be applied "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years" and (2) "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted

by all five tribes of the Shawnee Agency." Nor does Defendant dispute that these provisions from the tribal resolutions are material and relevant to any interpretation of the Funding Formula agreement.

Rather, Defendant offers up its own post-hoc interpretations in an attempt to overcome the failure of the IBIA Decision to consider or otherwise explain the meaning of these material provisions from the tribal resolutions in reaching its conclusion that the Funding Formula agreement is ambiguous. Defendant's post-hoc rationalizations should be rejected by this Court since they are not reflected anywhere in the IBIA Decision itself and are not supported by the administrative record.

Defendant admits that the language stating that "for all Bureau of Indian Affairs provided operations and services in FY 89 and future years . . . indicates that the Funding Formula applies to FY 89 and all future years". Defendant's Opposition, at page 7. However, Defendant contends that the Funding Formula "could still apply to various years while remaining static" and that "[s]uch an interpretation would not render the factors meaningless but rather would have them serve as fixed reference points." Id. This assertion by Defendant is irrational. Factors 2, 3 and 4 specified in the Funding Formula agreement reflected in the tribal resolutions require application of data establishing, respectively, total tribal enrollment, resident tribal population within each tribe's jurisdictional area, and the amount of trust property within each tribe's jurisdictional area. Defendant's interpretation effectively replaces Factors 2, 3 and 4 with a fixed percentage of funding based on data that existed only in 1988. This renders Factors 2, 3 and 4 meaningless beyond Fiscal Year 1989 since they have no application beyond Fiscal Year 1989 under such an interpretation. In an attempt to overcome this

problem, Defendant asserts that these factors could still have meaning in future fiscal years since they "could serve as guidance in future negotiations for revisions of the funding agreement" because "the tribes would look to the current formula and make proposals for varying the percentages, defining the factors, or changing the factors." Defendant's Opposition, at page 8.  Defendant's argument still does not provide for application of Factors 2, 3 and 4 in any future fiscal years beyond Fiscal Year 1989 but renders Factors 2, 3 and 4 obsolete and to be used only as a starting point for possible, future negotiations among the five Shawnee Agency tribes.  This does not constitute application of Factors 2, 3 and 4 in any future fiscal year.  Defendant admits that such application is required but fails to provide any rational basis to explain how such application can be achieved utilizing only 18-year old data from 1988.

Defendant fails to offer any interpretation or explanation of the meaning of the provision of the tribal resolutions stating that each of the five tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."  Nor does Defendant offer any support for the IBIA's failure to address this material language in any manner in its Decision.

Rather, Defendant proceeds to interpret each of the Department's statutes and regulations referenced in CPN's pleadings and briefs in an attempt to provide the analysis that is missing from the IBIA Decision.  Defendant's assertion's regarding these statutory and regulator provisions miss the point of CPN's arguments.  CPN cites to and relies upon the statutory and regulatory provisions governing annual reporting obligations at 25 U.S.C. § 458ee and 25 C.F.R. § 1000.381 as well as the regulatory provision governing formula-driven distribution formulas at 25 C.F.R. § 1000.98.  CPN does not ask this

Court to conclude that the referenced statutory and regulatory provisions, on their face, require that the Department utilize current data in calculating funding to be distributed to the tribes. CPN asks this Court to find that these statutory and regulatory provisions should have been addressed and considered by the IBIA as part of an analysis of the meaning of the material language from the tribal resolutions stating that the tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."

In addition, Defendant's interpretation of these statutory and regulatory provisions is neither persuasive nor rational. Pursuant to the annual reporting obligations provided for in 25 U.S.C. § 458ee and 25 C.F.R. § 1000.381, it is undisputed that the Department currently collects on an annual basis, among other things, the very same data that is identified as Factors 2, 3 and 4 of the Funding Formula agreement at issue here – i.e. tribal enrollment, tribal resident population, and trust acreage. It is not rational for the Department to argue that the only purpose of its annual collection of this data is to collect it, report it to Congress and file it away. This is especially true, here, where the Department is under an obligation, pursuant to 25 C.F.R. § 1000.98, to ensure that any formula-driven distribution formula, such as the Funding Formula at issue here, reasonably relates to the function or service performed. Without any consideration of the current data collected annually by the Department, there is no rational basis to conclude that the funds distributed in any given fiscal year reasonably relates to the functions or services performed in that fiscal year by the tribes that receive those funds.

