**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZEN POTAWATOMI NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 06-0830 (GK) |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF
GENUINE ISSUES IN RESPONSE TO DEFENDANTS' STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), defendants

submit the following Reply to Plaintiff's Statement of Genuine Issues in Response to

Defendants' Statement of Material Facts Not in Dispute.

Defendants assert that each and every statement in their Statement of Material Facts Not

in Dispute is both true and relevant to this proceeding. Plaintiff argues that defendants'

"proffered statements completely ignore the procedural defects in the administrative

decision issued by the Interior Board of Indian Appeals (the "IBIA Decision"[1]) and the

shortcomings in the administrative record supporting the IBIA Decision identified by

CPN in its complaint." Plaintiff's Statement of Genuine Issues in Response to Defendants'

Statement of Material Facts Not in Dispute (hereinafter "Plff. Opp.to DSOMF") at page 1. Far

from ignoring any alleged procedural defects in the IBIA Decision, defendants properly made

the defense of that decision the centerpiece of their Motion for Summary Judgment and

_____

[1] Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160, 172
(IBIA 2006).

accompanying Statement of Material Facts Not in Dispute.  See  Defendants' Statement of

Material Facts Not In Dispute (hereinafter "DSOMF") at ¶¶ 18-22 (examining Citizen Band

Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325, 1327 (10th Cir. 1998), which is

a key part of Plaintiffs' argument for non-static application of Factor 3); DSOMF at ¶¶ 23-32

(explaining the Defendants' good faith efforts made in an attempt to comply with Collier);

DSOMF at ¶¶ 33-40 (detailing the issues in the Appeals of the Absentee Shawnee Tribe of

Oklahoma, IBCA 4317-2001 and IBCA 4318-2001 (hereinafter referred to as Absentee

Shawnee) and the rationale of that decision); DSOMF at ¶¶ 41-54 (describing Defendants' good

faith efforts to comply with  Absentee Shawnee and plaintiff's subsequent pre-award appeal to

IBIA regarding funding of its Annual Funding Agreement ("AFA") for 2004).

        Plaintiff's assertions regarding shortcomings in the administrative record is a red herring.

Certification of the administrative record is irrelevant at this point in the proceedings.  Neither

party alleges that the other party has submitted an administrative record that is false or

incomplete.  "Generally, judicial review of agency action is limited to review of the record on

which the administrative decision was based."  Thompson v. U.S. Department of Labor, 885

F.2d 551, 555 (9th Cir. 1989) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402,

416, 91 S. Ct. 814, 824, 28 L.Ed.2d 136 (1971)).

        Plaintiff states that it "relies upon its Statement of Material Facts Not In Genuine Dispute

as its separate statement of facts in opposition to the Government's Motion for Summary

Judgment."  Plff. Opp.to DSOMF at page 2.  As set out in defendants' Opposition to Plaintiff's

Statement of Material Facts (hereinafter "Deft. Opp.to PSMOF"), plaintiff fails to identify any

substantive or procedural shortcomings in the IBIA Decision.  See Deft. Opp. to PSOMF at ¶ 4

(challenging plaintiff's assertion regarding the insufficiency of the evidence relied on by the IBIA in reaching its decision); Deft. Opp. to PSOMF at ¶ 17 (noting that the IBIA ruled that the Department was not required to produce any documents relating to tribal enrollment, resident tribal population and trust property, because CPN had not demonstrated that the Director actually utilized or relied upon those documents in making his decision concerning the disputed 2004 AFA funding."); Deft. Opp. to PSOMF at ¶ 26 (noting that plaintiff had presented no admissible evidence showing that it either lacked knowledge of the Formula's application or did not have an opportunity to object to the application before 1998).

Thus, plaintiff's request for remand back to the IBIA should be denied because remand is neither prudent nor legally mandated since there are no procedural defects in the IBIA Decision and it is not necessary to further develop the administrative record.

February 15, 2007                              Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZEN POTAWATOMI NATION,    )
                  )
          Plaintiff,      )
                  )
        v.           )     No. 06-0830 (GK)
                  )
DIRK KEMPTHORNE, et al.,     )
                  )
         Defendants.    )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT

Defendants' Motion for Summary Judgment should be granted for two reasons: (1) the administrative record in this action fully supports the decision below and (2) plaintiff offers no valid arguments for denying summary judgment. Plaintiff asserts that defendants "mischaracterize[] the nature of this action and ignore[] the material procedural defects associated with the administrative decision at issue here that are raised by CPN in its Complaint." Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plff. Opp.") at 1. Defendants do neither.

In contrast, it is plaintiff who has mischaracterized the nature of its own action and the IBIA Decision. Plaintiff states that "[t]he remedy requested is for this Court to order that the matter be remanded back to the IBIA for further proceedings in order to correct the material procedural errors by providing a proper basis in the administrative record to allow for the resolution by the IBIA of the merits of the issues raised by CPN in its pre-award appeal at the IBIA." Plff. Opp. at 2. It maintains that the "material procedural defects" in the IBIA Decision include (1) a failure to address material evidence in the administrative record, (2) assuming evidence not contained in the administrative record, and (3) otherwise failing to provide for an

adequate basis for the conclusions reached.  Id. at 1-2.   These alleged defects are not only **non-existent** but the proposed remedies to resolve them effectively would mandate a grant of substantive relief in plaintiff's favor.  This relief would violate Fed. R. Civ. P. 19 because it would have a broad and significant impact on the rights and interests of the four absent tribes of the Shawnee Agency.  As set forth in detail below, this Court should grant summary judgment in defendant's favor and, thereby, deny plaintiff's Motion for Summary Judgment.

