UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CITIZEN POTAWATOMI NATION,          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )     Civil Action No. 06-830 (GK)
                                    )
                                    )
KENNETH L. SALAZAR,[1]              )
     Secretary of the              )
     Interior, et al.,             )
                                    )
          Defendants.               )
_____)

**MEMORANDUM OPINION**

Plaintiff, a federally recognized Indian Tribe whose jurisdictional area is located in Oklahoma, brings this action against Kenneth L. Salazar in his official capacity as Secretary of the Department of the Interior ("the Department" or "the agency"). Plaintiff challenges the application of a formula that the Department uses to distribute funds to certain tribes. This challenge, along with other issues, was raised at the agency level; Plaintiff now seeks review of a decision by the Department of Interior Board of Contract Appeals ("IBIA" or "the Board"). This matter is before the Court on Plaintiff's Motion for Summary Judgment [Dkt. No. 24] and Defendants' Motion for Summary Judgment [Dkt. No. 25]. Upon consideration of the Motions, Oppositions,

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Interior Kenneth L. Salazar is automatically substituted as defendant for former Secretary Dirk Kempthorne.

Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Summary Judgment is **denied** and Defendants' Motion for Summary Judgment is **granted.**

I.   **BACKGROUND**

   A.   **Factual Background**[2]

   The current controversy began when Citizen Potawatomi Nation ("CPN") entered into an agreement with Defendants to establish a formula for the distribution of federal funds.   Eventually, this formula would be used to calculate how funds were to be distributed to tribes under the Indian Self-Determination Act ("ISDA"), 25 U.S.C. §§ 450 et seq.

   In 1988, Defendants' Bureau of Indian Affairs ("BIA") reached an agreement with the Shawnee Agency Tribes, composed of five tribes one of which is the Plaintiff.   In a Tribal Resolution, CPN agreed along with the four other tribes on a funding formula by which Defendants would distribute funds to the Shawnee Agency Tribes.   The formula contained four factors that would dictate how the funds would be disbursed: (1) 25% equally divided; (2) 25% in proportion to total tribal enrollment; (3) 25% in proportion to resident tribal population within each tribe's jurisdictional area; (4) 25% in proportion to the amount of trust property in each

_____

   [2]   Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute, as well as the Administrative Record ("AR") upon which the Board relied.

tribe's jurisdiction.  Pl.'s Statement of Material Facts at ¶ 3; AR at Tab 60 (Ex. A, Attachment 1).

The Defendants decided to use data from 1988 to calculate the funding formula.  CPN objects to this static application of the funding factors.  The parties have litigated this matter in federal court in the past, see infra, at pp. 6-8, and more recently before the Interior Board of Indian Appeals.  The crux of the dispute at the agency level was whether parties intended this formula to be calculated by using new data as it changed from year to year, or by using data as it existed in 1988 at the time the resolution was adopted.  Compl. at ¶¶ 17-37; AR at Tab 66 (Citizen Potawatomi Nation v. Director, Office of Self-Governance, 42 IBIA 160 (Jan. 25, 2006) (hereinafter cited as "IBIA Decision")).  CPN now seeks a review of the Board's decision.

The two-page Tribal Resolution, which is essentially a contract, specifies the above formula, and includes language that would later become central to this litigation.  The Resolution committed the tribes to "conform to all aspects of the CFR[1] appropriate to the given program to be contracted by all five tribes of the Shawnee Agency."  Before certifying the agreement, CPN agreed "with the tribes served by the Shawnee Agency to contract for all Bureau of Indian Affairs provided operation and

---

[1]   Parties were referring to the Code of Federal Regulations.

services in FY 89 and future years." Pl.'s Statement of Material
Facts at 3; AR at Tab 60 (Ex. A, Attachment 1).

The difference between the self-determination contract and the
self-governance contract is described in the ISDA and its
regulations.  Once a tribe has entered into a Compact, it may no
longer execute self-determination contracts.  25 U.S.C.
§ 458cc(b)(8)(A).  Under the provisions governing self-
determination contracts, tribes may submit proposals to the
Department for such contracts which, if approved, would allow them
to oversee certain programs with the use of Department funds.  See
25 U.S.C. § 450f; 25 C.F.R. §§ 900.8-.16 (2009).  Under the ISDA,
a Compact of Self-Governance allows the tribe to assume more
comprehensive responsibility for programs otherwise overseen by the
Department.  See 25 U.S.C. §§ 458aa-cc; 25 C.F.R. §§ 1000.91-.104.
Under the self-government arrangement, tribes negotiate AFAs each
year for the disbursement of program funds.  See 25 U.S.C. §§
458aa-cc; 25 C.F.R. §§ 1000.91-.104.

During the period between 1988 and FY 1999, Plaintiff entered
into self-determination contracts with Defendants.  Pl.'s Statement
of Material Facts at ¶ 7; 25 U.S.C. §§ 450f-450n.  Although the
ISDA governed these contracts and funds were disbursed according to
the terms of the Tribal Resolution, see Pl.'s Statement of Material
Facts at ¶¶ 2-3, CPN had not yet formally entered the ISDA's Tribal
Self-Governance Program, id. at ¶ 7.  In 1998, it did so.  Id. at

¶ 9; AR at Tab 45.  Under the ISDA, tribes may enter into a Compact of Self-Governance and Annual Funding Agreements ("AFAs") with the Department.  Pl.'s Statement of Material Facts at ¶ 1.  Such arrangements allow the tribes to assume responsibility for the "planning and administration of programs and services previously provided by the Department and the Department transfers the related funds to the tribes to administer."  Id.

CPN alleges it did not learn that the Department was still applying 1988 data in calculating disbursement of funds among the Shawnee Agency Tribes for FY 1999 until it entered into the Compact for FY 1999.  Compl. at ¶¶ 17-18; Pl.'s Mot. for Summ. J. at 23 ("Pl.'s Mot.").

**B.  Procedural Background**

As noted above, the core of the dispute before the IBIA was the Department's use of 1988 data for application of the funding formula agreed to in the Tribal Resolution.  That issue has been the subject of various administrative and federal court proceedings over the past decade.

This case's tangled procedural history begins with a qualified victory for CPN.  In Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325, 1327 (10th Cir. 1998), the Tenth Circuit affirmed the district court's ruling that another member tribe of the Shawnee Agency, the Absentee Shawnee, had no rights to land on the former CPN reservation.  That litigation

-5-

arose when the Absentee Shawnee applied for the Department to take land into trust on its behalf -- land which fell within the boundaries of the former CPN reservation.   The BIA Area Director disagreed with CPN's argument that federal regulations required CPN's consent before the Department could put the land in trust for the Absentee Shawnee.