Rather than address and explain the meaning of these material provisions in the tribal resolutions, the IBIA Decision completely ignored them. This was a material

procedural error.  The IBIA Decision's holding of ambiguity cannot be sustained on this basis.  For this reason alone, this Court should find that CPN is entitled to have the ambiguity holding remanded back to the IBIA in order to require the IBIA to address these material provisions of the tribal resolutions and explain their impact on the meaning of the Funding Formula agreement.

Finally, Defendant misconstrues Plaintiff's additional assertion regarding the procedural error associated with the IBIA Decision's finding that "[n]or do we think it would have been unreasonable for the parties to intend that existing data be applied to the formula to establish a fixed allocation for future years."  CPN contends that there is no contemporaneous evidence, or any evidence at all, in the administrative record that could rationally support this finding.  As an example of this lack of evidence, CPN cited to four documents in the administrative record as the only documents that shed any light on the intended meaning of the Funding Formula agreement: (1) the five tribal resolutions; (2) the declaration submitted by CPN in its IBIA appeal; (2) a November 15, 1999 letter from the Interior Assistant Secretary-Indian Affairs; and (4) a letter dated April 15, 1999 from the Director, Office of Self-Governance, Bureau of Indian Affairs.

Of those four sets of documents, the only one that is contemporaneous with execution of the Funding Formula agreement in 1988 is the five tribal resolutions.  There are no other contemporaneous documents in the administrative record.  Defendant argues only that none of these documents contradict the finding of the IBIA.  Defendant does not argue that these documents, or any other evidence in the administrative record, actually support the IBIA's finding that the five Shawnee Agency tribes intended that data from 1988 be applied to establish a fixed allocation for distributing funding in all future years.

The only additional evidence cited to by Defendant in this regard is the Annual Funding Agreement ("AFA") executed by the Absentee Shawnee for Fiscal Year 2004 and the Interior Board of Contract Appeals decision in the <u>Absentee Shawnee</u> Decision.  <u>See</u> Defendant's Opposition to Plaintiff's Statement of Material Facts Not in Genuine Dispute, at ¶ 4.  The fact that the Absentee Shawnee tribe did not object to the Department's static application of the Funding Formula agreement in its Fiscal Year 2004 AFA does not establish that all five Shawnee Agency tribes actually intended that result in 1988 when they executed the five tribal resolutions comprising the Funding Formula agreement.  Nor is there any evidence contained in or relied upon in the <u>Absentee Shawnee</u> Decision that establishes or otherwise indicates the contemporaneous intent of the five Shawnee Agency tribes in issuing the five tribal resolutions in 1988.

Therefore, for this additional reason, this Court should find that CPN is entitled to have the ambiguity holding remanded back to the IBIA in order to further develop the administrative record to include contemporaneous evidence associated with the intent of all five Shawnee Agency tribes in 1988 in issuing the five tribal resolutions.

**II.     Defendant's Opposition Fails To Meet Its Burden Establishing The Existence of Evidence in the Administrative Record Regarding CPN's Knowledge of and Acquiescence In the Department's <u>Static Application of the Funding Formula Prior to 1998</u>**

In its Complaint and Motion for Summary Judgment, CPN contends that the factual conclusion in the IBIA Decision that CPN knew of and acquiesced in the Department's static application of the Funding Formula prior to 1998 is not supported by any evidence in the administrative record.  This absence of evidence is fatal to the IBIA Decision since such evidence is a required element necessary to support the factual conclusion reached in the IBIA Decision.

In its Statement of Material Facts Not In Genuine Dispute, CPN pointed out this absence of evidence and stated in Paragraph 26 the following statement of undisputed fact:

> The administrative record in CPN's IBIA appeal docketed as IBIA 04-16-A did not contain any evidence with respect to CPN's knowledge prior to 1998 of the nature of the Department's application of the Funding Formula or CPN's opportunity to object to such application by the Department prior to 1998.  (Exhibit A hereto –AR.)

CPN's contention, as set forth in its Statement of Material Facts Not In Genuine Dispute, is that there is no evidence in the administrative record at all indicating whether CPN either knew of or did not know of the Department's static application of the Funding Formula prior to 1998.   No evidence was introduced by any party on this issue because the issue of CPN's knowledge of the Department's actions prior to 1998 was never raised by any party.  The IBIA itself raised this issue <u>sua</u> <u>sponte</u> for the first time in its final decision without any related evidence in the record and without any briefing by any party on this issue.