<u>**ARGUMENT**</u>

## II.    REVIEW OF THIS MATTER IS GOVERNED BY THE APA'S ARBITRARY AND CAPRICIOUS STANDARD

Plaintiff erroneously argues that the "appropriate standard of review to apply in this action brought pursuant to the ISDA ["Indian Self-Determination Act"] is a de novo standard."  Plff. Opp. at 6.  This argument ignores the plain language of the complaint, in which plaintiff states that it brought this action pursuant to both the Administrative Procedures Act ("APA") and the ISDA.  See Complaint at ¶ 5; Plaintiff's Motion for Summary Judgment ("Plff MSJ") at 3 ("[A] claim for relief exists under both the ISDA, and the Administrative Procedures Act.") (internal citations omitted).  Thus, this case implicates both the APA and ISDA.

Plaintiff asserts that de novo review is appropriate because Section 450m-1(a) of the ISDA grants district courts "original jurisdiction" over "civil actions" with authorization to award money damages and that this combination denotes an intention by Congress to grant the right of de novo review.  Plff. Opp. at 6.  Plaintiff primarily relies on  Shoshone-Bannock Tribes of Fort Hall v. Shalala, 998 F. Supp. 1306 (D. Or. 1997) for this proposition.[2]   Plff Opp. at 6.

_____

[2] In reaching this conclusion, the Court relied on Chandler v. Roudebush, 425 U.S. 840, 862 (1976).  That reliance was misplaced because Chandler concerned the standard of review of

Despite conceding that the Court did not address the standard of review under ISDA in Ramah Navajo, (Plff. Opp. at 5), plaintiff attempts to show that the Court's actions "appear[] to have suggested that the district court apply a de novo review of the Department's actions."  Plff. Opp. at 6.  Plaintiff notes that the Court found that "the Department's new policy instituting the 50% penalty reduction exceeded its limited statutory authority in violation of the ISDA."  Plff. Opp. at 5 (citing Ramah Navajo, 87 F.3d at 1347-1350).  Specifically, the Court stated "The text of the Act demonstrates that Congress never intended to commit the allocation of CSF [Contract Support Funds], full or partial, to agency discretion, and that the Secretary in this case exceeded the limited scope of his authority in promulgating the new allocation rules."  Ramah Navajo, 87 F.3d at 1349.  Thus, the Court's holding was limited to its interpretation vis-a-vis the Department's authority to promulgate allocation rules concerning contract support funds, i.e., rule making.  The holding says ***nothing*** about a standard of review for the Department's adjudication of issues such as those in the case at bar.

In a further attempt to manufacture authority for its de novo standard of review, plaintiff cites Footnote 2 in Ramah Navajo.  See Plff. Opp. at 5-6 (citing Ramah Navajo, 87 F.3d at 1341, n. 2).  Plaintiff states that when the Court of Appeals ordered remand back to the District Court for further proceedings, it noted that the district court "might choose to hold a hearing, at which the plaintiff Tribes and the Secretary could address the precise distribution of the escrowed funds."  Plff. Opp. at 5;  Ramah Navajo, 87 F.3d at 1341, n. 2.  Plaintiff maintains that this act showed that the "Court accorded no discretion to the Department's Acts."  Plff. Opp. at 6.

---

a Title VII claim and the U.S. Supreme Court's holding was dependent on the particular language and legislative history of that statute.  Id. at 862.

Plaintiff's argument *ignores* the remainder of the footnote which states "even if the Secretary during any given year initially has some limited discretion to allocate a CSF shortfall among the Tribes, *that discretion is further bound in this particular case* by the fact that Ramah and Pullayup, at this point, are the only Tribes with a legal claim to the small amount of 1995 funds still remaining." Ramah Navajo, 87 F.3d at 1341, n. 2 (emphasis added). Once again, plaintiff has tried to improperly broaden the narrow meaning of language in Ramah Navajo.

The legal foundation for plaintiff's argument for de novo review under the ISDA is meritless. This Court should apply the arbitrary and capricious standard of review contained in the APA. Plaintiff concedes that "Defendant correctly notes that the ISDA does not set forth any standard of review." Plff. Opp. at 3. Thus, in this case, the District Court applies the arbitrary and capricious standard to the facts to determine whether or not the challenged decision is supported by the administrative record.

## II.    THE IBIA CORRECTLY HELD THAT THE FUNDING FORMULA WAS AMBIGUOUS AND THAT THE PARTIES INTENDED A STATIC APPLICATION OF THE FUNDING FORMULA

Plaintiff asserts that "there is no reasoned or rational support in the existing administrative record for the IBIA Decision's conclusions that (a) the tribal resolutions comprising the Funding Formula agreement are ambiguous and (b) it was reasonable for the Department to utilize the same data from 1988 for the past 18 years for purposes of distributing funding to the tribes, including funds to be distributed to CPN for Fiscal Year 2004." Plff. Opp. at 9. The plaintiff's assertions have no basis in law or fact.

**A.    The Administrative Record Fully Supports the IBIA's Holding that the Language of the Funding Formula was Ambiguous**.

Plaintiff argues that the IBIA erred when it held that the Funding Formula was ambiguous regarding the application of the four factors because its opinion did not address two provisions contained in the tribal resolutions of each of the five tribes of the Shawnee Agency. Plff. Opp. at 10.  Those provisions are: (1) Funding Formula[3] is to be used "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years," and (2) each tribal resolution states that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."

The arbitrary and capricious standard of review is highly deferential and presumes the validity of agency action. See Kisser v. Cisneros, 14 F.3d 615, 618 (D.C. Cir. 1994); American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990).  The Court may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-416 (1971).