The Director rejected CPN's challenge because the he found that the tribes shared a common former reservation.   This finding was upheld by the IBIA.   Id. at 1330.   When CPN challenged that ruling in federal court, the administrative decisions were reversed.   The District Court held that the Absentee Shawnees had no rights to the former CPN reservation.   Id. at 1330-31 ("[T]he [district court] viewed the Absentee Shawnees' agreement to relinquish any interest in the reservation as a quit claim deed.").   On appeal, the Tenth Circuit upheld the decision.   Id. at 1327.

In 1998, subsequent to the Tenth Circuit ruling, CPN challenged the Department's application of the Tribal Resolution funding formula.   Pl.'s Statement of Material Facts at ¶ 11.   The substantive issue was never considered by the district court because CPN's claims were dismissed for failure to join parties under Rule 19 of the Federal Rules of Civil Procedure.   See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 996 (10th Cir. 2001), modified on reh'g, 257 F.3d 1158 (10th Cir. 2001). The dismissal was affirmed by the Tenth Circuit.   Id. at 1001.

In addition, subsequent to _Collier_, the Director proposed a change in his position with respect to the application of factor three of the funding formula to the CPN and Absentee Shawnee.  See AR at Tab 44 at 3-4.  The Director concluded that the _Collier_ holding with respect to the Absentee Shawnee's interest in CPN land necessarily altered the calculation under factor three (25% in proportion to resident tribal population in each tribe's jurisdictional area).  _Id._ at 4-5.  The Director proposed a recalculation of the funding formula to decrease Absentee Shawnee's funding by $65,521 for 2000.  _Id._ at 9.

The Absentee Shawnee challenged these changes before the Interior Board of Contract Appeals ("IBCA") in 2002.  The IBCA permitted CPN to intervene and file briefs, because the reduction ordered in Absentee Shawnee funds was directed to be given to CPN. AR at Tab 16 at 1-2.  Absentee Shawnee won before the IBCA, which held that the tribe was entitled to its pre-_Collier_ funding allocation, and that "_Collier_ had nothing to do with funding arrangements."  _Id._ at 14.

Facing denial of these funds, and unable to challenge the application of the funding formula in _Norton_, the Plaintiff then brought two key issues to the IBIA:  first, _Collier_'s effect on factor three of the funding formula, and, second, whether the 1988 data the Department had been using to calculate the formula should be adjusted annually.  _IBIA Decision_, at 166-67.

The IBIA held that CPN was collaterally estopped from litigating the effect of <u>Collier</u>,[2] <u>id.</u> at 167, and that the Director did not abuse his discretion in finding that the parties intended the 1988 formula to be applied in a static manner, i.e., without annual updating, <u>id.</u> at 173.   CPN challenges that decision in the case now before this Court.

## II.   STANDARD OF REVIEW

### A.   Standard of Review for the IBIA Decision

CPN states in its Complaint that "a claim for relief exists under both the ISDA, 25 U.S.C. § 450m-1(a) and the Administrative Procedures [sic] Act, 5 U.S.C. §§ 702-706."  Compl. at ¶ 5.   The ISDA provision reads as follows:

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this subchapter and, subject to the provisions of subsection (d) of this section and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this subchapter. In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this subchapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f(a)(2) of this title or to compel the

---

[2]      As an alternative holding, the IBIA concluded that "the 1988 formula does not apportion funding to the Citizen Potawatomi and Absentee Shawnee based on legal determinations regarding the extent of their territorial jurisdiction."  <u>IBIA Decision</u>, at 167.

Secretary to award and fund an approved self-determination contract).

25 U.S.C. § 450m-1(a).  Under the Administrative Procedure Act ("APA"), the reviewing court must determine whether the administrative decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Parties dispute the standard under which the Court should review the IBIA decision.  Plaintiff maintains that the Court should engage in de novo review, Pl.'s Mot. at 4;[3] Defendants counter that the appropriate standard is "arbitrary and capricious," Def.'s Mot. for Summ. J. at 4-5 ("Def.'s Mot.").  The issue appears to be one of first impression in this Circuit.[4]

Both the Supreme Court and our Court of Appeals have declared that where a statute does not provide a standard of review, as is

---

[3]    CPN argues in the alternative that even if the standard of review is arbitrary and capricious, it should still prevail on its claims.  Pl.'s Mot. at 5.

[4]    One Court of Appeals case from this Circuit deals with judicial review under the ISDA, but does not resolve the standard of review issue.  In Ramah Navajo School Board, Inc. v. Babbitt, 87 F.3d 1338 (D.C. Cir. 1996), the Court of Appeals reversed a district court's denial of a preliminary injunction because the court had inappropriately found that a decision to allocate funds was an unreviewable act of agency discretion.  The Court of Appeals found that under the ISDA the decision was reviewable.  Id. at 1343-44.  While the case clearly states that some review is necessary, it does not indicate what standard district courts should apply when engaging in such review.  Cf. Pl.'s Mot. at 4-6 (construing case to support its argument for de novo review).

true of the ISDA, courts must look to the APA standard.[5]  <u>See</u>

<u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 715 (1963)

("Indeed, in cases where Congress has simply provided for review,

without setting forth the standards to be used or the procedures to

be followed, this Court has held that consideration is to be

confined to the administrative record and that no de novo

proceeding may be held."); <u>Al-Fayed v. CIA</u>, 254 F.3d 300, 304 (D.C.

Cir. 2001) (noting that APA "provides a default standard of

judicial review . . . where a statute does not otherwise provide a

standard") (quoting <u>Dickson v. Sec'y of Def.</u>, 68 F.3d 1396, 1404

n.12 (D.C. Cir. 1995)).[6]

---

[5]    While district courts in other jurisdictions have
construed the standard of review under the ISDA, they have
disagreed on the appropriate standard to be applied.  <u>See</u> <u>Cheyenne
River Sioux Tribe v. Kempthorne</u>, 496 F. Supp. 2d 1059 (D.S.D. 2007)
(finding de novo review to be appropriate); <u>Cherokee Nation of
Okla. v. United States</u>, 190 F. Supp. 2d 1248 (E.D. Okla. 2001),
<u>rev'd on other grounds by</u> <u>Cherokee Nation of Okla. v. Leavitt</u>, 543
U.S. 631 (2005) (same); <u>Shoshone-Bannock Tribes of the Fort Hall
Reservation v. Shalala</u>, 988 F. Supp. 1306 (D. Or. 1997) (same);
<u>Suquamish Tribe v. Deer</u>, No. 96-5468 (W.D. Wash. Sept. 2, 1997)
(unpublished) (finding APA standard to be appropriate); <u>Cal. Rural
Indian Health Bd., Inc. v. Shalala</u>, No. 96-3526 (N.D. Cal. Apr. 24,
1997) (unpublished) (same); <u>Yukon-Kuskokwim Health Corp. v.
Shalala</u>, No. 96-155 (D. Alaska Apr. 15, 1997) (unpublished) (same).