This statement of fact in CPN's Statement of Material Facts Not In Genuine Dispute shifted the burden to Defendant to make a showing sufficient to establish that the missing evidence is actually contained in the administrative record by identifying specific facts contained in the administrative record.

Defendant does not identify any specific facts in the administrative record establishing that CPN knew of or acquiesced in the Department's static application of the Funding Formula agreement prior to 1998.  Instead, in its Opposition to CPN's Motion for Summary Judgment, Defendant mischaracterizes this statement of fact and states that CPN asserts "that the administrative record shows that CPN had no knowledge or

opportunity to object to the Department's application of the Funding Formula until 1998." Defendant's Opposition to Plaintiff's Statement of Material Facts Not In Genuine Dispute, at page 4. Defendant's assertion is wrong and fails to meet Defendant's burden.

It is well accepted that a moving party need only point to an absence of evidence for a required element of the nonmoving party's case and the burden then shifts to the nonmoving party to make a showing sufficient to establish that evidence or otherwise create an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-325. Once the burden shifts, the nonmoving party must identify specific facts in the record that show that there is a genuine issue as to a material fact. Id.

Here, without identifying any specific facts in the record establishing that CPN knew of or acquiesced in the Department's static application of the Funding Formula prior to 1998, Defendant erroneously attempts to shift the burden back to CPN. Defendant asserts that "Plaintiff has not provided any admissible evidence showing that it either lacked knowledge of the Formula's application or did not have an opportunity to object to the application before 1998." Defendant's Opposition to Plaintiff's Statement of Material Facts Not In Genuine Dispute, at pages 4-5. Proof by CPN that it did not know of the Department's actions or have an opportunity to object prior to 1998 is not a required element of CPN's action. It was the IBIA Decision that reached the factual conclusion that CPN knew of and acquiesced in the Department's actions prior to 1998. This factual conclusion was central to the ultimate holding in the IBIA Decision that the Department did not abuse its discretion in applying the Funding Formula in a static manner based on 18-year old data from 1988. It is Defendant's burden to identify

specific evidence in the administrative record supporting that factual conclusion. Defendant has failed to meet that burden.

In apparent recognition of the lack of evidence in the administrative record, Defendant resorts to an assertion that "[t]he IBIA's decision can be sustained even if evidence of CPN's knowledge of the nature of DOI's funding calculations before 1998 is absent from the administrative record" since the "IBIA supported its conclusion with other factors which Plaintiff does not contest." Defendant's Opposition, at page 17. This assertion by Defendant is a misguided attempt to rewrite the IBIA Decision and omit the central factual conclusion that was relied upon by the IBIA. If the factual conclusion regarding CPN's knowledge and actions prior to 1998 is omitted from the IBIA Decision, there are no other factors identified in the IBIA Decision that could independently support the IBIA's conclusion that the Department did not abuse its discretion in applying the Funding Formula in a static manner. This Court should reject Defendant's assertion for this reason alone.

Moreover, the "other factors" relied upon by Defendant do not provide an independent basis to support the IBIA's conclusion that the Department did not abuse its discretion in implementing the Funding Formula agreement in a static manner. The fact that CPN admits in this action that the Funding Formula has been implemented in a static basis since 1988 does not establish that the Department's actions were not an abuse of its discretion. Nor does the fact that none of the other four tribes came forward in support of CPN's action establish that the Department did not abuse its discretion. In addition, the fact that the Absentee Shawnee tribe may or may not favor the Department's static

application of the Funding Formula agreement does not independently establish the reasonableness of the Department's actions.

Accordingly, for all these reasons and for the reasons previously articulated by CPN, even if this Court upholds the finding of ambiguity, this Court should find that the IBIA Decision should be overturned as arbitrary, capricious and otherwise erroneous since it relies upon extrinsic evidence not contained in the administrative record to reach a key factual conclusion that CPN knew of and acquiesced in the Department's static application of the Funding Formula prior to 1998. This Court should order that this matter be remanded back to the IBIA to further develop the administrative record regarding CPN's knowledge and actions prior to 1998 with respect to the Department's static application of the Funding Formula.

### III.    Defendant's Opposition In Support of the Collateral Estoppel Holding Is Erroneous as a Matter of Law

The collateral estoppel holding in the IBIA Decision precluding CPN from litigating its entitlement to $65,521 in funding under Factor 3 of the Funding Formula is erroneous as a matter of law.