Plaintiff has failed to demonstrate that the IBIA Decision was arbitrary and capricious. Plaintiff cannot show the relevance of language "to contract for all Bureau of Indian Affairs provided operation and services in FY 89 and future years" without distorting Defendants' words.  Although defendants did state that "the formula will be employed for a time period extending beginning in FY 1989 and continuing in future years," (Defendants' Motion for

---

[3]  Upon further review, Defendants have determined that the Funding Formula agreement is not a self-determination contract under 25 U.S.C. § 450(b)(1).  However, this determination has no impact on the issue of the validity of the IBIA's holdings that the Funding Formula is ambiguous and that the parties intended a static application of that Formula.

Summary Judgment ("DMSJ") at 10), defendants were merely stating why this language was not relevant to the IBIA's analysis regarding the ambiguity of the Funding Formula.[4]  This provision merely expresses a commitment by the tribes to enter into contracts for services instead of having the BIA provide these services to them.  Since that provision was not relevant to the issue of the static (or non-static) application of the formula, the IBIA did not act arbitrarily and capriciously when it did not discuss this provision in its decision.

Plaintiff further argues that a static application of the Funding Formula is irrational.  See Plff. Opp. at 12 ("There can be no application of the formula specified in the Funding Formula in any year other than Fiscal Year 1989 if only 1988 data is used to establish a static percentage of funds to be used in all future years beyond Fiscal Year 1989.").  Plaintiff's argument incorrectly assumes that a formula can only be applied if the data for that formula is revised annually. This is irrational because the formula could still apply to various years while remaining static.  Such an interpretation would not render the factors meaningless but rather would have them serve as fixed reference points.  Each year the DOI made a funding decision it would refer to these fixed reference points and so, contrary to plaintiff's assertion, these factors have been applied in every year since FY89.  See  Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160, 172 (IBIA 2006)  ("IBIA Decision") ("Nor do we think that it would have been unreasonable for the parties to intend that existing data be applied to establish a fixed allocation for future years.").

_____

[4] Indeed the full quote in context is "This language is not indicative of any intent that the figures used in the formula change from year to year. It merely states that the formula will be employed for a time period extending beginning in FY 1989 and continuing in future years. The language does nothing to rectify the ambiguity identified by the IBIA."  DMSJ at 10.

Plaintiff also attempts to show that the IBIA Decision was arbitrary and capricious because the IBIA failed to consider the provisions stating that "the tribes will conform to all aspects of the CFR appropriate to the given program to be contracted by all five tribes of the Shawnee Agency." Plff. Opp. at 12-15. Plaintiff asks that this Court "find that these statutory and regulatory provisions [25 U.S.C.A. § 458ee, 25 C.F.R. § 1000.381, and 25 C.F.R. § 1000.98(a)(1)] should have been addressed and considered in the IBIA Decision as part of its interpretation of the Funding Formula agreement, especially in connection with the language" concerning the tribe's conformance to the CFR. Plff. Opp. at 13. Once again, plaintiff has taken a provision that is irrelevant to the issues in the instant case and used that provision to mischaracterize the IBIA Decision as arbitrary and capricious.

Plaintiff maintains that "[i]t is disingenuous for the Department to contend that even though it annually collects the very type of data [tribal enrollment, tribal resident population, and trust acreage] that is identified in the Funding Formula it should not do anything with that current data but simply collect it, report it to Congress and then file it away." Plff.Opp. At 14. Plaintiff uses 25 C.F.R. § 1000.98(a)(1) to bootstrap its argument that the provision requiring the tribes to conform to CFR requires IBIA to consider current data collected by the Department pursuant to 25 U.S.C.A. § 458ee and 25 C.F.R. § 1000.381.

25 C.F.R. § 1000.98(a)(1) provides that "[d]istribution formulas must be reasonably related to the function or service performed by an office, and must be consistently applied to all Tribes within each regional and agency office." Plaintiff asserts that this regulation requires the DOI to consider current data because use of that data is the only reasonable way to relate the funds to the functions or service performed. Plff. Opp. at 14. The use of a static formula is

7

reasonable because as the IBIA noted, it would not have been "unreasonable for the parties to intend that existing data be applied to the formula to establish a fixed allocation for future years." Citizen Potawatomi Nation, 42 IBIA at 172. Such a formula would not necessitate constant revision but at the same time could be renegotiated if the tribes found the formula to be inadequate.

Substantial evidence supports the IBIA's finding that the Funding Formula was ambiguous because the plain language of the formula did not address the manner of its application and the formula was subject to more than one reasonable interpretation. Thus, the IBIA's holding that the Funding Formula was ambiguous is neither arbitrary nor capricious and the Court should not overturn this ruling.

**B.      The IBIA Decision's Correctly Interpreted the Funding Formula.**

Plaintiff argues that even if the IBIA decision's holding of ambiguity is upheld, the IBIA Decision should still be overturned because it relies upon evidence not contained in the administrative record relating to the alleged knowledge of and actions of CPN regarding the Department's static application of the Funding Formula prior to 1998.   Plff. Opp. at 15. Specifically, plaintiff alleges that there is no evidence in the administrative record that supports the IBIA's finding that "CPN knew of the static application (performance) but failed to object until 1998." Id. (citing DMSJ at 7).  Plaintiff's argument suffers from two fatal flaws: (1) the *administrative record contains substantial evidence* of plaintiff's knowledge of the static application well before 1998 and (2) *plaintiff offers no admissible evidence* to rebut the IBIA's finding on this point.