[6]    <u>See also</u> <u>Tourus Records, Inc. v. Drug Enforcement Admin.</u>,
259 F.3d 731, 736 (D.C. Cir. 2001); <u>Workplace Health & Safety
Council v. Reich</u>, 56 F.3d 1465, 1467 (D.C. Cir. 1995); <u>Northwest
Resource Info. Ctr. v. Nat'l Marine Fisheries Serv.</u>, 56 F.3d 1060,
1066 (9th Cir. 1995); <u>Franklin Sav. Ass'n v. Dir., Office of Thrift
Supervision</u>, 934 F.2d 1127, 1137 (10th Cir. 1991); <u>Avoyelles
Sportsmen's League, Inc. v. Marsh</u>, 715 F.2d 897, 904 (5th Cir.
1983); <u>Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears
v. Peterson</u>, 685 F.2d 678, 685 (D.C. Cir. 1982); <u>Nat'l Mining Ass'n
v. Chao</u>, 160 F. Supp. 2d 47, 56 (D.D.C. 2001), <u>aff'd in part and</u>

As Al-Fayed indicates, there exists a strong presumption in this Circuit that when a statute provides for judicial review but does not specify any standard for that review, it should be construed to include the APA standard.  See 254 F.3d at 304; see also Shoshone-Bannock, 988 F. Supp. at 1313 n.4 (citing cases from three other appellate courts to support this proposition).  This general principle "stems from well ingrained characteristics of the administrative process." Doraiswamy v. Sec'y of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976). In order to avoid "supplanting" the agency's role in the litigation, "the judicial function is fundamentally and exclusively an inquiry into the legality and reasonableness of the agency's action." Id.

Therefore, litigants in this case are faced with a strong presumption that judicial review will take place under an arbitrary and capricious standard.  The Court has considered the reasoning of those district courts, which focused heavily on the text and legislative history of the ISDA, and found de novo review to be appropriate.  However, this Court concludes that such analysis is not sufficiently persuasive to overcome the strong presumption enunciated by both the Supreme Court and our Court of Appeals in favor of the APA standard.

---

rev'd in part on other grounds by Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849 (D.C. Cir. 2002) ("The D.C. Circuit recently reaffirmed the principle of law that the APA provides a default standard of review where a statute does not otherwise provide a standard.").

The fact that CPN stated claims for relief under the ISDA as well as the APA buttresses this finding, since Plaintiff itself has chosen to bring a portion of its case under the APA.  Compl. ¶ 5. Finally, another consideration supporting APA review is the need to defer to the Defendants' expertise and experience in deciding many of the issues presented by CPN.  See Runs After v. United States, 766 F.2d 347, 352 (8th Cir. 1985) (noting BIA "special expertise and extensive experience in dealing with Indian affairs").

In conclusion, the Court finds that the APA standard is appropriate for the particular set of procedural facts presented by this case.  "The arbitrary and capricious standard [of the APA] is a narrow standard of review." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  This Circuit has held that "[t]his court's review is . . . highly deferential" and "we are 'not to substitute [our] judgment for that of the agency' but must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Bloch v. Powell, 348 F.3d 1060, 1070 (D.C. Cir. 2003) (citations and internal quotation marks omitted); see also United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987).

If the "agency's reasons and policy choices . . . conform to 'certain minimal standards of rationality' . . . the [agency decision] is reasonable and must be upheld." Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 521 (D.C. Cir. 1983)

(citation omitted); see Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994).

Summary judgment will be granted when there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Since this case involves a challenge to a final administrative decision, the Court's review on summary judgment is limited to the administrative record. Holy Land Found. for Relief and Dev. v. Ashcroft, 333 F.3d 156 (D.C. Cir. 2003) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)); Richards v. Immigration & Naturalization Serv., 554 F.2d 1173, 1177 (D.C. Cir. 1977)) ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.").

## III. ANALYSIS

### A.   Joinder of Necessary Parties

In their Motion for Summary Judgment, Defendants argue that all claims must be dismissed for failure to join necessary parties -- the four other tribes of the Shawnee Agency -- under Rule 19(a) of the Federal Rules of Civil Procedure. Def.'s Mot. at 30-40.

The Rule provides that even if it is not feasible to join these necessary parties, courts may nonetheless elect to proceed with the action in "equity and good conscience." Fed. R. Civ. P. at 19(b). To guide this equitable determination, Rule 19(b) lists four factors to be considered: (1) the extent to which a judgment

for existing parties would prejudice those parties and absent parties; (2) the extent to which the court can craft relief to lessen such prejudice; (3) whether the court can render an adequate judgment for existing parties; and (4) whether "the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Id.; see also Ramah Navajo Sch. Bd., Inc. v. Babbitt, 87 F.3d 1338, 1350-51 (D.C. Cir. 1996) (outlining Rule 19 analysis); Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 774 (D.C. Cir. 1986) ("Wichita").

This is not the first time that CPN has faced this issue. In Norton, the district court dismissed CPN's challenge to the funding formula because necessary parties had not been joined. 248 F.3d at 996. The Absentee Shawnee as well as the remaining three Shawnee Agency Tribes were found to be necessary to the resolution of the issue, as the tribes stood to lose if the Norton Court reversed the administrative decision on the merits of the claim. Due to the fact that tribes enjoy sovereign immunity, the district court could not order joinder. Id. As a result, the claims were dismissed. The Tenth Circuit affirmed, ruling that the district court did not abuse its discretion in dismissing the action. The Circuit based its decision on two reasons: the non-party tribes claimed an interest that was not "patently frivolous," and the United States could not represent the interests of all parties. Id. at 999.

-14-

CPN argues that this case is different. In <u>Norton</u>, the federal court was asked to make a decision on the merits of the claims before it. Such a decision, CPN maintains, can indeed prejudice a non-joined party because it can alter the substantive outcome of the case. Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 30-31. The distinction in this case, according to CPN, is that this Court is being asked to only review the administrative agency's decision, and then remand so that a decision on a better record can be developed. <u>Id.</u> Such an action, Plaintiff claims, can hardly "impede or impair" the interests of a non-party tribe, because the Court would not be altering the underlying merits of the IBIA decision. <u>Id.</u> at 36.