It is undisputed that the collateral estoppel holding was based solely on the prior decision of the Interior Board of Contract Appeals in the Absentee Shawnee Decision. See Plaintiff's Statement of Material Facts Not In Genuine Dispute, at ¶ 27; Defendant's Opposition to Plaintiff's Statement of Material Facts Not In Genuine Dispute, at ¶ 27 (stating that Defendant does not dispute Plaintiff's statement.) It is also undisputed that the Absentee Shawnee Decision resolved a post-award breach of contract dispute, pursuant to the Contract Disputes Act provision of Part A of the ISDA, 25 U.S.C. § 450m-1(d), between the Department and the Absentee Shawnee tribe. See Defendant's

Statement of Material Facts Not In Dispute, at ¶ 33 (stating that "[b]oth claims were brought pursuant to the provisions of the Contract Disputes Act, 41 U.S.C. 601 <u>et</u> <u>seq.</u> and pursuant to the ISDA, 25 U.S.C. 450m-1(d).")  It is further undisputed that the post-award breach of contract dispute at issue in the <u>Absentee Shawnee</u> Decision involved the Absentee Shawnee's Compact and AFAs for Fiscal Years 2000 and 2001 entered into under the Tribal Self-Governance Program provisions of Part D of the ISDA, 25 U.S.C. §§ 450f-450n.  <u>Id.</u>

The Contract Disputes Act provision in the Indian Self-Determination Program provisions of  Part A of the ISDA states that the Contract Disputes Act, (Public Law 95-563, as amended, 41 U.S.C. § 607) "shall apply to self-determination contracts, except that all administrative appeals relating to such contracts shall be heard by the Interior Board of Contract Appeals. . ."  25 U.S.C. § 450m-1(d).  While Compacts and AFAs entered into under Part D of the ISDA, 25 U.S.C. §§ 450f-450n, are not "self-determination contracts" as defined in 25 U.S.C. § 450(b), certain statutory provisions governing "self-determination contracts" also apply to Compacts and AFAs under Part D of the ISDA.  The Contract Disputes Act provision of Part A of the ISDA, 25 U.S.C. § 450m-1(d), is one of those provisions that does apply to Compacts and AFAs entered into under Part D of the ISDA.  <u>See</u> 25 U.S.C. §§ 458cc(h); 458ff(c).

Defendant does not dispute that the <u>Absentee Shawnee</u> Decision was governed by the Contract Disputes Act, 41 U.S.C. § 607.  However, Defendant's arguments in support of the collateral estoppel holding ignore the jurisdictional limits of the IBCA under the Contract Disputes Act.  Defendant erroneously seeks to expand the jurisdiction of the IBCA and its holding in the <u>Absentee Shawnee</u> Decision to apply to future contracts that

had not yet been executed by a non-party to the contracts at issue in that Decision (i.e. CPN). Under the Contract Disputes Act, the jurisdiction of the IBCA, like all boards of contract appeals, is limited to claims relating to existing contracts entered into by a contractor with an executive agency of the Government. See, e.g., Radcon Radar Control Systems, ASBCA No. 50,022, 99-2 BCA ¶ 30,571 (Sept. 16, 1999). Claims and issues relating to potential contracts, not yet in being, are not within the Contract Disputes Act jurisdiction of boards of contract appeals, like the IBCA. Id.

The contracts (the Absentee Shawnee's Compact and 2000 and 2001 AFAs) at issue in the Absentee Shawnee Decision were between the Department and the Absentee Shawnee tribe. CPN was not a party to those contracts. The judgment in the Absentee Shawnee Decision could not and did not resolve any issue of whether or not the Collier Decision requires a change in the application of Factor 3 of the Funding Formula in any future contracts to be negotiated by CPN. The IBCA did not have jurisdiction to resolve any issue affecting future contracts to be negotiated by CPN, including CPN's Fiscal Year 2004 AFA at issue in this action. This was made clear when the IBCA itself subsequently held that CPN was entitled to the $65,521 in funding under Factor 3 in connection with its Fiscal Year 2003 AFA. See Appeal of Citizen Potawatomi Nation of Oklahoma, IBCA No. 4522/04, 35 IBCA 207, 05-1 BCA ¶ 32,919 (March 22, 2005). There is no rational basis to conclude that CPN is collaterally estopped from litigating its entitlement to the same $65,521 in funding under Factor 3 of the Funding Formula in connection with its pre-award appeal of its Fiscal Year 2004 AFA at the IBIA.