8

The evidence in the record shows that all five tribes willfully and knowingly executed the agreement in 1988 and the record discloses **no** objection from any tribe to the DOI's static application for a decade. The first and only objection appeared in 1998 when CPN negotiated its FY 1999 AFA. Plaintiff does not dispute that none of the other four tribes of the Shawnee Agency support its position. See PSOMF at ¶ 4 (citing Citizen Potawatomi Nation, 42 IBIA at 173) (noting that none of the other four tribal parties came forward to support or deny CPN's interpretation of the Funding Formula agreement). The actions of the Absentee Shawnee Tribe ("AST") and the Iowa Tribe are two prime examples of the Shawnee Agency tribes' knowing acquiescence in the static application of the Funding Formula since 1988. The AST has been part of the Self-Governance Program since January 1, 1991 and it has not objected to the static application but rather has supported this application. Defendants' Administrative Record (hereinafter "Deft. A.R.") at 00371-00373. Plaintiff does not dispute the AST's support for static application but rather states that the evidence of AST's endorsement does not establish that "CPN knew of and acquiesced in the Department's static application of the Funding Formula prior to 1998." Plff. Opp. at 16. Defendants do not maintain that the AST's support for static application alone establishes CPN's knowledge and acquiescence in the static application of the Funding Formula but rather defendants assert that the AST's actions constitute bricks in the wall of evidence showing informed acquiescence by **all** tribes in the Shawnee Agency. Similarly, as the IBIA duly noted, the Iowa Tribe did not come forward to support CPN's position despite the fact that the Iowa Tribe would see its allocation increase under a non-static application of the 1988 formula from 7.56 percent to 10.71 percent. Citizen Potawatomi Nation, 42 IBIA at 174 n. 11. Indeed, given the number of parties involved, the importance of their interests, and the

9

length of time in which objections could have been (and were not) registered, it was more than reasonable for the IBIA to find that plaintiff knew about the application and did not object.

Plaintiff fails to rebut the IBIA's well-supported conclusion regarding plaintiff's knowledge of the Formula's application. Plaintiff only provides hearsay stating that it could not object to the Formula's application because it had no knowledge of the DOI's application of the formula before 1998. At the administrative level, plaintiff failed to submit any declaration stating that it lacked such knowledge. Thus, plaintiff has failed to provide any admissible evidence necessary to show that this is a disputed material fact.

Furthermore, plaintiff incorrectly asserts that there is no dispute that its knowledge of the static application before 1998 was a "material factual finding supporting the IBIA's holding that the Department did not err in determining that the parties to the 1988 Funding Formula agreement intended for the formula to apply in a static manner." Plff. Opp. at 18. Defendants maintain that the IBIA's decision can be sustained even if evidence of CPN's knowledge of the nature of the DOI's funding calculations before 1998 is absent from the administrative record. Because the IBIA properly found that the terms of the contract were ambiguous, extrinsic evidence, such as the intent of the parties or the subsequent action of the parties, could be introduced to clarify the meaning of the agreement. Consol. Gas Transmission Corp v. FERC, 771 F.2d 1536, 1546 (D.C. Cir. 1985). The IBIA considered three pieces of extrinsic evidence when analyzing the parties' intent: (1) parties' performance (static application of the Funding Formula), (2) the absence of past objections, and (3) the lack of support for plaintiff's interpretation by other tribes. See Citizen Potawatomi Nation, 43 IBIA at 173. Based on this extrinsic evidence, the IBIA concluded that "the Director did not err in determining that the

parties to the 1988 agreement intended for the formula to apply in a static manner unless and until the parties agreed otherwise and thus did not abuse his discretion in applying the formula in that way." Id.

The evidence in the administrative record amply supports the IBIA's decisions regarding both the ambiguity of the funding formula and the interpretation of the formula. Thus, the IBIA's decision on these points was not arbitrary, capricious, or otherwise erroneous. Accordingly, defendants' Motion for Summary Judgment on Count I of the Complaint should be granted.

## III. THE IBIA PROPERLY HELD THAT COLLATERAL ESTOPPEL PRECLUDES PLAINTIFF'S CHALLENGE

Plaintiff argues that the issue regarding CPN's entitlement to at least $65,521 in funding under Factor 3 of the Funding Formula that was raised by CPN in its 2004 pre-award appeal at the IBIA was different from the issue that was litigated and finally decided in the Appeals of Absentee Shawnee Tribe of Oklahoma, IBCA 4317-4318/2001, 35 IBCA 52 (2002) (hereinafter Absentee Shawnee). See Plff. Opp. at 17. Plaintiff's assertion is incorrect. A careful reading of Absentee Shawnee reveals that the issue of Collier's effect on Factor 3 was actually litigated and finally decided in that case.. Thus, the IBIA Decision properly applied collateral estoppel to plaintiff's claims for at least $65,521 in funding under Factor 3.

Plaintiff has incorrectly defined the issue that was litigated and decided for the purpose of collateral estoppel. It asserts that "[t]he issue presented and resolved in Absentee Shawnee was a breach of contract dispute in which the Absentee Shawnee tribe sought to recover funds previously promised to it in its prior contracts for Fiscal Years 2000 and 2001 and then unilaterally withdrawn by the Department." Plff. Opp. at 18. Disagreement between the AST

11

and the DOI and the CPN over the application of <u>Collier</u> to the Funding Formula formed the

basis of this breach of contract dispute.  <u>Absentee Shawnee</u> (Plff. A.R. at Tab 16, page 2) ("The

United States used this formula to determine the amount of funding awarded to the tribes in their

Annual Funding Agreements. . . .  The tribes with the BIA's Shawnee Agency had been

receiving their allocated funding for over ten years pursuant to their agreement until before the

OSG reduced Appellant's funding on the **basis of the decision in <u>Collier</u>**.") (emphasis added).