Further, the Plaintiff observes that the IBIA is permitted, under its own case law, to consider CPN's claim even when other potentially necessary parties have not been joined. According to IBIA doctrine, adjudication at the agency level is not subject to the same joinder rules applicable in federal court litigation. <u>See IBIA Decision</u>, at 171; <u>see also</u> Pl.'s Mot. at 42. Thus, CPN argues, mere review of the agency decision does no harm to non-parties: the federal court is not changing the outcome on the merits, and the agency to which the matter is remanded is authorized, under its own procedures, to hear the case without joining those parties which might be considered necessary under Rule 19(a). Pl.'s Opp'n at 31.

In essence, CPN requests that the Court rule either that non-party tribes are not "necessary," or that the equitable standard contained in Rule 19(b) be applied so that the litigation can proceed. Id. at 33-35. In CPN's view, the parties before the Court would have complete relief in the form of a remand, an issue in which non-parties have no interest (though they may, as in Norton, have an interest in the underlying merits).

Defendants object to this characterization of the issue. They begin by correctly distinguishing two cases that CPN relies on. Def.'s Mot. at 37-39 (arguing that Feezor v. Babbitt, 953 F. Supp. 1 (D.D.C. 1996) and Ransom v. Babbitt, 69 F. Supp. 2d 141 (D.D.C. 1999) are not applicable). The leading case on this issue, Defendants demonstrate, is Wichita, which described a remand judgment as only "a bit less prejudicial than a judgment" on the merits. Wichita, 788 F.2d at 776. The critical question is whether the Wichita analysis controls, given the unique set of facts in this case.

### 1.   The **Wichita** Decision

The Wichita case resembles the factual and procedural posture presented in this case. First, like this case, it involves a challenge to a formula used by the United States to apportion a fund among three Indian tribes. Id. at 771. The Wichita tribe brought suit in federal court to challenge the IBIA's decision to uphold the Department's distribution of funds based on tribal

population as of a fixed date.  The district court and Court of
Appeals rejected this claim.  <u>Id.</u>  Second, the Caddos tribe (along
with a third tribe) then intervened to challenge the IBIA's
decision denying it any retroactive payments.  <u>Id.</u> at 771.  The
district court rejected this claim.  However, the Court of Appeals
vacated the judgment because the claim should have been dismissed
under Rule 19.[7]  <u>Id.</u> at 768.

The <u>Wichita</u> Court began by examining whether intervention by
two tribes (Caddos and Delaware) made them parties to the Wichita
tribe's federal action.  It concluded that by virtue of their
intervention and consent to be sued, the two tribes had waived
sovereign immunity and were therefore parties.  <u>Id.</u> at 774.
Because the tribes were parties to the Wichita's claims, the Court
of Appeals ruled it did not need to address the Rule 19(a) issue.
<u>See</u> <u>id.</u> at 772.

The Court also had to decide whether the Wichitas and
Delawares were parties to the Caddos' cross-claim against them.
<u>Id.</u> at 773-74.  Finding the two tribes to be non-parties to the
cross-claim, the Court then turned to whether these non-parties
were necessary under Rule 19(a).  <u>Id.</u> at 774.  Based upon the text
of the Rule, the Court concluded that there was "no doubt" that the

---

        [7]    Rule 19 has changed since the <u>Wichita</u> decision was
issued.  <u>Compare</u> <u>Wichita</u>, 788 F.2d at 774 (laying out Rule as it
existed), <u>with</u> Fed. R. Civ. P. 19.  Nonetheless, the basic concept
of the joinder rule remains unchanged, and thus the reasoning in
the case is instructive.

Wichitas and Delawares had an interest in the action.  It reasoned that, "[a]s beneficiaries of the trust who stand to lose if the Caddos succeed in obtaining redistributions of future income to compensate for the past, the Wichitas certainly have a vital interest in being parties to the cross-claim, and especially in retaining the ability to appeal any adverse judgment." Id.  The Court of Appeals concluded that it was not feasible to add a tribe as a party, because the tribes enjoy sovereign immunity, which they cannot be forced to waive in these circumstances. See id. at 771 (citing cases to support proposition).

Having found the Wichitas and Delawares to be necessary parties that could not be joined, the Court of Appeals went on to address Rule 19(b), as to whether "equity and good conscience" permitted the action to proceed without the non-parties.

The Court concluded that remand of the retroactive funding issue was inappropriate because it would be based on a holding that the "agency made a substantive mistake in finding that the Caddos had agreed to the distribution scheme" up until a certain date. Id. at 776.  In this sense, a reviewing court did more than merely assume a posture of review; rather, it made a decision that affected the merits of the claim.  Id.  At the administrative level, the agency's authority would be bound by the federal court's decision.  If the Wichitas and Delawares were not parties to the action, their right to challenge this decision would not exist.

-18-

See id. at 775 (analyzing extent of prejudice).  For these reasons, the Court of Appeals found that a remand to an agency for further review of the merits would not eliminate prejudice to non-parties under Rule 19(b)(2).  Id. at 776.  It also reasoned that the lack of adequate relief, when weighed against the competing interest of preserving tribal immunity, did not render absent parties indispensable.  Id. at 777.  The Court of Appeals therefore dismissed under Rule 19.

### 2.   Application of Rule 19 to CPN's Claims

The Court must analyze CPN's claims to determine if the action would involve proceeding without necessary parties, and, if so, whether the Court should proceed with the actions in equity.[8]

In so doing, the Court is mindful that Rule 19 "calls for a pragmatic decision based on practical considerations in the context of particular litigation." Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt, 43 F.3d 1491, 1495 (D.C. Cir. 1995); see also Cloverleaf Standardbred Owners Ass'n. v. Nat'l Bank of Wash., 699 F.2d 1274, 1276 (D.C. Cir. 1983)(acknowledging district court's "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward.").

### a.   Rule 19 Requires Dismissal of Count One.

---

[8]   Joinder of necessary parties is not feasible, as tribes cannot be compelled to waive sovereign immunity.  See Wichita, 788 F.2d at 771.

Plaintiff challenges the IBIA's decision to uphold a reduction of its funding under the Tribal Resolution.   In Count One, CPN contends that the Board erroneously decided that the funding agreement was ambiguous, and resolved that ambiguity by looking to CPN conduct that was not supported by the record.   CPN asks the Court to remand the matter to the IBIA because its decision was arbitrary or capricious, and to order the IBIA to "further develop the administrative record and require that the IBIA issue a new decision based on the further-developed administrative record." Pl.'s Mot. at 1.

The first issue is whether under Rule 19(a) non-parties are required to be joined.   A party is necessary if: (1) in the absence of that party, the Court "cannot accord complete relief among existing parties," or (2) the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."   Fed. R. Civ. P. 19(a)(1)(A)-(B).   The Court of Appeals has broadly characterized necessary parties as "those 'affected by the judgment and against which in fact it will operate. . . .'"   W. Coast Exploration Co. v. McKay, 213 F.2d 582, 592 (D.C. Cir. 1954) (citing Minnesota v. Hitchcock, 185 U.S. 373, 387 (1902)).