Defendant's arguments also erroneously assert that CPN was a "contractor" for purposes of the Absentee Shawnee Decision and, as a result, was a "party" to the

litigation with the right to seek judicial review of that Decision. Defendant's arguments are erroneous as a matter of law. It is well established that intervention by a third party as a party of right under the Federal Rules of Civil Procedure in Contract Disputes Act proceedings by boards of contract appeals is not available. See Power Contracting Company, VABCA No. 7356, 06-1 BCA ¶ 33,134 (Nov. 16, 2005); Leland Stanford Junior University, ASBCA Nos. 43761, et al, 95-1 BCA ¶ 27,335 (Nov. 30, 1994). The reason for this is that a board of contract appeal's jurisdiction under the Contract Disputes Act is limited to appeals by a "contractor" involving a dispute relating to its "contract" with the Federal Government. Id.

     The only contracts at issue in the Absentee Shawnee Decision were the Absentee Shawnee's Compact and AFAs for Fiscal Years 2000 and 2001. See Plaintiff's Exhibit A, Tab 16 – Absentee Shawnee Decision, at pages 1-2. The IBCA's holding with respect to the impact of the Collier Decision was limited to the specific terms of those contracts between the Department and the Absentee Shawnee. CPN was not a party to any of those contracts. Contrary to Defendant's assertion, at page 28 of its Opposition, the Funding Formula agreement was not a contract executed between the five Shawnee Agency tribes and the Department, but was an agreement among the five tribes. See Plaintiff's Exhibit A, Tab 16 – Absentee Shawnee Decision, at page 2 (where the IBCA notes that "[i]n 1988, five tribes within the Shawnee Agency of the Bureau of Indian Affairs (BIA) negotiated a formula **among themselves** for dividing future Federal appropriations".) (Emphasis supplied.) Moreover, as the IBCA pointed out in the Absentee Shawnee Decision, the Funding Formula was not even referenced in or incorporated into the contracts at issue in that litigation. See Plaintiff's Exhibit A, Tab 16 – Absentee Shawnee

Decision, at page 3.  The Funding Formula agreement is not a "contract" within the

meaning of or subject to the Contract Disputes Act, 41 U.S.C. § 601.  Contrary to

Defendant's assertions, CPN's limited participation in the <u>Absentee Shawnee</u> Decision

litigation was not as a "contractor" but as a permissive intervenor with no right to appeal

that Decision.  No rights to appeal are provided for in the Contract Disputes Act for a

third-party permissive intervenor, such as CPN.  Without any right to appeal, application

of collateral estoppel against such a third-party permissive intervenor in a subsequent

action would be fundamentally unfair.

> **IV.**    **Defendant's Opposition Fails to Overcome the Undisputed**
> **Material Facts Establishing that the Alternative Holding**
> **On CPN's Claim Under Factor 3 of the Funding Formula**
> **<u>Is Arbitrary, Capricious and Otherwise Erroneous</u>**

The IBIA Decision provides no explanation or analysis of its alternative holding

regarding CPN's claim under Factor 3 of the Funding Formula based on the impact of the

<u>Collier</u> Decision.  After devoting several pages of its decision to its erroneous holding

that CPN was collaterally estopped from litigating it claim under Factor 3 based on the

<u>Collier</u> Decision, the IBIA proceeded to address the merits of that claim but did so in an

extremely abbreviated fashion that is not sustainable.  In one sentence of seven words, the

IBIA Decision summary concluded that the <u>Collier</u> Decision had no impact on how

funding is to be distributed under Factor 3 of the Funding Formula.

In its Opposition, Defendant erroneously contends that the IBIA Decision

contains a "detailed, rational analysis" of its conclusion regarding the impact of the

<u>Collier</u> Decision on Factor 3 of the Funding Formula.  The "detailed, rational analysis"

that Defendant relies upon, at pages 33-35 of its Opposition, is two short paragraphs

contained in the IBIA Decision.  The discussion from the IBIA Decision relied upon by Defendant has nothing to do with the impact or meaning of the <u>Collier</u> Decision but, instead, deals only with the IBIA's interpretation of Factor 3 **regardless** of the meaning of <u>Collier</u>.  The discussion from the IBIA Decision relied upon by Defendant makes that clear by prefacing that discussion with the statement "regardless of the meaning of <u>Collier</u>."  <u>See</u>  Plaintiff's Exhibit A – AR at Tab 66 – IBIA Decision, at page 170.  At the end of this discussion, the IBIA Decision includes one sentence that summarily states that "<u>Collier</u> does nothing to alter this intent."  <u>See</u>  Plaintiff's Exhibit A – AR at Tab 66 – IBIA Decision, at page 171.  No analysis or explanation of the <u>Collier</u> Decision or its impact on Factor 3 is provided.