The DOI and CPN favored the application of <u>Collier</u> to Factor 3.  <u>Id.</u> at 7, 11.  CPN was the

recipient of $65,521 that the DOI denied to the AST.  <u>Id.</u> at 1-2.  Similarly, in the instant case,

CPN claims "the right to the $65,521 that has been in dispute between the two tribes since

2000."  <u>Citizen Potawatomi Nation</u>, 42 IBIA at 166 (CPN argued that "following <u>Collier</u>, under

factor 3 of the formula, their jurisdictional area, and therefore their service area, is now exclusive

and constitutes the entire area within the boundaries of the former reservation . . . Under this

argument, they claim the right to the $65,521.").

 Plaintiff once again bases its claim to these funds on <u>Collier</u>.  <u>See</u> Plff. MSJ at 24 (stating

that one of the issues before the IBIA in the present case was CPN's contention that <u>Collier</u>

prohibited the DOI from withholding at least $65, 521 in funding for FY 2004 under factor 3 of

the funding formula.).  Plaintiff submits the same arguments as the basis for the same relief.  The

issues are ***not*** materially different.  The issue presently being litigated is the same issue that was

contested by plaintiff in <u>Absentee Shawnee</u> and submitted for judicial determination in that case.

 Plaintiff not only mischaracterizes the issue in the <u>Absentee Shawnee</u>, it also erroneously

states its holding.  <u>See</u> Plff. Opp. at 18 ("The judgment in the <u>Absentee Shawnee Decision</u> was

limited to a holding that the decision in <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v.</u>

12

Collier, 142 F.3d 1325 (10th Cir. 1998) (the 'Collier Decision') did not provide a sufficient legal

basis to permit a post-award unilateral reduction by the Department in funding previously agreed

to be provided to the Absentee Shawnee tribe for those fiscal years."). In attempting to support

this flawed assertion, plaintiff distorts defendants' characterization of Absentee Shawnee when it

asserts the defendants' motion admitted that the holding was confined in the manner advocated

by plaintiff. Defendants' motion analyzed the IBIA Decision and noted that the IBIA had

observed that Appeals of the Absentee Shawnee decision rested on two alternative grounds.

DMSJ at 16-17. However, defendants did **not** in any way admit that the holding of Absentee

Shawnee was confined to Collier's effect on "a post-award unilateral reduction by the

Department in funding previously agreed to be provided to the Absentee Shawnee tribe" in

Fiscal Years 2000 and 2001. Plaintiff ignores subsequent language in defendants' motion that

discussed the validity of the IBIA's determination that IBCA actually and necessarily

determined that Collier had no effect on factor 3.[5] DMSJ at 17-18.

The IBCA was obliged to, and did, consider the issue of the effect of Collier on factor 3.

Indeed, the IBCA devoted a substantial part of its analysis to the impact of Collier on Factor 3

and this analysis was essential to its judgment. See Plff. A.R. at Tab 16, pages 13-14. The

IBCA rejected the arguments advanced by both the DOI and the CPN that the parties had

mistakenly believed that the AST and CPN had joint jurisdiction over the former Potawatomi

reservation and that this mistake justified the reduction in funding to AST. Id. (noting that

---

[5] Defendants also cited case law from this Court which defined the "necessary to judgment" element of collateral estoppel. See Id. (citing Bryson v. Gere, 268 F. Supp. 2d 46, 60 (D.D.C. 2003) for the proposition that issues are necessary to judgment when they are "so central to the dispute that the arbitrator was obliged to, and did, consider them.").

"'where the existence of a fact is unknowable'- in this case, the fact that the Shawnee were later adjudged not to share jurisdiction over the former reservation area with the Potawatomi, a decision that surprised virtually everyone, as discussed below- 'the parties cannot make a mistake about it.'").  (internal citations omitted).

Plaintiff also asserts that the issue of <u>Collier</u>'s effect on the Funding Formula in future years  could not have been necessarily and actually determined in <u>Absentee Shawnee</u> because "the IBCA's jurisdiction is limited to post-award contract disputes, as defined in the Contract Disputes Act, 41 U.S.C. § 607(d)" and 43 C.F.R. § 4.100(b).  Plff. Opp. at 19.  Neither provision either explicitly or implicitly limits the IBCA's jurisdiction to post award contract disputes.  41 U.S.C. § 607(d) provides that "Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency . . . ."  43 C.F.R. § 4.100(b) gives  to the IBCA the power to "consider and determine appeals from decisions of contracting officers relating to contracts made by the Department of the Interior."  The Funding Formula is a contract under which the Department is obligated to divide funds among the five tribes of the Shawnee Agency from 1989 and continuing into future years.  Pltf. A.R. Tab 60, Attachments 1-5  (tribal resolutions stating that "the attached list of services constitutes the scope of the contract to be awarded" and that funds would be distributed by the DOI for those services in accordance with the Funding Formula).  It is therefore, a contract made by the Department under 41 U.S.C. § 607(d) and 43 C.F.R. § 4.100(b).  This contract by its very terms extends into future years.  The DOI decided that it would apply the Funding Formula according to <u>Collier</u> in future years.  Plff. A.R. at Tab 40, page 3.  Thus, under 43 C.F.R. § 4.100(b), the IBCA properly exercised its jurisdiction when it "consider[ed] and determine[d]

14

appeals from decisions [application of <u>Collier</u> to the Funding Formula] of contracting officers

[OSG Director] relating to contracts [Funding Formula] made by the Department of the Interior."