Prong two of the necessity requirement asks courts to determine whether the non-party tribes "have a legally protected interest" in the subject matter of the action. Fed. R. Civ. P. 19(a)(1)(B); <u>see also</u> <u>Ramah Navajo Sch. Bd.</u>, 87 F.3d at 1351; <u>Cherokee Nation of Okla. v. Babbitt</u>, 944 F. Supp. 974, 979 (D.D.C. 1996), <u>rev'd on other grounds</u>.  In <u>Wichita</u>, the Court of Appeals found that non-parties were required to be joined.  Other courts have also found that the apportionment of common funding can be the basis of a legally protected interest.  <u>See</u> <u>Norton</u>, 248 F.3d at 996 (describing district court decision); <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555, 559 (9th Cir. 1990) (describing district court's ruling that absent tribes may have interest in suit where increased shares of common tribal fund were at stake).

However, in <u>Ramah Navajo School Board</u>, this Circuit's Court of Appeals held that non-party tribes were not necessary to the action, even though the court was faced with a question regarding a common-funding scheme.  87 F.3d at 1351.  The Court ruled that non-parties had no protectable interest because the Government declared that any funds ordered released would not be used to increase tribal funding.  <u>Id.</u>  As has been emphasized in other cases, <u>see, e.g.</u>, <u>Kickapoo</u>, 43 F.3d at 1495, the <u>Ramah</u> decision supports the proposition that courts must take a practical approach to the joinder issue, and carefully assess what interests are at stake for parties and non-parties.

In Norton, the Tenth Circuit clarified that the interest claimed by non-parties need not be concrete or compelling. Rather, the court found that for a party to be necessary under Rule 19(a)(2), it must claim an interest that is not "patently frivolous." Norton, 248 F.3d at 998. The absent party is not required to actually possess that interest; merely claiming it is sufficient Id.

### i. Non-Party Tribes Must Be Joined.

In Count One, CPN claims an interest only in obtaining review of the Board's decision and claims to seek no decision on the merits. Defendant counters that this Count involves the common-funding scheme entered into by Shawnee Agency Tribes, and therefore non-party tribes do have an interest. Def.'s Mot. at 37-38. For this reason, the Department argues, this case cannot be distinguished from Norton, where the Tenth Circuit upheld the dismissal of a similar CPN lawsuit for failure to join necessary tribes. Id.

If a remand were granted, the Board would be reopening the record and reconsidering how to apply a funding formula that impacts each tribe. CPN's goal on remand is to achieve a more flexible interpretation of the Tribal Resolution than the IBIA initially gave, and one which would then change the funding allotments made to each tribe. CPN seeks a decision from the Board, buttressed by a more adequate administrative record, that

-22-

will give it more funds and the other tribes less.  Thus, as in
_Norton_, the non-parties have a legitimate and non-frivolous
interest in the outcome of this litigation.

### ii.  Non-Party Tribes Are Indispensable.

Rule 19(b) lists four factors for courts to consider when
deciding whether to proceed without necessary parties that cannot
be joined.  The Court must weigh the extent of prejudice to non-
parties, its ability to shape a remedy to lessen that prejudice,
whether a decision would be adequate without absent parties, and
whether the plaintiff would have an adequate remedy if the claims
were dismissed.  Fed. R. Civ. P. 19(b).

It is clear that, under factor three of Rule 19(b), complete
relief can be provided to the parties.  However, as in _Wichita_, a
remand to the Board for consideration of procedural defects in its
decision does not adequately eliminate potential prejudice to
absent parties.  788 F.2d at 776.  Non-parties would not be able to
appeal the IBIA decision, although it may result in a ruling that
denies them funding.  Thus, the first two factors of the Rule 19(b)
analysis support dismissal of Count One.

Finally, while the Court shares the _Wichita_ Court's concern
that there is no alternative forum for CPN, see _Wichita_, 788 F.2d
at 777, the weighty competing interest of preserving tribal
sovereign immunity is paramount.  _Id._ Given the importance of this
latter policy, and the fact that the litigation should not proceed

simply because an adequate alternative remedy does not exist, <u>see</u> <u>id.</u>, the fourth factor of Rule 19(b) strongly favors dismissal. <u>See</u> <u>Kickapoo</u>, 43 F.3d at 1496-97 ("[T]here is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves.") (quotation and citation omitted).

For all these reasons, the Court concludes that the non-party tribes are indispensable.

### b.   Rule 19 Requires Dismissal of Count Two.

Count Two asks for remand to the Board for further review in light of arbitrary and capricious decision-making.  In its Motion for Summary Judgment, Plaintiff addresses the merits of the collateral estoppel claim, and argues that the IBIA holding was erroneous as a matter of law.  Additionally, its Complaint reflects a thinly veiled effort to bring a substantive claim in the guise of a request for review.  CPN couches its objection in terms that evoke arbitrary and capricious analysis (e.g., the IBIA "ignores" certain facts), but is basically arguing that the IBIA made an incorrect ruling on a purely legal question.  Relief for such a request would amount to a ruling that the agency made a "substantive mistake" under <u>Wichita</u>.  788 F.2d at 776.

### i.   Non-Party Tribes Must Be Joined.

Plaintiff argues that the IBIA's decision that it is collaterally estopped from challenging the application of factor three of the funding formula based on a 2002 IBCA decision is wrong. Compl. at ¶¶ 52-58. Unlike Count One, where Plaintiff argues that certain facts relied upon by the IBIA are not supported by the record, in this Count CPN argues that the Board committed legal error in its interpretation of the funding formula contained in the Tribal Resolution. Pl.'s Mot. at 25-27. Thus, despite the fact that, for strategic reasons, CPN is arguing that it does not seek resolution of the merits of the Board's ruling, it is in fact attempting to relitigate an unfavorable ruling below. However, in order to review that unfavorable decision, the Court must reach the merits of the IBIA's collateral estoppel holding, because that claim presents a question of law. It is well established that de novo review is the appropriate standard for such questions of law. See Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003).

Such review is fundamentally distinct from reviewing and remanding due to a procedural defect in the agency's decision-making. Any decision in favor of CPN would be premised on a finding by this Court that the Board made a substantive legal error -- whether it was a finding that the Board erred in determining that the IBCA had ruled on the same issue, or that CPN was a party to the IBCA decision as a matter of law. Such a remand would very

closely resemble the remand contemplated in <u>Wichita</u>.  In that case, the Court of Appeals said that a "holding to that effect would be binding on the agency, and it becomes quickly obvious that even if we were to agree with the substantive premise of the remand solution, it would not in fact mitigate the prejudice to the [non-parties]."  <u>Wichita</u>, 788 F.2d at 776.