The <u>Collier</u> Decision conclusively and finally held that CPN has "the exclusive use and occupancy of its former reservation."  <u>Collier</u>, <u>supra</u>, 142 F.3d at 1334.  The IBIA Decision held that "factor 3 of the agreement contemplated, with respect to the Citizen Potawatomi and the Absentee Shawnee, that funding would be apportioned based on the number of tribal members **each tribe had within the former reservation boundaries**."  <u>See</u>  Plaintiff's Exhibit A – AR at Tab 66 – IBIA Decision, at page 171. (Emphasis supplied.)  But yet, with no analysis or explanation of the holding of the <u>Collier</u> Decision, the IBIA Decision summarily concluded that the <u>Collier</u> Decision had no impact on this meaning of Factor 3 of the Funding Formula.  The holding of the <u>Collier</u> Decision and the meaning applied to Factor 3 by the IBIA in its Decision are diametrically opposed.  The holding of the <u>Collier</u> Decision establishes CPN's right to the exclusive use and occupancy of its former reservation boundaries.  The meaning applied by the IBIA in its Decision to Factor 3 rests on the premise that both CPN and the

Absentee Shawnee have a right to occupy CPN's former reservation boundaries. Without any reasoned analysis or explanation provided for in its Decision, there is no basis to uphold the IBIA's conclusion that the <u>Collier</u> Decision has no impact on Factor 3. For this reason alone, this Court should remand this issue back to the IBIA for further proceedings.

Defendant also fails to overcome CPN's arguments that the IBIA Decision also erroneously ignored contradictory evidence establishing that a tribe's former reservation boundaries were used to define the tribe's jurisdictional area for purposes of funding to be allocated under Factor 3. Defendant does not dispute that the record establishes that, for purposes of Factor 3, "service area designations were made with specific and exclusive reference to territorial jurisdiction as it was known at the time of the tribal contracts." <u>See</u> Defendant's Opposition, at page 37; Defendant's Opposition to Plaintiff's Statement of Material Facts Not In Genuine Dispute, at ¶ 5. Nor does Defendant dispute that a tribe's former reservation boundaries were used to define a tribe's territorial jurisdiction for purposes of Factor 3. <u>See</u> Defendant's Opposition to Plaintiff's Statement of Material Facts Not In Genuine Dispute, at ¶ 6.

Defendant nevertheless asserts, at pages 37-38 of its Opposition, that none of these undisputed facts establish that the holding in the <u>Collier</u> Decision has any impact on Factor 3. However, Defendant's arguments betray its own assertion. Defendant's arguments reflect the undisputed fact that the Department itself understood that the holding of the <u>Collier</u> Decision has a direct impact on Factor 3. Defendant contends only the Department had difficulties finding a suitable resolution of the impact of the <u>Collier</u> Decision on Factor 3. That the Department had difficulty finding an easy resolution of

this impact does not establish that there is no such impact.  Nor do these arguments by

Defendant provide any excuse for the failure of the IBIA Decision to provide any

reasoned analysis or explanation for in its conclusion that the <u>Collier</u> Decision has no

impact on Factor 3.  This Court should remand this issue back to the IBIA for further

proceedings.

**V.    Defendant's Opposition Fails to Establish That Any
        Any Absent Parties Are Either Necessary Or
        <u>Indispensable To a Just Adjudication of This Action</u>**

Contrary to Defendant's assertions, at pages 39-45 of its Opposition, overturning

the IBIA Decision and remanding the matter back to the IBIA will not lead to the

"undeniable effect" requiring the IBIA to "adopt Plaintiff's interpretation of the 1988

Agreement" or otherwise render the IBIA as a "strawman."  Such a result is not

necessary, much less undeniable.  While the absence from this action of the other four

Shawnee agency tribes does constrain this Court's ability to resolve the underlying merits

of the issues addressed by the IBIA, their absence does not preclude this Court from

making a pragmatic decision based on practical considerations given the particular

context of this action in order to determine that the absent parties are neither necessary

nor indispensable to a just adjudication of this action.