Furthermore, even if the IBCA is confined to post-award contract disputes, plaintiffs are

still barred from relitigating the issue of the application of <u>Collier</u> to Factor 3.  Plaintiff puts forth

no rational reason why <u>Collier</u> would not apply to Factor 3 for FY 2000 and 2001 but would

apply to future years.  The IBCA undertook a rigorous analysis to determine the parties' intent in

1988.  <u>See</u> Plaintiff's Administrative Record (hereinafter "Plff. A.R. ) at Tab 16, pages 13-14

(noting that "'where the existence of a fact is unknowable'- in this case, the fact that the

Shawnee were later adjudged not to share jurisdiction over the former reservation area with the

Potawatomi, a decision that surprised virtually everyone, as discussed below- 'the parties cannot

make a mistake about it.'").  The IBCA had determined the issue of the parties' intent regarding

the jurisdictional area (Factor 3) in the Funding Formula agreement.  The IBCA's determination

was final and necessary to its judgment.  If plaintiff were allowed to raise this issue again, the

policy goals of collateral estoppel would be seriously undermined.  <u>See</u> <u>also</u> <u>Nasem v. Brown</u>,

595 F.2d 801, 806 (D.C. Cir. 1979) (Application of the doctrine of collateral estoppel "represents

a decision that the needs of judicial finality and efficiency outweigh the possible gains of

fairness or accuracy from continued litigation of an issue that previously has been considered by

a competent tribunal.").

Plaintiff's redefinition of the issues, holding, and rationale of <u>Appeal of Citizen</u>

<u>Potawatomi Nation of Oklahoma,</u> IBCA No. 4522/04, 35 IBCA 207, 05-1 BCA ¶ 32,919 (Mar.

22, 2005) (hereinafter "CPN Decision") (Plff. MSJ Exhibit E) is characteristic of its previous

attempts to mischaracterize to avoid the  application of collateral estoppel.  <u>See</u> Plff. Opp. at 19-

20.  Like these previous attempts, plaintiff misconstrues the case's language and defendants' arguments.

The IBCA's decision in the CPN Decision is perfectly consistent with the both <u>Absentee Shawnee</u> and the IBIA Decision in the instant case.  In the CPN Decision, the IBCA focused its analysis on the particular representations in the 2003 AFA and not the Funding Formula's application to the AFA.  The IBCA awarded the $65,521 to plaintiff for FY 2003 based on the 2003 AFA.  Plff. MSJ, Exhibit E at 7.  Even though the application of <u>Collier</u> to the Funding Formula had been previously litigated and actually decided in <u>Absentee Shawnee</u>, the interpretation of various provisions of CPN's 2003 AFA had not been previously litigated or decided .  Thus, the IBIA aptly acknowledged that cases such as the CPN Decision are very fact specific . <u>See</u> <u>Id.</u> at 9 ("[I]t is conceivable that other cases dealing with matters similar to those in this case may arise again, as this one did after <u>Absentee Shawnee</u> was decided.  If so, as always, their outcome will turn on the facts involved.").  The instant case turns on a set of facts and legal issues that are different from the ones involved in the CPN Decision.  Plaintiff argues only that it is entitled to $65,521 under FY 2004 Agreement based on <u>Collier</u>'s application to the Funding Formula.  <u>See</u> Plff. MSJ at 24.  Since the issue of <u>Collier</u>'s impact on the Funding Formula was already actually litigated and decided in <u>Absentee Shawnee</u>, the doctrine of collateral estoppel should bar relitigation of this issue.

Plaintiff ends its string of erroneous arguments with a misinterpretation of the Contracts Dispute Act.  Plff. Opp. at 20-21.  Plaintiff incorrectly cites  41 U.S.C. § 607(g) as the statutory bar to its right to seek judicial review in <u>Appeals of the Absentee Shawnee</u>.  Pltf. Opp. at 20.

Plaintiff incorrectly maintains that its status as an intervenor prohibits it from seeking judicial review of the IBCA's decision in that case.

The Contracts Dispute Act provides that "The decision of an agency board of contract appeals shall be final, except that– a contractor may appeal such a decision to the United States Court of Appeals for the Federal Circuit within one hundred twenty days after the date of receipt of a copy of such decision." 41 U.S.C. § 607(g)(1). The term "contractor" means "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). Plaintiff, along with five other tribes, contracted with the DOI when it entered into the 1988 funding agreement. See Plaintiff's Statement of Material Facts at ¶ 2 (DOI and five tribes developed Funding formula in 1988); PSOM at ¶ 3 (noting that "the tribal resolutions reflecting agreement that the Funding Formula was to be *used by the Department* for distributing federal appropriations") (emphasis added). That contract (Funding Formula) was at issue in Absentee Shawnee and no doubt prompted plaintiff's intervention. Plaintiff was a contractor under 41 U.S.C. § 601(4) so it could have appealed the IBCA's decision in Absentee Shawnee under 41 U.S.C. § 607(g)(1). Plaintiff did not avail itself of this option and now tries to claim that it possessed no such right. This Court should disregard plaintiff's belated attempt to relitigate a matter which it could have, but failed to appeal.

Plaintiff's collection of tortured legal interpretations do nothing to weaken the clear, thoughtful, and well-reasoned IBIA Decision. The administrative record and applicable legal precedent amply support the IBIA's determination that collateral estoppel bars litigation of the plaintiff's claim regarding the impact of Collier on the Funding Formula. Accordingly, defendants' motion should be granted.