Therefore, under <u>Wichita</u>, such a remand runs afoul of Rule 19. The Absentee Shawnee and remaining Agency tribes have an interest in the preclusive effects of decisions about the funding formula. <u>See</u> <u>Otherson v. Dep't of Justice, I.N.S.</u>, 711 F.2d 267, 273 (D.C. Cir. 1983) ("Along with the doctrine of claim preclusion or res judicata, issue preclusion aims to avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court."). Rule 19(a) requires that non-party Shawnee Agency tribes be joined. As it is not feasible to do so because of tribal sovereign immunity, the only way that this Count can survive is if it should proceed "in equity and good conscience" under Rule 19(b).

### ii.  Non-Party Tribes Are Indispensable.

A ruling on Count Two would be adequate in non-parties' absence, and so the third prong of Rule 19(b) is satisfied.  On the other hand, factor four strongly supports dismissal of the claims in order to preserve non-parties' sovereign immunity. <u>See</u> <u>supra</u>, Part III.A.2.a.ii.

Looking to the first two factors of Rule 19(b), the Court finds that decision on the collateral estoppel issue necessarily would direct the agency to conduct its legal analysis in a certain way.  Because ordering a change to the IBIA's collateral estoppel ruling would have an effect on the interests of the non-parties, and those parties are not represented at all in this litigation, those interests would be prejudiced.  Further, the Court cannot craft relief to minimize such prejudice.  CPN essentially asks the Court to tell the IBIA how to evaluate and weigh precedent in the course of its collateral estoppel review.  This remedy would, as in Wichita, range beyond a simple remand and would shape the substantive issues before the IBIA.

In this scenario, courts must be practical in light of all the circumstances.  Kickapoo, 43 F.3d at 1495.  Consideration of the collateral estoppel issue will amount to determination of an important substantive issue, and not merely a remand.  The practical result would be a decision on a matter in which non-parties have a legitimate and substantial interest.  Such a decision would prejudice non-parties, and therefore Count Two must be dismissed.

### c.   Count Three Must Be Dismissed As Moot.

The IBIA held that collateral estoppel prevents CPN from bringing its claim regarding the misapplication of the funding formula.  As discussed above, CPN challenged this holding in Count

Two; that claim has been dismissed.  The IBIA also explained as an alternative holding that it rejected the merits of CPN's claim regarding the funding formula.  CPN challenges this reasoning in Count Three.

However, because the Board's collateral estoppel decision is upheld, the Court need not reach the Board's alternative reasoning.  See United States v. Williams, 341 U.S. 70, 72 (1951) ("The alternative grounds for the decision of the Court of Appeals need not be considered, for we agree that [§] 241 . . . does not reach the conduct laid as an offense in the prosecution here."); see also Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207 (D.C. Cir. 1997) ("The fact that the trial court alternatively rejected WMATA's motion on the merits in no way undermines the timeliness ruling.").  The IBIA's dismissal of CPN's challenge is undisturbed.  Count Three is therefore dismissed as moot.

## B.  The IBIA Decision in Count One Was Not Arbitrary or Capricious

Even though the rulings already made dispose of the case, the Court will address the merits of Plaintiff's arbitrary and capricious arguments for the sake of judicial efficiency, so that all issues will be before the Court of Appeals should the joinder rulings be overturned.

CPN asks that the Court invalidate the IBIA's decision because of its failure to consider relevant evidence, and because it based part of its decision on an insufficiently developed record.  CPN

claims that the IBIA erroneously concluded that the funding formula was ambiguous, and that even if it was ambiguous the IBIA erred in finding that, based on its conduct, CPN ratified the Board's interpretation of the formula allowing use of 1988 data.  Compl. at §§ 38-51.

In view of the deference granted to administrative agencies, and after full consideration of the record in this case, the Court rejects Plaintiff's arguments.

### 1.    The IBIA Reasonably Concluded that the Funding Formula Is Ambiguous.

First, Plaintiff alleges that the agency failed to consider material evidence in the record.  Pl.'s Mot. at 10-20.  CPN argues that two provisions of the formula -- that it would apply in "FY 89 and future years," and that the five tribes "will conform to all aspects of the CFR appropriate to the given program to be contracted" -- were erroneously overlooked in the decision below. Id. at 11.  CPN goes on to explain why this language should have been considered and what the effect of such failure is.  Id. at 11-20.

In its opinion, the IBIA begins its analysis by setting out the rules for contract interpretation.  IBIA Decision, at 172 (quoting Restatement (Second) of Contracts, § 202(1)).  The Board then considered CPN's argument that the plain language of the funding formula means that the formula should be calculated annually.  Id.

Acknowledging that the argument "has some force," the IBIA went on to list reasonable inferences that could be drawn from the fact that the funding formula omitted clear language that it should be applied on the basis of 1988 data.  Id.  The opinion then gave consideration to the converse inference: the absence of clear language directing the Department to recalculate the formula each year meant that the language did not support CPN's interpretation. Id.  These competing interpretations convinced the IBIA that "the agreement's language was ultimately ambiguous" regarding annual recalculation of the formula.[9]  Id.

CPN argues that the IBIA should reconsider the language of the agreement based on the inferences that it draws from the terms of the contract.  The "FY 89 and future years" clause, CPN asserts, should be read to mean that funding is allotted "in any given fiscal year" in proportion to data that will change from year to year.  Pl.'s Mot. at 11-12.  Plaintiff maintains that the IBIA "ignor[ed]" and "otherwise fail[ed] to explain or address" the effect of the plain language of the funding formula because it did not adopt CPN's interpretation.  Id.

The Court's task is to ensure that the Board's decision was not arbitrary and was well reasoned, not to second-guess its

---

[9]     Based on the plain language of the resolution, it would not have been unreasonable for the Board to conclude that the agreement was not ambiguous, in that it clearly stated that 1988 data was to govern all future funding.

correctness.   See <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 42 (1983) ("[A] court is not to substitute its judgment for that of the agency."); <u>Nat'l Treasury Employees Union v. Horner</u>, 854 F.2d 490, 498 (D.C. Cir. 1988); <u>Olson v. Clinton</u>, 2009 WL 635977, at *8 (Mar. 12, 2009 D.D.C.). Plaintiff suggests one reading of the administrative record and insists that its reading would remove any ambiguity.   However, CPN's view relies on an interpretation of the language based on terms that are not even included in the agreement.   See Pl.'s Mot. at 12 (adding "in any fiscal year").