This Court is not bound to the "undeniable result" asserted by Defendant.  In this

action CPN asks this Court to find that the IBIA Decision is not sustainable on the basis

of the existing administrative record due to the material procedural defects associated

with that Decision.  The relief requested is for this Court to overturn the IBIA Decision as

final agency action and remand the matter back to the IBIA for further proceedings in

order to afford CPN the required due process at the IBIA.  As set out in CPN's

Opposition to Defendant's Motion for Summary Judgment, at pages 36-40, such relief will be meaningful and can be granted without making any substantive holdings on the underlying merits that would be binding on the IBIA regarding the meaning of and proper application of the Funding Formula agreement.

In addition, overturning the IBIA Decision and remanding this matter back to the IBIA for further proceedings does not bind or constrain the Department with respect to its application of the Funding Formula agreement. The Department's actions with respect to the Funding Formula agreement were not constrained or bound during the pendency of the IBIA proceedings that led up to issuance of the IBIA Decision. Any remand for further proceedings before the IBIA will also not constrain or bind the Department's actions during the pendency of any remand proceedings.

The only effect of the remedy by CPN in this action is to require the IBIA to conduct further proceedings to readdress the merits of the issues raised by CPN and reissue a decision in a manner that accords CPN the due process to which it is entitled to at the IBIA. The remedy requested by CPN from this Court does not seek nor require any pre-determined outcome on the merits of the issues to be readdressed by the IBIA based on the further proceedings.

With respect to the remedy requested for Count I of CPN's complaint, requiring the IBIA to further develop the administrative record to provide the missing analysis of the material language from the tribal resolutions that the IBIA failed to address in its initial decision does not require the IBIA to reach a pre-determined result with respect to the meaning of or ambiguity of the Funding Formula agreement. Including a requirement in that remedy for the IBIA to consider current data available to the Department on tribal

enrollment, tribal resident population and trust acreage in connection with such analysis does not dictate any result to be reached by the IBIA with respect to the meaning of the Funding Formula agreement.  If the IBIA still determines that the Funding Formula agreement is ambiguous based on any such further proceedings, requiring the IBIA to develop the missing factual record with respect to CPN's knowledge of and actions prior to 1998 with respect to the Department's static application of the factors in the Funding Formula does not bind the IBIA to any pre-determined finding with respect to CPN's pre-1998 knowledge and actions.

Similarly, with respect to Count II of CPN's complaint, overturning the IBIA's legal ruling that CPN is collaterally estopped from litigating its entitlement to at least $65,521 in funds under Factor 3 of the Funding Formula agreement based on the holding of the Collier Decision does not require any pre-determined finding by the IBIA on the merits of CPN's claim under Factor 3.  Overturning the IBIA's collateral estoppel holding simply allows CPN to fully litigate the merits of that issue before the IBIA.

Finally, with respect to Count III of CPN's complaint, requiring the IBIA to conduct further proceedings in order to fully address and explain the effect, if any, of the holding of the Collier Decision on Factor 3 of the Funding Formula does not bind the IBIA to any pre-determined result as to the impact of the Collier Decision.  Rather, this remedy requires the IBIA to fully address the issue and rationally explain any holding that it may reach based on such further proceedings.

## CONCLUSION

For all these reasons and for the reasons set forth in CPN's Complaint, Motion for Summary Judgment, and its Opposition to Defendant's Motion for Summary Judgment, CPN respectfully requests that this Court grant CPN's Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, and grant CPN the following relief:

1.     Declare that the IBIA Decision is erroneous for the reasons set forth in CPN's pleadings and briefs;

2.     Enjoin the Department from implementing the IBIA Decision as final agency action;

3.     Remand this matter back to the IBIA for further proceedings as requested in CPN's pleadings and briefs; and,

4.     Grant all other relief that this Court deems just and appropriate.

Respectfully submitted,

CITIZEN POTAWATOMI NATION

By: _____/s/ James D. Bachman_____
James D. Bachman
D.C. Bar No. 332650

Ron R. Hutchinson
D.C. Bar No. 428039

Doyle & Bachman LLP
4350 N. Fairfax Drive, Suite 420
Arlington, Virginia  22203
(703) 465-5440
Fax:  (703) 465-5593

Dated:  February 15, 2007