17

## IV.    THE IBIA PROPERLY CONCLUDED THAT <u>COLLIER</u> HAS NO EFFECT ON FACTOR 3

The IBIA properly concluded that, even if collateral estoppel did not bar plaintiff from litigating its entitlement to funds under Factor 3, funding under Factor 3 would be apportioned based on the number of tribal members each tribe had within the former reservation boundaries in 1988.  <u>Citizen Potawatomi Nation</u>, 42 IBIA at 170-171.  Plaintiff contends that the IBIA erred when it found that plaintiff was not entitled to the $65,521 in funds under Factor 3 for Fiscal Year 2004 because the IBIA "failed to address or examine all relevant evidence in the administrative record with respect to its alternative holding on Factor 3."  <u>See</u> Plff. Opp. at 22.  Specifically, plaintiff takes issue with the IBIA's conclusion that the <u>Collier</u> Decision has no impact on how funds are to be apportioned to CPN under Factor 3 of the Funding Formula.  <u>See</u> Plff. Opp. at 25.

Plaintiff first takes issue with the portions of the Administrative Record (letters from AST attorneys) that were cited by defendants.  See Plff. Opp. at 22-23.  Defendants cited these letters  because they are part of the Administrative Record on which the IBIA based its decision.  5 U.S.C. § 706 provides that judicial review of agency action must be based on the "whole record,"   including everything that was before the agency pertaining to the merits of the decision.  <u>Thompson v. United States Dep't of Labor</u>, 885 F.2d 551, 555-56 (9th Cir. 1989).  The letters from AST's counsel in conjunction with other evidence in the record (<u>i.e.</u>, a decade of applying the Funding Formula without any objection from the Shawnee Agency tribes) provide more than substantial evidence to show that the IBIA Decision was neither arbitrary nor capricious.

18

After mounting a feeble attack on the evidence supporting the IBIA Decision, plaintiff argues that the IBIA ignored and did not address "contradictory evidence" contained in the administrative record. Plff. Opp. at 23. This evidence includes (1) the April 15, 1999 letter from BIA Director, Office of Self-Governance to the AST Governor; and (2) the November 15, 1999 letter from the Department's Assistant Secretary-Indian Affairs to an attorney for the Absentee Shawnee tribe. Plff. Opp. at 23-24 (citing Plff. A.R. at Tabs 40 and 44). This evidence was ***not contradictory***.

Under the arbitrary and capricious standard of review, the Court will not disturb an agency decision that has "examine[d] the **relevant data** and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharmaceutical, Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (emphasis added). Neither of these pieces of evidence establish that Collier properly impacts Factor 3. Both the April 15 and November 15 letters expressed the DOI's concern that Collier dictated a change in funding despite the parties' intent. However, neither letter stated that the Funding Formula was non-static thereby allowing for a revision of funding pursuant to Collier. In his April 15 letter the Director acknowledges that the "service area designations were made with specific and exclusive reference to territorial jurisdiction ***as it was known at the time of the tribal contracts***." See Plff. A.R. at Tab 44, page 3 (emphasis added). Likewise, Assistant Secretary Kevin Gover's letter stated the DOI believed that "the Collier decision does not directly hold that ISDA funds must be unilaterally withdrawn from the AST's compact." Plff. A.R. at Tab 40, page 2. Indeed, far from establishing that the Funding Formula mandated a

19

change under <u>Collier</u>, both letters contain language suggesting that static application may be appropriate.

Plaintiff also incorrectly states that defendants ignored evidence that for purposes of Factor 3, "a tribe's former reservation boundaries were taken into account to define service area for purposes of defining territorial jurisdiction." Plff. Opp. at 25. The IBIA noted that typically the language of factor 3 would refer to a certain geographical area and each tribe would serve whatever tribal members resided within that area. <u>Citizen Potawatomi Nation</u>, 42 IBIA at 170. However, the IBIA stated that the CPN and the AST had an unusual situation and that a typical interpretation of the language "could lead to an anomalous and implausible result." <u>Id.</u> The IBIA asserted, and all parties to this action agree, that when the agreement was signed, all parties believed that the CPN and the AST shared a "'jurisdictional area' represented by the boundaries of the former reservation." <u>Id.</u> The usual understanding of "jurisdictional area" should not apply to these unusual circumstances because that definition would fail to "provide a basis for apportioning funds between the two tribes." <u>Id.</u>

In addition to erroneously arguing that the defendants cited evidence that it should not have and that the IBIA failed to consider evidence that it should have, plaintiff engages in an irrelevant discussion of the effect of <u>Collier</u>. While plaintiff correctly observes that <u>Collier</u> conclusively held that CPN has "the exclusive **use** and **occupancy** of its former reservation," Plff. Opp. at 24 (emphasis added), plaintiff then takes a huge leap in reasoning. It states that the Department is "collaterally estopped from relitigating that issue in any case, whether that case involves trust acquisitions under 25 C.F.R. § 151.8 or a pre-award dispute over funding under an AFA filed under the ISDA, such as the action at issue here" because <u>Collier</u> actually and

20

necessarily determined its right to the **use** and **occupancy** of the former reservation.  Id. at 24-25.  Plaintiff's argument is flawed because use and occupancy of the former reservation is not at issue here.

Plaintiff incorrectly interprets defendants' reliance on Douglas Indian Association v. Juneau Area Director, 30 IBIA 48 (Oct. 16, 1996).  See Plff. Opp. at 25.  Plaintiff asserts that Douglas Indian Association is irrelevant to the issue in this case because no funding formula "circumscribed the Department's ability to define the tribe's service area."  Plff. Opp. at 25.  Defendants cited Douglas Indian Association as an example in which the IBIA had reasonably found an approach which allocated funds based on how tribes could best serve their own members, not on geography or territorial jurisdiction.  See DMSJ at 26.  Douglas Indian Association was but a small part of defendants' argument that the IBIA's interpretation of Factor 3 was more than reasonable and thus easily sustained under the arbitrary and capricious standard of review.