The Board acknowledged that arguments based on the plain meaning of the agreement had some force, but ultimately decided that the terms were ambiguous.   <u>IBIA Decision</u>, at 172.   In doing so, the Board provided more than adequate reasons for its decision. It considered factors relevant to whether the agreement was ambiguous.   See <u>Bloch</u>, 348 F.3d at 1070.   The decision fully "conform[ed] to 'certain minimal standards of rationality,'" and must be upheld.   <u>Small Refiner</u>, 705 F.2d at 521 (citation omitted).

## 2. The IBIA's Resolution of that Ambiguity Was Not Arbitrary or Capricious.

CPN takes the position that even if the terms of the funding formula are ambiguous, the IBIA also erred in construing it by examining evidence that did not appear in the record. Specifically, Plaintiff objects that the Board purported to rely on

parties' past performance of the contract to discern its meaning, but cited to conduct by CPN that was not supported in the record.

The IBIA relied on the Department's use of 1988 data since 1988, CPN's lack of objection to this procedure until 1998, and other tribes' decisions to not support CPN's interpretation of the agreement.   <u>IBIA Decision</u>, at 173.   Contrary to the Board's decision, CPN insists that there is no evidence in the record that it had knowledge of how the formula was being applied nor an opportunity to object to its application before it brought a challenge in 1998.  Pl.'s Mot. at 21.  Plaintiff views this piece of supporting evidence as the key to the IBIA's conclusion regarding parties' acquiescence to the formula calculation used by the Department.  <u>Id.</u> at 23.

In its decision, the IBIA held that the BIA Director did not abuse his discretion in finding that the performance of CPN and other tribes demonstrated an intent to apply the formula based on 1988 data.   <u>IBIA Decision</u>, at 173.   The decision refers to the record in saying that the agreement "has been implemented based on a static application of the formula since its inception." <u>Id.</u>  It goes on to note that other tribes who signed the agreement have not come forward to support CPN's interpretation of its terms.  <u>Id.</u>  It also refers to the evidence that Plaintiff objects to: that the funding formula had been consistently applied since 1988 on the

basis of 1988 data, that CPN knew of this and had an opportunity to object, but did not do so until 1998.   Id.

   The IBIA decision is cursory on this point.   However, that may be a function of the fact the Board itself was reviewing the Director's decision for an abuse of discretion, rather than making a de novo decision on the merits.   The Board relies on two vital pieces of evidence that CPN does not challenge (i.e., a history of static application by the Department and lack of support for CPN from other tribes).   Id. at 173.   CPN takes the position that the IBIA's reference to a factual matter not in the record means that the record fails to support its conclusion in violation of the APA. Pl.'s Opp'n at 16-17.

   The Defendant reads the IBIA decision to mean that CPN's silence on the application of the funding formula amounted to its consent to the agency's calculations.   Def.'s Opp'n at 17. Defendant points out that the decision did advance other reasons supported by the record for finding that the parties to the agreement intended the formula to be applied in the manner Defendants had used.   Id. at 17-18.   The Defendants maintain that even if the Court discredits the IBIA's finding with respect to CPN's silence on the matter, the other grounds for the Board's conclusion are sufficient to withstand Plaintiff's challenge.   Id.

   Under arbitrary and capricious review, the Court is required to uphold an agency decision if the agency has examined the

"relevant data" and based its conclusion on a "reasoned explanation
that is supported by the record." America Tel., 974 at 135.  The
IBIA was attempting to interpret ambiguous language based on
parties' performance after executing the agreement.  IBIA Decision,
at 172-73.  In order to survive this Court's arbitrary and
capricious review, it had to consider factors relevant to that
ultimate issue, and establish a rational connection between the
facts and the conclusion.  State Farm, 463 U.S. at 43.  The record
does show that there was a ten-year history of application of the
funding formula based on 1988 data and that other tribes refused to
affirmatively support CPN's position in this litigation.[10]  AR at
Tab 60 at Ex. A (Decl. of Rhonda Butcher) at 2; Pl.'s Statement of
Material Facts at ¶ 4 (referencing IBIA decision).

Even if the inference based on CPN's silence was unwarranted
by the record, the conclusion arrived at by the IBIA may be upheld
as rational given the support in the record for the other facts
referenced.  The case law on arbitrary and capricious review does
not demand that the Court overturn an agency decision whenever the
agency makes an inappropriate inference.  See Multimax, Inc. v.

---

[10]     Those tribes also did not object to CPN's position.  The
IBIA appears to have given more weight to their lack of support
than their lack of objection.  The Court is not in a position to
substitute its judgment for that of the agency's.  State Farm, 463
U.S. at 43.  The IBIA's interpretation of this evidence supports
its decision regarding the relevant factor of parties' performance,
and therefore passes muster as a satisfactory explanation of its
conclusion.  See id.

Fed. Aviation Admin., 231 F.3d 882, 888 (D.C. Cir. 2000) (concluding that mistaken inference by agency not reversible error where other evidence supported agency decision).   It focuses instead on the rationality of the decision.   See, e.g., Bowman Transp. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974) ("The agency must articulate a rational connection between the facts found and the choice made.") (internal quotations and citation omitted); Neighborhood TV Co. v. Fed. Commc'n Comm'n, 742 F.2d 629, 639 (D.C. Cir. 1984) ("[Courts] will uphold the [agency's] decision if, but only if, [they] can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached.").

The IBIA's decision on the question of parties' inaction finds overall support in the record, although each and every link in its chain of reasoning may not.   The decision below is upheld because it took into account the relevant data and made a rational decision based on it.

**C.    The IBIA Did Not Erroneously Conclude that CPN Is Precluded from Litigating the Effects of Collier.**

CPN challenges the IBIA ruling that it is collaterally estopped from litigating the effect of the Collier decision on the funding formula. Pl.'s Mot. at 24.   The Board analyzed an earlier IBCA decision between Absentee Shawnee and the Department, in which CPN intervened, and determined that the IBCA decided the question of Collier's effect on the formula.   IBIA Decision, at 167-71

(discussing preclusive effects of <u>Appeals of Absentee Shawnee Tribe of Oklahoma</u>, IBCA 4317-4318/2001, 35 IBCA 52 (Nov. 4, 2002) ("<u>IBCA I</u>")).

In challenging the IBIA's conclusion on the preclusive effects of an earlier judgment, CPN raises a question of law. <u>See</u> <u>Athridge v. Aetna Cas. & Sur. Co.</u>, 351 F.3d 1166, 1171 (D.C. Cir. 2003) ("The issue of whether or not res judicata applies in a given situation is a question of law."). Therefore, the Court reviews this issue de novo. <u>Id.</u>

To determine if CPN is precluded from re-litigating its claim about <u>Collier</u>'s effect, the Court must determine if the same issue now being raised was raised in the prior case, whether that issue was "actually and necessarily determined" by that court, and whether a finding of preclusion would "work a basic unfairness to the party bound by the first determination." <u>Yamaha Corp. of America v. United States</u>, 961 F.2d 245, 254 (D.C. Cir. 1992).