Although plaintiff extensively discusses the interplay between various subsections of 25 U.S.C. 450j (Plff. Opp. at 26-28) and their impact on whether funding to CPN can be reduced, the determining issue in this case is still whether the IBIA reasonably interpreted the application of Factor 3 in light of the administrative record.  This is a pre-award dispute between CPN and the  DOI.  The FY 2004 AFA between CPN and DOI explicitly withheld the funds that CPN maintained it was entitled to under Factor 3.  Deft. A.R. at 00049.  If the IBIA's interpretation is reasonable, then its funding allocation to CPN in FY 2004 is valid.

Plaintiff has failed to show that the IBIA's conclusion that Collier  had no impact on Factor 3 of the Funding Formula agreement is inadequate and without any support in the

administrative record.  Accordingly, defendants' motion with respect to Count III of the

Complaint should be granted.

## V.    THE FOUR TRIBES ARE NECESSARY AND INDISPENSABLE PARTIES.

Plaintiff asserts that the four absent tribes of the Shawnee Agency "are not necessary to a

just adjudication of this action"( Plff. Opp. at 40) because the remedies which it seeks "provide

meaningful relief to CPN and will do so without the necessity of any absent party since it will

provide for correction of the material procedural defects associated with the IBIA Decision at

issue here without making any substantive holdings on the underlying merits to be addressed by

the IBIA."  (Plff. Opp. at 30).  Plaintiff's assertion elevates form over substance.

Plaintiff attempts to characterize its requested relief as limited in order to distinguish the

Norton[6] precedent.  Plff. Opp. at 32 (stating that, unlike Norton, plaintiff does not ask that the

courts resolve the underlying merits of the DOI's determination but rather seeks remand to the

BIA in order to correct "material procedural defects associated with the decision.").  This

seemingly benign request is "a wolf in sheep's clothing."  A closer look at the nature and

consequences of this relief shows that the substance of the relief which plaintiff now seeks is

identical to the relief that it sought in Norton and even though it differs in form, it would

likewise profoundly impact the rights of indispensable parties.  Plaintiff erroneously asserts that

defendants offer "no specific factual assertions in the context of this action explaining exactly

how the remand requested by CPN in this action would in fact constitute a holding that the IBIA

made a substantive mistake regarding the factors in the Funding Formula."  Plff. Opp. at 34.  In

fact, plaintiff's own motions show that the relief sought by plaintiff effectively reverses the IBIA

---

[6] Citizen Potawatomi Nation v. Norton, 248 F.3d 993 (10th Cir. 2001).

decision and dictates a result in favor of plaintiff.  Plaintiff seeks the following: (1) a declaration

from this Court that the IBIA Decision is erroneous; (2) an injunction preventing the Department

from implementing the IBIA decision as the final decision of the agency; and (3) remand back to

the IBIA for further proceedings.  Plff. MSJ at 1, 44. "CPN asks this Court to find that the

conclusions reached by the IBIA Decision are without any support in the administrative record

and otherwise erroneous as a matter of law." Plff. MSJ at 42.  The undeniable effect of this relief

is to overturn the IBIA's decision and require it to adopt the plaintiff's interpretation of the 1988

Agreement.

Plaintiff bases its conclusion that the other four Shawnee Agency tribes are not

"necessary" parties on the flawed premise that its requested relief is sufficiently limited so that

they "have no legally protected interest in the outcome of the Court's decision in this case."  Plff.

Opp. at 35-36.  Plaintiff then recites its requested remedies to support its assertion that

"Complete relief based on the requested remand back to the IBIA can be accorded among the

existing parties-CPN and the Department."  Plff. Opp. at 36.  Rather than supporting plaintiff's

assertion that "remand back to the IBIA need not be premised on a substantive holding by this

Court on the underlying merits that would be binding on the IBIA regarding the factors of the

Funding Formula," (Plff. Opp. at 36), plaintiff's extensive list of remedies illustrates just the

opposite.

Plaintiff's remedies are allegedly designed to rectify a detailed list of "material

procedural defects."  Plff. Opp. at 36-37.  These "material procedural defects" are nothing more

than alleged substantive errors in the IBIA Decision couched in procedural terms.  For example,

plaintiff is effectively asking that the Court require the IBIA to find that the language in the

23

tribal resolution concerning "operation and services in FY 89 and future years" mandates a non-static application of the Funding Formula.  Plff. Opp. at 37.  Likewise, plaintiff also asks that the Court require the IBIA to address various statutory and regulatory provisions concerning the tribal self-governance program.  Plff. Opp. at 37.  In most instances, plaintiff asks that the Court require the IBIA to "further develop the administrative record."  Plff. Opp. at 38-40.  These requirements and others amount to nothing less than "relief beyond remand to IBIA" because it would be premised on a holding that the IBIA made a substantive mistake regarding the factors in the Funding Formula.  See Witchita & Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 776 (D.C. Cir. 1986).

Plaintiff's convoluted attempts fail to show that the other four tribes of the Shawnee Agency are not necessary and indispensable parties.  The instant case is virtually indistinguishable from Norton.  Thus, the absent tribes are necessary and indispensable, and since their joinder is not feasible, this Court should dismiss this case under Federal Rule of Civil Procedure 19.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' motion, this Court should grant judgment in defendants' favor.

February 15, 2007                              Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 Fourth Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)


25