Before proceeding to the facts of this case, it is important to note that the collateral estoppel analysis must focus on <u>IBCA I</u>. The IBIA decision that discusses <u>IBCA I</u> is not the subject of the Court's review. <u>Id.</u> ("[I]t is the <u>prior</u> judgment that matters, not the court's opinion explicating the judgment.") (emphasis in original); <u>see also</u> <u>American Iron & Steel Inst. v. EPA</u>, 886 F.2d 390, 397 (D.C. Cir. 1989). Based on an analysis of <u>IBCA I</u>, the

Court concludes that CPN was collaterally estopped from challenging the effect of Collier before the IBIA.

> **1. The Issue Raised by CPN Before the IBIA Was Raised and Decided by the IBCA.**

CPN asked the IBIA to rule on whether Collier required a change in the application of factor three of the funding formula. Pl.'s Mot. at 24.  Parties disagree over whether this issue was raised in Absentee Shawnee's post-award appeal before the IBCA.

When inquiring into whether an issue has been raised, courts must be mindful that "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." Yamaha, 961 F.2d at 254 (emphasis in original).  If a party could have made an argument based on the legal issue raised, but did not do so, the party is not permitted to raise it in the new case. Securities Indus. Ass'n v. Bd. of Governors, 900 F.2d 360, 364 (D.C. Cir. 1990).

IBCA I clearly raised the issue of Collier's impact on the Department's application of the formula.  That decision contained an in-depth discussion of Collier, IBCA I, at 4-5, the Department's arguments in reliance on that case, id. at 7-8, and the IBCA's finding on how Collier affected the parties, id. at 13-14.

CPN casts the issue as a contractual dispute between Absentee Shawnee and the Department.  Pl.'s Mot. at 26-27.  The litigation's procedural posture was indeed a contract dispute brought before the

IBCA, centering on whether the Department violated Absentee Shawnee's AFA by decreasing the funding allotted to the tribe. IBCA I, at 1. However, the IBCA had to investigate the reasons for the Department's change in the funding level, which included the issue of Collier's effect on the funding formula. Id. at 2, 13-14.

CPN counters that because this was a contractual dispute between Absentee Shawnee and the Department, the broader issue of Collier's future effect was not litigated. However, the existence of a contractual dispute does not mean that the issue of Collier's effect was not raised. CPN had a chance to make its particular argument about the Collier issue when it was raised before the IBCA. Therefore, under Yamaha and Board of Governors, CPN is precluded from raising those arguments now.

The Collier issue was actually decided by the IBCA. The finding that "Norton . . . made it clear that Collier had nothing to do with funding arrangements," and that the Department was not legally obliged under Collier to alter Absentee Shawnee's AFA indicates that the IBCA made a judgment on the issue. IBCA I, at 14. That judgment will bind CPN as long as it does not work a fundamental unfairness on the tribe.

### 2.   CPN Was a Party to the IBCA Litigation.

CPN maintains that the IBCA judgment should not, as a matter of fundamental fairness, preclude it from bringing its claims before the IBIA. Pl.'s Mot. at 28-29. Plaintiff argues that it

was not a party to the IBCA litigation, since CPN only participated
as a permissive intervenor.   In this role, the tribe submitted
briefs related to the Absentee Shawnee's post-award appeal to the
IBCA.   Id.   The IBCA decided the case approximately three months
after CPN intervened.   Id. at 29.   The IBCA then denied CPN's
motion for reconsideration of its decision, concluding that CPN was
not a party to the original litigation, and therefore had no
standing to file the motion.   Pl.'s Mot. at Ex. D (In re Appeals of
Absentee Shawnee Tribe of Okla., 2003 WL 133274 (IBCA Jan. 14,
2003) ("IBCA II")).

     For purposes of collateral estoppel, "'parties' does not refer
to formal or paper parties, but to parties in interest, that is,
that persons whose interests are properly placed before the court
by someone with standing to represent them are bound by the matters
determined in the proceeding."   1B J. Moore, Moore's Federal
Practice ¶ 0.411[1] at 390-91 (2d ed. 1983); see also Southmark
Props. v. Charles House Corp., 742 F.2d 862, 869 (5th Cir. 1984).
Courts have found litigants intervening on appeal to be "parties"
to the litigation who are bound by the outcome.   See Local 322,
Allied Indus. Workers of America, AFL-CIO v. Johnson Controls,
Inc., Globe Battery Div., 921 F.2d 732, 734 (7th Cir. 1991)
(concluding res judicata applied to party who intervened on appeal
after being denied right to intervene in district court, where
intervenors' "arguments were addressed by [appellate court's]

decision"); <u>N.A.A.C.P. v. A.A. Arms, Inc.</u>, 2003 WL 21242939, at *19 (E.D.N.Y. Apr. 1, 2003) ("As a general rule, a nonparty is not bound by judgments entered in an action in which it did not intervene."); <u>Deaktor v. Henner</u>, 517 F.Supp. 26, 27 (N.D. Ill. 1980) (finding that plaintiff was party to administrative litigation where plaintiff was granted leave to intervene in that case).

Plaintiff mistakenly relies on case law that pertains to the status of <u>amici curiae</u>, rather than intervenors. <u>See</u> Pl.'s Mot. at 30. CPN characterizes <u>United States v. 111.2 Acres of Land</u>, 293 F. Supp. 1042 (E.D. Wash. 1968), as finding that the State of Washington was not a party to litigation in which it had "intervened." Pl.'s Mot. at 30. In that case, the State of Washington was joined as <u>amicus curiae</u>; there was no mention of intervention in the decision. <u>111.2 Acres</u>, 293 F. Supp. at 1049. In the instant case, the IBCA permitted CPN to participate as intervenors -- and not as <u>amicus curiae</u> -- in the post-award appeal. <u>See</u> <u>IBCA I</u>, at 6.

CPN was, therefore, a party to the earlier litigation. The tribe was allowed to submit its arguments to the IBCA in order to represent its interests. Over a period of two months, CPN developed these arguments for briefing; the IBCA considered them and issued a decision that discussed them. Plaintiff's interests were represented in that litigation because they had an opportunity

to be heard.   Therefore, it would not be fundamentally unfair to enforce the IBCA's judgment against them in future proceedings. Cf. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327 n. 7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **granted**, and Plaintiff's Motion for Summary Judgment is **denied**.   An order shall issue with this Memorandum Opinion.


June ___, 2009                        /s/_____
                                      Gladys Kessler
                                      United States District Judge


**Copies to:** attorneys on record via ECF